IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| G.T., by and through next friend Liliana T. Hanlon, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.<br><br>        Defendant. | Civil Action No: 1:21-cv-04976<br><br>Hon. Martha M. Pacold |

**DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, STAY PROCEEDINGS**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................... 2

    A. The Arbitration Agreement ................................................................ 3

    B. The Scope of the Arbitration Agreement ........................................... 6

III. LEGAL STANDARD .................................................................................... 8

IV. ARGUMENT ................................................................................................. 8

    A. Challenges to Enforceability Are Left to the Arbitrator ..................... 8

    B. The Arbitration Agreement Is Valid and Enforceable ........................ 9

        1. Plaintiff G.T. Is Bound by the Agreement Because She Did Not Disaffirm the Contract and Accepted Its Benefits ................................. 10

        2. Plaintiff Is Bound by Her Guardian's Agreements ................................. 11

    C. Plaintiffs Agreed to Arbitrate These Claims ..................................... 13

        1. Plaintiffs Affirmatively Accepted the EULA and Its Arbitration Agreement ................................. 14

        2. The Arbitration Agreement Was Explained on the Phone's Packaging and in the Terms and Conditions Insert ................................. 15

    D. The Arbitration Agreement Encompasses Plaintiffs' BIPA Claims ................... 17

    E. All Proceedings Should Be Dismissed, or in the Alternative, Stayed Pending Arbitration ................................. 19

V. CONCLUSION ............................................................................................. 19

-i-

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, STAY
PROCEEDINGS

# TABLE OF AUTHORITIES

**Page**

<u>**CASES**</u>

*A.V., et al. v. IParadigms, LLC*,
    Civ. No. 07-0293 (E.D. Va. Mar. 11, 2008) .......................................................................... 11

*Acaley v. Vimeo, Inc.*,
    464 F. Supp. 3d 959 (N.D. Ill. 2020) .................................................................................... 15

*Adsit Co. v. Gustin*,
    874 N.E.2d 1018 (Ind. Ct. App. 2007) .................................................................................. 12

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ................................................................................................................ 8

*Barron v. Ford Motor Co. of Can.*,
    965 F.2d 195 (7th Cir. 1992) .................................................................................................. 9

*Beture v. Samsung Elecs. Am., Inc.*,
    No. CV 17-5757 (SRC), 2018 WL 4621586 (D.N.J. July 18, 2018)............................... 13, 15

*Boomer v. AT & T Corp.*,
    309 F.3d 404 (7th Cir. 2002) ................................................................................................ 13

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)................................................................................................................. 8

*Bull v. Mitchell*,
    448 N.E.2d 1016 (Ill. App. Ct. 1983) ................................................................................... 12

*Chopper Trading LLC v. Allston Trading LLC*,
    No. 19-CV-01674, 2021 WL 3709188 (N.D. Ill. Aug. 20, 2021) ........................................... 9

*CK Witco Corp. v. Paper Allied Indus.*,
    272 F.3d 419 (7th Cir. 2001) ................................................................................................ 18

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995) ..................................................................................................... 18

*Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*,
    417 F.3d 727 (7th Cir. 2005) ................................................................................................ 11

*Dannewitz v. Equicredit Corp. of Am.*,
    333 Ill. App. 3d 370 (2002) .................................................................................................. 13

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)................................................................................................................. 8

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

**TABLE OF AUTHORITIES**
(continued)

Page

*Doe #1 v. Coll. Bd.*,
    440 F. Supp. 3d 349 (S.D.N.Y. 2020) ................................................................. 11

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
    885 F. Supp. 2d 894 (S.D. Ill. 2012) .................................................................. 11

*Ervin v. Nokia, Inc.*,
    349 Ill. App. 3d 508 (2004) .............................................................................. 11

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ......................................................................................... 17

*Fischer v. Instant Checkmate LLC*,
    No. 19 C 4892, 2021 WL 3033586 (N.D. Ill. July 19, 2021) ................................ 14

*Forby v. One Techs., LP*,
    2016 U.S. Dist. LEXIS 46141 (S.D. Ill. Apr. 5, 2016) ......................................... 15

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ................................................................ 14

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ........................................................................................... 19

*Hallock v. State*,
    64 N.Y.2d 224, 474 N.E.2d 1178 (1984) ............................................................ 12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ......................................................................................... 9

*Hill v. Gateway 2000, Inc.*,
    105 F.3d 1147 (7th Cir. 1997) .......................................................................... 16

*Hofer v. Gap, Inc.*,
    516 F. Supp. 2d 161 (D. Mass. 2007) ................................................................ 12

*I.C. ex rel. Solovsky v. Delta Galil USA*,
    135 F. Supp. 3d 196 (S.D.N.Y. 2015) ................................................................ 10

*In re Reed*,
    532 B.R. 82 (Bankr. N.D. Ill. 2015) .................................................................. 12

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
    298 F. Supp. 3d 1285 (N.D. Cal. 2018) ............................................................. 17

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, STAY
PROCEEDINGS

## TABLE OF AUTHORITIES
### (continued)

Page

*Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*,
  2007 WL 951943 (N.D. Ill. Mar. 27, 2007)................................................................... 13

*Jackson v. Payday Fin., LLC*,
  764 F.3d 765 (7th Cir. 2014) ............................................................................................ 8

*Johnson v. Noble*,
  240 Ill. App. 3d 731 (1992) ............................................................................................ 13

*K.F.C. v. Snap, Inc.*,
  2021 U.S. Dist. LEXIS 108695 (S.D. Ill. June 10, 2021)......................................... 9

*Kaufman v. Am. Express Travel Related Servs. Co.*,
  2008 WL 687224 (N.D. Ill.. Mar. 7, 2008)................................................................. 14

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
  174 F.3d 907 (7th Cir. 1999) .......................................................................................... 18

*McAllister Bros. v. A & S Transp. Co.*,
  621 F.2d 519 (2d Cir. 1980)............................................................................................ 11

*McNamara v. Samsung Telecomms. Am., LLC*,
  No. 14 C 1676, 2014 WL 5543955 (N.D. Ill. Nov. 3, 2014)................................. 17

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017).............................................................................................. 14

*Miracle-Pond v. Shutterfly, Inc.*,
  2020 WL 2513099 (N.D. Ill. May 15, 2020) ..................................................... 14, 15

*Moore v. Microsoft Corp.*,
  293 A.D.2d 587, 741 N.Y.S.2d 91 (2002) ................................................................. 14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)............................................................................................................... 18

*Motise v. Am. Online, Inc.*,
  346 F. Supp. 2d 563 (S.D.N.Y. 2004)......................................................................... 12

*Ogden Power Dev.-Cayman, Inc. v. PMR Ltd.*,
  No. 14-cv-8169 (PKC), 2015 WL 2414581 (S.D.N.Y. May 21, 2015).............. 13

*ProCD v. Zeidenberg*,
  86 F.3d 1447 (7th Cir. 1996) ......................................................................................... 16

## TABLE OF AUTHORITIES
### (continued)

Page

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004)........................................................ 14

*Rent-A-Ctr. W., Inc. v. Jackson*,
  561 U.S. 63 (2010)................................................................. 8, 9

*Schmidt v. Samsung Elecs. Am., Inc.*,
  No. C16-1725-JCC, 2017 WL 2289035 (W.D. Wash. May 25, 2017) ................................. 17

*Sheller by Sheller v. Frank's Nursery & Crafts*,
  957 F. Supp. 150 (N.D. Ill. 1997) ............................................ 10

*Shepherd v. Shepherd*,
  97 N.E.2d 273 (Ill. 1951) ...................................................... 10

*Smith v. Cavalry Portfolio Servs. LLC*,
  No. 20-cv-1375, 2020 WL 7682236 (N.D. Ill. Dec. 26, 2020).................................. 8

*Soucy v. Capital Mgmt. Servs., L.P.*,
  No. 14 C 5935, 2015 WL 404632 (N.D. Ill. Jan. 29, 2015) ................................. 19

*Sportvision, Inc. v. MLB Advanced Media, LP*,
  2020 WL 1957450 (S.D.N.Y. 2020)................................................ 18

*Stone v. Doerge*,
  328 F.3d 343 (7th Cir. 2003) ................................................... 14

*Taylor v. Samsung Elecs. Am.*,
  No. 16 C 50313, 2018 WL 3921145 (N.D. Ill. Aug. 16, 2018).................................. 12, 13, 17

*Tinder v. Pinkerton Sec.*,
  305 F.3d 728 (7th Cir. 2002) ................................................... 3

*Velasquez-Reyes v. Samsung Elecs. Am., Inc.*,
  No. EDCV161953DMGKKX, 2020 WL 6528422 (C.D. Cal. Oct. 20, 2020)...................... 13

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*,
  417 F.3d 682 (7th Cir. 2005) ................................................... 8

## **STATUTES**

740 ILCS 14/1 *et seq*.......................................................... 1, 2

9 U.S.C. § 3................................................................. 8, 19

9 U.S.C. § 4.................................................................. 8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

9 U.S.C. §§ 1-14 ................................................................................................................ 1

**OTHER AUTHORITIES**

1 Restatement (Second) of Agency § 140) ..................................................................... 12

**RULES**

Fed. R. Civ. P. 12(b)(3)................................................................................... 1, 2, 8, 19

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, STAY
PROCEEDINGS

Defendant Samsung Electronics America, Inc. ("Samsung") pursuant to Rule 12(b)(3) and the Federal Arbitration Act, 9 U.S.C. §§ 1-14, moves this Court for an order to compel arbitration and dismiss or stay this action.

## I.      **INTRODUCTION**

In this putative class action lawsuit, Plaintiff alleges that a software application ("Gallery App") on her Samsung Galaxy A20 phone ("A20") allegedly uses "biometric identifiers" or "biometric information" to sort photos she took with the phone, which Plaintiff claims violates the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*.  But under both Samsung's End User License Agreement for Software ("EULA") and the Terms and Conditions that generally apply to the use of the A20, all disputes arising in any way from the use of the A20 must be resolved through individual arbitration.

Plaintiff G.T. or the Plaintiff's guardian Liliana Hanlon (collectively, "Plaintiffs") expressly agreed to the EULA, including its Arbitration Agreement, when the A20 was activated. Specifically, as part of the A20's clickwrap set-up process—which must be completed ***before*** it can be used—Plaintiffs were presented with, and affirmatively accepted, Samsung's EULA.  That EULA includes an Arbitration Agreement, requiring Plaintiffs' claims to "be resolved exclusively through final and binding arbitration[.]"  And while the Arbitration Agreement allows users to opt out within 30 days, Plaintiffs did not do so.

In addition to the Arbitration Agreement that Plaintiffs electronically accepted as part of the A20's clickwrap set-up process, Plaintiffs are bound by a virtually identical agreement in the A20's Terms and Conditions.[1]  Plaintiffs were notified through multiple methods—in bold font on

---

[1] Collectively, the arbitration agreement in the EULA and virtually identical agreement in the Terms and Conditions will be referred to as the "Arbitration Agreement" for ease of use.  The only difference between the two arbitration provisions is a reference to Samsung's right to apply for injunctive relief in the EULA

the A20's exterior packaging, as well as in printed Terms and Conditions found in the phone's box and posted on Samsung's website—that by using the phone they were agreeing to arbitration. *See* Cantwell Decl. ¶ 8; Annex A ("**If you open the package, use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement.**").

Finally, Plaintiffs cannot use G.T.'s status as a minor to avoid the Arbitration Agreement. If G.T. set up the phone, she is bound under equitable principles because she has not disaffirmed the contract and, instead, continued to accept the contract's benefits by using the device. And if her guardian set up the phone, G.T. is bound by her guardian's acceptance of the Arbitration Agreement under both the theory of agency and the third-party beneficiary doctrine. Plaintiffs must arbitrate the claims in this case—as they explicitly agreed to do when they bought and activated Plaintiff's phone. Dismissal under Rule 12(b)(3), or a stay pending arbitration, is therefore warranted.

## II.     **FACTUAL BACKGROUND**

Plaintiff G.T. is an eleven-year-old who uses a Samsung Galaxy A20 phone. FAC ¶ 10. Plaintiff G.T., through her "next friend" and guardian Liliana Hanlon, purports to bring a class action based on the contention that her phone's pre-loaded Gallery software application, known as the "Gallery App," stored and sorted "face templates" from photos taken on her phone in violation of Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* Plaintiff's claims fail on the merits for a host of reasons: (1) the "face template" data used by the Gallery App on her phone does ***not*** constitute "biometric information" or "biometric identifiers" under BIPA, (2) Samsung does ***not*** collect or store that data, and (3) Plaintiffs' class allegations fail for multiple reasons, not least because the claims would require an individualized evaluation of pictures taken

---

that is not also contained in the Terms and Conditions. *See* Declaration of Nicole Cantwell ISO Samsung's Motion to Compel Arbitration ("Cantwell Decl.") ¶ 25.

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

on every Galaxy A20 phone.  However, this Court need not consider the merits of Plaintiffs' claims because the claims do not belong in court at all:  they belong in arbitration.

### A.      The Arbitration Agreement

The Complaint does not allege exactly when or how Plaintiffs came to own the A20.  But for the phone to be activated and used, Plaintiffs accepted Samsung's EULA (covering the device's operating system) because they were required to do so as part of the A20's clickwrap set-up process before using the phone.  Plaintiffs also accepted the Terms and Conditions (covering the product usage as a whole) when they opened the box and began using the device.  Both the Terms and Conditions and the EULA included the Arbitration Agreement.  *See* Cantwell Decl. ¶ 25.[2] Plaintiffs were repeatedly informed on the box, inside the box, and during the clickwrap set-up process about the Arbitration Agreement, and they accepted that Arbitration Agreement by using the device and completing the clickwrap set-up process.

Plaintiffs were first explicitly told that they were agreeing to arbitration before they even opened the A20's box.  Plaintiffs do not allege which carrier (e.g., T-Mobile, Verizon) was affiliated with her A20, but the exterior packaging for all carriers' phones used substantially similar language.  *See* Cantwell Decl. ¶ 10.  For example, as set out in the image in Appendix A, the back of the T-Mobile[3] (the largest carrier in the country) A20 box notified Plaintiffs, under a bold, all-caps header:

**IMPORTANT INFORMATION**

---

[2] On a motion to compel arbitration under the FAA and ruling on a Rule 12(b)(3) motion to dismiss for improper venue, a district court may consider documents outside and integral to the pleadings, such as the agreements giving rise to the alleged obligation to arbitrate.  *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735–36 (7th Cir. 2002).

[3] Likewise, the exterior packaging of Verizon's Galaxy A20 states "**IMPORTANT INFORMATION If you use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement. Full terms, warranty and opt-out information are at www.samsung.com/us/Legal/Phone-HSGuide/, the enclosed materials & device settings.**" *Id.* ¶ 10.

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

> **If you open the package, use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement. Full terms, warranty and opt-out information are at www.samsung.com/us/Legal/Phone-HSGuide/, the enclosed materials & device settings.**

*Id.* ¶ 8. And upon opening the box, Plaintiffs received a printed copy of Samsung's six-page Terms and Conditions insert. *Id.* ¶ 12. Those same Terms and Conditions were also made available both on Samsung's website and pre-loaded on the device in the Settings folder. *Id.* ¶¶ 17, 40. As set out in the image in Appendix B, the first page of the Terms and Conditions instructs the user in bold font to:

> **TERMS & CONDITIONS / HEALTH & SAFETY INFORMATION**
> **Read this document before opening the mobile device, accessories, or software (defined collectively and individually as the "Product") and keep it for future reference. This document contains important Terms and Conditions. Electronic acceptance, opening the Product packaging, use of the Product or retention of the Product constitutes acceptance of these Terms and Conditions.**

*Id.* ¶ 14.

Immediately following the first page and Table of Contents, users are informed of the Arbitration Agreement, and opt-out availability, in bolded text:

> **Important Legal information**
>
> **READ THIS INFORMATION BEFORE USING YOUR MOBILE DEVICE.**
>
> **Arbitration Agreement – This Product is subject to a binding arbitration agreement between you and SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung'). You can opt out of the agreement within 30 calendar days of the first consumer purchase by emailing optout@sea.samsung.com or calling 1-800-SAMSUNG (726-7864) and providing the applicable information. For complete terms and conditions that bind you and Samsung, refer to the "Arbitration Agreement" section of this document.**

*Id.* ¶ 15; Appendix C. Users also are directed to an online version of the Arbitration Agreement and EULA with the full URLs for those documents below the prompt: "The full Arbitration Agreement, Standard One-year Limited Warranty, End User License Agreement (EULA), and Health & Safety information for your device are available online." *Id.*

Still further, users are informed that the Terms and Conditions, Arbitration Agreement, and End User License Agreement can be found on the device itself: "The full Arbitration Agreement, Standard Limited Warranty, End User License Agreement (EULA) and Health & Safety Information are also available on the device, in the Samsung legal section of Settings," with a detailed description on how users could access those materials in the A20's "Settings" folder. *Id.* ¶ 18.

To activate and use the A20, users must complete an electronic device set-up process the first time the phone is turned on. *Id.* ¶ 19. The set-up process requires clicking through a series of interactive screens, and the first interactive screen includes a hyperlink to the full version of the EULA: "By continuing, you agree to the **End User License Agreement** …." *Id.* ¶ 21; Appendix D. Beneath this text, by clicking "Next," Plaintiffs agreed to the terms of the EULA. *Id.* Only after doing so, they were able move onto the next interactive screen to finish setting up the Galaxy A20. *Id.* As set out in Appendix E, the first page of the EULA instructs the user:

> READ THIS INFORMATION BEFORE USING YOUR PRODUCT.
>
> **Please read this document before operating your device, accessories or software (for purposes of this document, defined collectively and individually as "Product") and keep it for future reference. This document contains important terms and conditions with respect to the Product. Retaining or using this Product constitutes acceptance of these terms and conditions and agreement to be bound by them.**

*Id.* ¶ 22.

Because Plaintiff G.T. alleges that she used her A20 to "take photos of herself and other people," FAC ¶ 57, the set-up process was completed—which means that Plaintiffs accepted the Arbitration Agreement. But Plaintiffs do not allege specifically who purchased the phone and completed that set-up process. That said, if G.T. herself did so, then by doing so she represented that she "reviewed this EULA with your parent or legal guardian and that you and your parent or

guardian understand and consent to the terms and conditions of this EULA." *Id.* ¶ 24. She also effectively represented that she was thirteen or older, because the EULA contains an explicit recitation that minors under the age of 13 are not allowed to use the software at issue here. *See id.* ("If you are under the age of 13, you may not license or use this software."). And if the guardian, Ms. Hanlon, completed the process, then as "a parent or guardian permitting a Minor to use the Product, [she] agree[d] to ... assume responsibility and be bound by this EULA for the Minor's access and use of the Product." *See id.* ¶ 23.

Plaintiffs were presented with the Arbitration Agreement contained in both the Terms and Conditions and the EULA—and given the opportunity to opt out of arbitration—on multiple occasions. And at each stage, Plaintiffs ***accepted*** the Arbitration Agreement, including by: (1) opening the box and using the A20 after the box told them that doing so would bind them; (2) using and keeping the A20 after the in-box Terms and Conditions told them doing so amounted to acceptance; and (3) completing the mandatory clickwrap set-up process of the A20 and thereby accepting the EULA.

### B.    The Scope of the Arbitration Agreement

The relevant Arbitration Agreement language is broad and requires arbitration of all disputes related to the Gallery App and other activities on the phone. For example, the first paragraph of the Arbitration Agreement reiterates the binding nature of the agreement:

> **ARBITRATION AGREEMENT**
> This is a binding legal agreement ("Agreement") between you (either an individual or entity) and Samsung.[4] Opening the product packaging, use of the Product, or

---

[4] The Arbitration Agreement also covers Samsung Electronics America, Inc. as a wholly owned subsidiary of Samsung Electronics Co., Ltd ("SEC"). The EULA explains the scope of the agreement on its first page: "This EULA is a legal agreement between you (either an individual or a single entity) and Samsung Electronics Co., Ltd. ("Samsung," "we," "us") for software, whether pre-installed or downloaded, owned by Samsung and/or its affiliated companies and its third party suppliers and licensors." See *id*. ¶ 29. Accordingly, since Defendant Samsung Electronics America, Inc. is a wholly owned subsidiary of SEC, it is an "affiliated company" and thus it is covered by the EULA as well.

retention of the Product constitutes acceptance of this Agreement, regardless of whether you are the original purchaser, user, or other recipient of the Product.

*Id.* ¶ 26. And the next paragraph sets forth its substantive terms, including a class action wavier:

> You and Samsung each agree that, subject to Samsung's right to apply for injunctive remedies set forth in Paragraph 15 above, all disputes between you and Samsung relating in any way to or arising in any way from the Standard Limited Warranty or the sale, condition or performance of the Product shall be resolved exclusively through final and binding arbitration, and not by a court or jury. Any such dispute shall not be combined or consolidated with a dispute involving any other person's or entity's product or claim, and specifically, without limitation of the foregoing, shall not under any circumstances proceed as part of a class action. The arbitration shall be conducted before a single arbitrator, whose award may not exceed, in form or amount, the relief allowed by the applicable law.

*Id.* ¶ 27. Those terms encompass Plaintiffs' claims because those claims are all based on the use of the Gallery App, which is "Samsung Software" under the EULA. *See id.* ¶ 28 ("Samsung Software" includes Samsung applications that are included with or downloaded on the device prior to sale). Thus, Plaintiffs agreed to arbitrate exactly the kinds of claims set out in the Complaint— i.e., "disputes between [Plaintiff] and Samsung relating in any way or arising in any way from … Samsung Software …." *See id.* ¶ 27.

Nor did Plaintiffs opt out of arbitration. The Arbitration Agreement notifies consumers, in bold font, of their opt out rights:

> **You may opt out of this Agreement by providing notice to Samsung no later than 30 calendar days from the date of the first consumer purchaser's purchase of the Product. To opt out, you must send notice by e-mail to optout@sea.samsung.com, with the subject line: "EULA Arbitration Opt Out."**

*Id.* ¶ 31. Also, the Arbitration Agreement allows opt out by phone. *Id.* But Plaintiffs do not allege that they opted out of the Arbitration Agreement, and Samsung has confirmed that it has no record that they did so. *See id.* ¶ 43.

### III.    LEGAL STANDARD

Pursuant to the Federal Arbitration Act (the "FAA"), where an action has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration, upon motion of a party, a court shall stay the trial of that action until the arbitration has been held in accordance with the terms of the agreement."  9 U.S.C. § 3.  This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).  The Seventh Circuit has held that a motion to compel arbitration is a Rule 12(b)(3) motion for improper venue.  *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014).

Under the FAA, the Court must compel arbitration if:  (1) a valid agreement to arbitrate exists, (2) the dispute falls within the scope of the agreement, and (3) the non-moving party has refused to arbitrate.  *Smith v. Cavalry Portfolio Servs. LLC*, No. 20-cv-1375, 2020 WL 7682236, at *1 (N.D. Ill. Dec. 26, 2020), citing 9 U.S.C. § 4; *Zurich Am. Ins. Co. v. Watts Indus., Inc*., 417 F.3d 682, 687 (7th Cir. 2005); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (arbitration is mandatory under these circumstances).  This case meets all three requirements.

### IV.    ARGUMENT

#### A.    Challenges to Enforceability Are Left to the Arbitrator

The Supreme Court has held that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006); *Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 71-73 (2010) (requiring basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene).  Even where a party opposing arbitration specifically challenges the arbitration provision, disputes regarding enforceability are for the arbitrator to

decide where "the parties have demonstrated, clearly and unmistakably that it is their intent to" delegate such questions to the arbitrator. *Rent-A-Ctr.*, 561 U.S. at 79-80; *see also K.F.C. v. Snap, Inc.*, 2021 U.S. Dist. LEXIS 108695, at *3 (S.D. Ill. June 10, 2021) (referring the question of an arbitration agreement's enforceability to a minor to the arbitrator because there was a valid delegation clause contained in the AAA arbitration rules); *Chopper Trading LLC v. Allston Trading LLC*, No. 19-CV-01674, 2021 WL 3709188, at *7 (N.D. Ill. Aug. 20, 2021).

Here, the Arbitration Agreement expressly incorporates the American Arbitration Association's ("AAA") Supplementary Procedures for Consumer-Related Disputes, and specifically AAA's rule that "[t]he arbitrator shall decide all issues of interpretation and application of this Agreement." Cantwell Decl. ¶ 33; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (instructing that "a court possesses no power to decide" arbitrability issues where an agreement contains a delegation clause). Accordingly, the parties have agreed that all challenges to the Arbitration Agreement are to be determined by the arbitrator. Thus, the arbitrator—not the Court—should determine the validity of the Arbitration Agreement, including the impact (if any) of Plaintiff G.T.'s minor status.

### B. The Arbitration Agreement Is Valid and Enforceable

Even if the Court were to reach the arbitrability question and consider challenges to the Arbitration Agreement, it should find that the Arbitration Agreement is valid and enforceable. As set out in more detail in Section C below, Plaintiffs—regardless of their status—affirmatively accepted the EULA and Terms and Conditions. That acceptance is binding on Plaintiff G.T. (and her guardian), making arbitration the proper forum to hear this dispute.[5]

---

[5] Samsung principally addresses Illinois law, which is the law of the forum, because no relevant conflict exists between Illinois and New York on the relevant issues (the Arbitration Agreement's choice-of-law provision selects New York law). *See* Cantwell Decl. ¶ 34; *see also Barron v. Ford Motor Co. of Can.*, 965 F.2d 195, 197 (7th Cir. 1992) ("[B]efore entangling itself in messy issues of conflict of laws a court

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

1.      **Plaintiff G.T. Is Bound by the Agreement Because She Did Not Disaffirm the Contract and Accepted Its Benefits**

The Arbitration Agreement remains a valid and enforceable agreement despite Plaintiff G.T.'s minority status because she continued to use her phone and did not disaffirm the Arbitration Agreement that governs the device and its software.  A contract entered into by a minor is not per se invalid or void; rather, the contract is voidable by the minor if the minor disaffirms the contract. *See Shepherd v. Shepherd*, 97 N.E.2d 273, 279 (Ill. 1951).  That is because, under Illinois law, "the privilege of minority ... is to be used as a shield and not as a sword" since a minor's right to disaffirm a contract before achieving majority "should be exercised with some regard to the rights of others, certainly with as much regard to those rights as is fairly consistent with adequate protection of the rights of the minor himself."  *Id.* at 282; *accord I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 209 (S.D.N.Y. 2015).

This principle means that minors cannot escape arbitration provisions in contracts that they accept the benefits of, as is the case here.  For example, in *Sheller by Sheller v. Frank's Nursery & Crafts*, a court in this District mandated arbitration of minor plaintiffs' claims against their former employer based on an arbitration provision in their employment contract.  957 F. Supp. 150 (N.D. Ill. 1997).  The *Sheller* court held that the minor could not disaffirm a contract with an arbitration provision because their claims depended on their employment, which only existed because of the contract.  Because they accepted the benefits of the employment agreement, the plaintiffs could not disaffirm the arbitration provision they wished to avoid.  Multiple other courts, including in New York, have rejected similar attempts by minors to avoid arbitration clauses and other contractual conditions where, as is the case here, the minors accepted the benefits of those

---

ought to satisfy itself that there actually is a difference between the relevant laws of the different states."). Samsung also cites relevant New York authority on enforcing arbitration clauses where appropriate to show the lack of conflict.

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

contracts. *See Doe #1 v. Coll. Bd.*, 440 F. Supp. 3d 349, 355 (S.D.N.Y. 2020) (enforcing arbitration provision against a minor because a valid contract was never disaffirmed and "New York law offers minors the right to disaffirm a contract, not to find that no enforceable contract exists"); *A.V., et al. v. IParadigms, LLC*, Civ. No. 07-0293 (E.D. Va. Mar. 11, 2008) (minors who entered into valid clickwrap agreement accepted the benefits of the agreement and could not escape agreement's liability waiver); *E.K.D. ex rel. Dawes v. Facebook, Inc*., 885 F. Supp. 2d 894, 896 (S.D. Ill. 2012) (under California law, Facebook's forum selection clause was enforceable because "[m]inors must either accept or repudiate the entire contract, and they cannot retain the contract's fruits and at the same time deny its obligations").

Plaintiff G.T. accepted the benefits of the contract (the EULA and Terms and Conditions)—and more importantly has not repudiated or disaffirmed it. By setting up her device, Plaintiff G.T. necessarily accepted the EULA and the Arbitration Agreement. After setup, Plaintiff G.T. did not repudiate or disaffirm the contract. Instead, she kept using the device—including ***after*** learning how the Gallery App allegedly functions. *E.g.*, FAC ¶ 57 ("[Plaintiff] owns a Samsung Galaxy A20[.]"); *id.* ¶ 64. She thus "cannot retain the contract's fruits and at the same time deny its obligations." *E.K.D.*, 885 F. Supp. 2d at 896. The Arbitration Agreement remains valid, enforceable, and binding as to Plaintiff G.T.

### 2. Plaintiff Is Bound by Her Guardian's Agreements

If (on the other hand) G.T.'s guardian Ms. Hanlon purchased and set up the phone—thereby accepting the EULA and Terms and Conditions—then Plaintiff G.T. is bound by her legal guardian's consent to arbitration under both the theory of agency and the third-party beneficiary doctrine. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co*., 417 F.3d 727, 734-35 (7th Cir. 2005), citing *Ervin v. Nokia, Inc*., 349 Ill. App. 3d 508, 514 (2004); *McAllister Bros. v. A & S Transp. Co*., 621 F.2d 519, 524 (2d Cir. 1980).

First, Plaintiff G.T. is bound by her legal representative's acceptance of the EULA and its Arbitration Agreement because her guardian was her agent for the purposes of the agreement and the use of the device. Under Illinois law, "[a] party to a contract need not personally participate in its formation where he is represented by an agent. An agent may bind his principal contractually upon proof of the agency relationship and proof that the agent had authority to bind his principal in contract." *In re Reed*, 532 B.R. 82, 97 n.7 (Bankr. N.D. Ill. 2015) (quoting *Bull v. Mitchell*, 448 N.E.2d 1016, 1023 (Ill. App. Ct. 1983) (citing 1 Restatement (Second) of Agency § 140)).[6] And multiple courts have specifically applied agency principles to bind minors to digital terms and conditions that were accepted by their parents. In *Motise v. America Online, Inc.*, for example, the court held that a minor plaintiff who used his stepfather's AOL account was bound to the forum-selection provision in the AOL member agreement because "[a]ny other conclusion would permit individuals to avoid the Defendant's Terms of Service simply by having third parties create accounts and then using them as the Plaintiff did." 346 F. Supp. 2d 563, 566 (S.D.N.Y. 2004). *See also Hofer v. Gap, Inc.*, 516 F. Supp. 2d 161, 175-76 (D. Mass. 2007) (plaintiff bound by Expedia's terms and conditions purchased by companion because "the person booking the tickets is acting as an agent on behalf of the other members of the traveling party"); *Adsit Co. v. Gustin*, 874 N.E.2d 1018, 1023-24 (Ind. Ct. App. 2007) (forum selection clause in online agreement enforceable because daughter-in-law provided credit card to mother-in-law for purchase and thereby gave her mother-in-law "actual authority to engage in the transaction on her behalf"); *see generally Taylor v. Samsung Elecs. Am.*, No. 16 C 50313, 2018 WL 3921145, at *5 (N.D. Ill. Aug. 16, 2018) ("[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents,

---

[6] Similarly, under New York law an agent has the authority to bind her principal when the agent's conduct on behalf of the principal reasonably would lead the third party to believe the agent had authority to enter into the contract. *See Hallock v. State*, 64 N.Y.2d 224, 231-32, 474 N.E.2d 1178 (1984).

employees, and representatives are also covered under the terms of such agreements") (internal citations omitted). The same is true here—G.T. should be bound by her representative's acceptance of the Arbitration Agreement.

Second, Plaintiff G.T. is bound by the Arbitration Agreement because she is the third-party beneficiary of the EULA that contains the Arbitration Agreement. "Where it is shown that the signatories to the agreement intended that the nonsignatories were to derive benefits from the agreement and where the arbitration clause itself is susceptible to this interpretation, then arbitration is proper." *Dannewitz v. Equicredit Corp. of Am.*, 333 Ill. App. 3d 370, 373 (2002), citing *Johnson v. Noble*, 240 Ill. App. 3d 731, 735-36 (1992).[7] Here, the EULA contemplates the use of the device and software contained within the device. *See* Cantwell Decl. ¶ 29. And to the extent Ms. Hanlon accepted that agreement so that Plaintiff G.T. could receive the benefits of the contract (i.e., use the phone), Plaintiff G.T. is a third-party beneficiary and thus bound by the EULA and its Arbitration Agreement.[8]

### C. Plaintiffs Agreed to Arbitrate These Claims

In addition to accepting the Arbitration Agreement included in the EULA, Plaintiffs agreed to arbitrate all disputes with Samsung, including those at issue in this purported class action as

---

[7] *See also, e.g.*, *Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*, 2007 WL 951943, at *3, 5 (N.D. Ill. Mar. 27, 2007); *Ogden Power Dev.-Cayman, Inc. v. PMR Ltd.*, No. 14-cv-8169 (PKC), 2015 WL 2414581, at *9 (S.D.N.Y. May 21, 2015); *Spano v. V & J Nat'l Enters.*, LLC , 264 F. Supp. 3d 440, 453 (W.D.N.Y. 2017).

[8] Even if a salesperson helped Plaintiffs activate the phone, the Arbitration Agreement—in the packaging, the in-box Terms and Conditions, and accepted as part of the EULA during setup—are still enforceable because Plaintiffs were on notice of the clause and continued to use the device. *See Boomer v. AT & T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002); *Taylor*, 2018 WL 3921145, at *3; *Velasquez-Reyes v. Samsung Elecs. Am., Inc.*, No. EDCV161953DMGKKX, 2020 WL 6528422, at * 4 (C.D. Cal. Oct. 20, 2020) (enforcing arbitration clause because plaintiff had reasonable inquiry notice as to its terms even though he authorized the T-Mobile representative to click through activation page); *Beture v. Samsung Elecs. Am., Inc.*, No. CV 17-5757 (SRC), 2018 WL 4621586, at *6 (D.N.J. July 18, 2018) ("Even when a carrier store representative performed the [] initialization, a smartphone user still has reasonable notice that use of the device is subject to terms and conditions.").

contained in the Terms and Conditions. There is no doubt that Samsung provided clear and proper notice of the existence of the obligation to arbitrate all disputes, including: (1) on the phone's box; (2) in the printed Terms and Conditions insert included with the phone; and (3) pre-loaded on the phone itself (and available on Samsung's website).[9]

### 1. Plaintiffs Affirmatively Accepted the EULA and Its Arbitration Agreement

Plaintiffs agreed to Samsung's EULA (which contained the Arbitration Agreement) during the phone's set-up process. Like traditional contracts, digital agreements require mutual assent. *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2021 WL 3033586, at * 5 (N.D. Ill. July 19, 2021); *see also Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) ("While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract."). And clicking "I agree" is unquestionably "affirmative consent"—"[c]ourts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of the agreement by clicking 'I agree.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *see also Fischer*, 2021 WL 3033586, at * 5 (finding valid clickwrap agreement when plaintiff registered their account on webpage instructing that "By clicking 'Continue' you represent that you ... have agreed to our terms of use ...."); *Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020).

Here, Plaintiffs agreed to Samsung's EULA through "affirmative assent and affirmative action," *Miracle-Pond*, 2020 WL 2513099, at *5, by clicking "Next" when prompted with the

---

[9] While the Arbitration Agreement's choice-of-law provision selects New York law, "the court must determine whether the parties have a valid contract." *Kaufman v. Am. Express Travel Related Servs. Co.*, 2008 WL 687224, at *3 (N.D. Ill. Mar. 7, 2008). And here, Illinois law governs that issue. *See Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003). That said, New York law on "shrinkwrap" and "clickwrap" contracts accords with Illinois. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836-37 (S.D.N.Y. 2012); *Moore v. Microsoft Corp.*, 293 A.D.2d 587, 741 N.Y.S.2d 91 (2002).

message that "[by] continuing, you agree to the **End User License Agreement** …." *See* Cantwell Decl. ¶ 21; Appendix D. Courts have enforced other "clickwrap" agreements in similar circumstances. In *Miracle-Pond*, for example, a court in this District held that a Shutterfly customer assented to the clickwrap contract when she clicked the button "Accept" accompanied by the prompt that she "agreed to use … Shutterfly … in accordance with Shutterfly's Terms of Use." 2020 WL 2513099, at *1. Similarly, in *Acaley v. Vimeo, Inc.*, the user was found to be bound by Vimeo's terms and conditions after clicking the prompt "[b]y continuing I agree to the terms" because that process "would place a reasonable person on notice that there were terms and conditions connected to his or her continued use of the app." 464 F. Supp. 3d 959, 966 (N.D. Ill. 2020). And in *Beture*, 2018 WL 4621586, at *7, the court held that the ***same*** Samsung EULA was binding on a plaintiff who clicked through the *same* setup process at issue here. *See also Forby v. One Techs., LP*, 2016 U.S. Dist. LEXIS 46141, at *2-3 (S.D. Ill. Apr. 5, 2016) (enforcing online agreement where plaintiff was notified; "By clicking on the 'Continue' button below, you agree to the Offer Details, to the Terms and Conditions, acknowledge receipt of our Privacy Policy and agree to its terms…."). Just as in those cases, Plaintiffs here affirmatively agreed to arbitrate their claims.

2.     **The Arbitration Agreement Was Explained on the Phone's Packaging and in the Terms and Conditions Insert**

When Plaintiffs purchased and used their Galaxy A20, the Terms and Conditions, including the Arbitration Agreement, became effective. Plaintiffs were prominently notified—both on the Galaxy A20's box and in the Terms and Conditions insert—that using or retaining the phone constituted acceptance of the Terms and Conditions, including the Arbitration Agreement.

It is commonplace in modern consumer transactions for terms and conditions to be included in the box for a product. The Seventh Circuit has consistently held that a consumer can be bound

by an arbitration agreement included in a product's terms and conditions by purchasing and using a defendant's device if proper and sufficient notification is provided to the consumer of the existing and binding nature of such arbitration agreements. *See ProCD v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996) (explaining that consumers agree to terms when the seller provides "notice on the outside of the box" and "Terms on the inside," sometimes referred to as a "shrinkwrap" agreement). The Seventh Circuit's decision in *Hill v. Gateway 2000, Inc*., is a seminal and binding case on this issue. In *Hill*, the plaintiffs ordered a computer over the phone, which they later received in a box that also contained "a list of terms"—including an arbitration clause—"said to govern unless the customer returns the computer within 30 days." 105 F.3d 1147 (7th Cir. 1997). After Gateway invoked the binding arbitration clause, the Seventh Circuit noted that many commercial transactions exist in which people pay for products with terms to follow. *Id.* at 1148. Recognizing this reality, the Seventh Circuit acknowledged the benefits to consumers and sellers alike of "approve-or-return" terms and conditions included in or on product packaging and received after a purchase:

> Practical considerations support allowing vendors to enclose the full legal terms with their products. Cashiers cannot be expected to read legal documents to customers before ringing up sales.... Customers as a group are better off when vendors skip costly and ineffectual steps ... and use instead a simple approve-or-return device. Competent adults are bound by such documents, read or unread.

*Id.* at 1149. Ultimately, the Seventh Circuit in *Hill* enforced the arbitration agreement found inside the box—even though the plaintiffs had not seen it before or when they purchased the product— because having a reasonable opportunity to reject the terms is sufficient. *Id.* In line with the *Hill* decision, numerous courts have also enforced both "shrinkwrap" and "inside the box" Samsung

arbitration agreements where the relevant terms and conditions were conspicuously provided to users when they obtained the devices.[10]

Like *Hill,* the Terms and Conditions, including the Arbitration Agreement, were conspicuously noted on the box for the Galaxy A20 in bold font: "**If you open the package, use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement.**" *See* Cantwell Decl. ¶ 8; Appendix A. Likewise, the physical insert of the Terms and Conditions, including the Arbitration Agreement, stated, "**[u]se of the Product or retention of the Product constitutes acceptance of these Terms and Conditions.**" *See id.* ¶¶ 13, 26. And the terms of the Arbitration Agreement were also available on the phone itself, as well as on Samsung's website. *See id.* ¶¶ 17, 40. As was true for each of the Samsung authorities in footnote 10, the Terms and Conditions, including the Arbitration Agreement, are enforceable against Plaintiffs. Plaintiffs received clear notice of the Arbitration Agreement's terms, and they accepted those terms by opening the box and by using the phone. *See id.* ¶ 7.

### D.    The Arbitration Agreement Encompasses Plaintiffs' BIPA Claims

As set out above, the scope of the Arbitration Agreement—including whether it encompasses Plaintiffs' claims—is an issue that should be resolved by the arbitrator. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995). But to the extent the Court reaches that

---

[10] *See In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 298 F. Supp. 3d 1285, 1300 (N.D. Cal. 2018) (arbitration clause binding because plaintiff received notice of arbitration clause and opt-out option in multiple ways); *Taylor*, 2018 WL 3921145, at *4 (enforcing Samsung's shrinkwrap arbitration agreement because the terms and conditions were provided to plaintiff in numerous different ways); *McNamara v. Samsung Telecomms. Am., LLC*, No. 14 C 1676, 2014 WL 5543955, at *1 (N.D. Ill. Nov. 3, 2014) (holding that smartphone's product user guide provided reasonable notice of the arbitration clause); *Schmidt v. Samsung Elecs. Am., Inc.*, No. C16-1725-JCC, 2017 WL 2289035, at *3-4 (W.D. Wash. May 25, 2017) (relying on *Hill* and *ProCD* to enforce shrinkwrap agreement to arbitrate for a different Samsung smartphone under California and Washington law); *In re Samsung Galaxy*, 298 F. Supp. 3d at 1300 (enforcing a shrinkwrap arbitration clause similar to the one at issue here against certain plaintiffs because the materials "direct[] the consumer to read the important legal information and notes in bold that arbitration applies … and includes the capitalized arbitration provision and the bolded procedure describing how to opt out").

question, it should be clear that the Arbitration Agreement *does* encompasses all of the claims asserted in this case because all of those claims stem from Plaintiff's use of the Gallery App. Because the FAA reflects a "liberal federal policy favoring arbitration agreements," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also CK Witco Corp. v. Paper Allied Indus.*, 272 F.3d 419, 421–22 (7th Cir. 2001) ("[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."); *Sportvision, Inc. v. MLB Advanced Media, LP*, 2020 WL 1957450, at *5 (S.D.N.Y. 2020) (enforcing arbitration clause for a claim "arising out of or relating to [the] agreement").

Here, Plaintiffs agreed to arbitrate "all disputes between … Samsung relating in any way to or arising in any way from the EULA, Samsung Software … or the sale, condition or performance of the Product or Samsung Software." *See* Cantwell Decl. ¶ 27. The Seventh Circuit has interpreted arbitration provisions applying similarly broad language—claims "arising out of or relating to" an agreement—as "capable of an expansive reach" under Illinois law. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc*., 174 F.3d 907, 909 (7th Cir. 1999).[11] And the text of the Arbitration Agreement at issue here is even more expansive: it applies to any controversy or claim "relating ***in any way*** to or arising ***in any way*** from" either the EULA *or* Samsung Software— including the Gallery App, since it was included with or downloaded on the device prior to sale. Cantwell Decl. ¶¶ 27, 28 (emphasis added). Thus, any claims related to the Gallery App—i.e., *all*

---

[11] The phrase "arising out of or related to" is also interpreted broadly under New York law. *See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc*., 58 F.3d 16, 20 (2d Cir. 1995).

of Plaintiff's claims in this case—"aris[e] from … Samsung Software" and are therefore covered by the Arbitration Agreement.

> ### E.  All Proceedings Should Be Dismissed, or in the Alternative, Stayed Pending Arbitration

Because all of the claims set forth in the complaint are subject to arbitration, this case should be dismissed pursuant to Rule 12(b)(3) for improper venue. *See Soucy v. Capital Mgmt. Servs., L.P.*, No. 14 C 5935, 2015 WL 404632, at \*4 (N.D. Ill. Jan. 29, 2015). The Seventh Circuit has "repeatedly affirmed district courts' decisions dismissing suits where all of the claims must be arbitrated according to the agreement." *Id*. at \*6. In the alternative, the proceedings should be stayed under Section 3 of the FAA (which governs the Arbitration Agreement), which allows the district court to stay litigation pending the resolution of arbitration. *See* 9 U.S.C. § 3; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

## V.  CONCLUSION

Samsung requests that the Court (1) compel Plaintiffs to arbitrate their claims on an individual basis and (2) dismiss or stay this action pending the outcome of arbitration.

Dated: October 29, 2021       By:*s/Mark H. Boyle*
                                                 Mark H. Boyle

                                                 ATTORNEY FOR DEFENDANT
                                                 SAMSUNG ELECTRONICS AMERICA, INC.
                                                 DONOHUE BROWN MATHEWSON &
                                                 SMYTH LLC
                                                 Mark H. Boyle
                                                 140 South Dearborn Street, Suite 800
                                                 Chicago, IL 60603
                                                 (312) 422-0900

                                                 O'MELVENY & MYERS LLP
                                                 Randall W. Edwards (*pro hac vice*)
                                                 Matthew D. Powers (*pro hac vice*)
                                                 Benjamin C. Seelig (*pro hac vice*)
                                                 Two Embarcadero Center, 28th Floor
                                                 San Francisco, CA 94111-3823
                                                 (415) 984-8700

                                                 Attorneys for Samsung Electronics America,
                                                 Inc.

DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 29th day of October, 2021, he caused the

foregoing DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S MOTION AND

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY

PROCEEDINGS to be filed with the Clerk of the District Court via the CM/ECF system, which

will send notification of such filing to all listed parties.


*s/Mark H. Boyle*

140 South Dearborn Street, Suite 800
Chicago, IL 60603
(312) 422-0900

# Appendix A

# **T··Mobile·**

## **SAMSUNG Galaxy A20** (32GB)<sup>1</sup>

**Packaging Contains: Samsung Galaxy A20, Wall/USB Charger, Quick Reference Guide, Terms and Conditions**

---

**Hearing Aid Compatibility² = M3/T3**

¹ Portion of memory occupied by existing content.
² This phone has been tested and rated for use with hearing aids for some of the wireless technologies that it uses. However, there may be some newer wireless technologies used in this phone that have not been tested yet for use with hearing aids. It is important to try the different features of this phone thoroughly and in different locations, using your hearing aid or cochlear implant, to determine if you hear any interfering noise. Consult T-Mobile or Samsung for information on hearing aid compatibility. If you have questions about return or exchange policies, consult T-Mobile or phone retailer.

**IMPORTANT INFORMATION**
**If you open the package, use or retain the device, you accept Samsung's Terms and Conditions, including an Arbitration Agreement. Full terms, warranty and opt-out information are at www.samsung.com/us/Legal/Phone-HSGuide/, the enclosed materials & device settings.**

**Your device may not work if you alter its original software. Device and screen images simulated. Coverage** not available in some areas. See **Terms and Conditions (including arbitration provision)** at T-Mobile.com, for rate plan information, features and services, coverage maps and additional details.

©2019 Samsung Electronics America, Inc. Samsung and Galaxy are both trademarks of Samsung Electronics Co., Ltd. T-Mobile is a registered trademark of Deutsche Telekom AG. Enclosed items imported. See each item for country of origin. Contains Li-ion battery, dispose per local regulations and not as household waste. Screen images simulated. Appearance of device may vary. FCC ID: A3LSMA205U. Additional details at www.fcc.gov/oet/ea. For more information on your device, please visit www.samsung.com.

**CAUTION: To avoid electric shock and damaging your device, do not charge it while it is wet or near liquids. Do not handle device, charger or cords with wet hands.**

⚠ WARNING: Reproductive Harm – www.P65Warnings.ca.gov





P10000169
SM-A205U
GH69-35081B
Printed in Mexico

# Appendix B

# Terms & Conditions / Health & Safety Information

Read this document before operating the mobile device, accessories, or software (defined collectively and individually as the "Product") and keep it for future reference. This document contains important Terms and Conditions. Electronic acceptance, opening the Product packaging, use of the Product, or retention of the Product constitutes acceptance of these Terms and Conditions.

Revised 03/07/2019

- Arbitration Agreement
- Standard Limited Warranty
- End User License Agreement (EULA)
- Health & Safety Information

# Appendix C

# Important Legal information

**READ THIS INFORMATION BEFORE USING YOUR MOBILE DEVICE.**

**Arbitration Agreement – This Product is subject to a binding arbitration agreement between you and SAMSUNG ELECTRONICS AMERICA, INC. ("Samsung"). You can opt out of the agreement within 30 calendar days of the first consumer purchase by emailing optout@sea.samsung.com or calling 1-800-SAMSUNG (726-7864) and providing the applicable information. For complete terms and conditions that bind you and Samsung, refer to the "Arbitration Agreement" section of this document.**

## Find legal information online

The full Arbitration Agreement, Standard Limited Warranty, End User License Agreement (EULA), and Health & Safety Information for your device are available online:

Arbitration Agreement, Standard Limited Warranty, and Health & Safety Information:

- English: **www.samsung.com/us/Legal/ Phone-HSGuide**
- Spanish: **www.samsung.com/us/Legal/ Phone-HSGuide-SP**

End User License Agreement:

- English: **www.samsung.com/us/Legal/ SamsungLegal-EULA4**
- Spanish: **www.samsung.com/us/Legal/ SamsungLegal-EULA4/#SPANISH**

## Section 1: Arbitration Agreement

THIS IS A BINDING LEGAL AGREEMENT ("AGREEMENT") BETWEEN YOU (EITHER AN INDIVIDUAL OR ENTITY) AND SAMSUNG ELECTRONICS AMERICA, INC. ("SAMSUNG"). ELECTRONIC ACCEPTANCE OF THE AGREEMENT, OPENING THE PRODUCT PACKAGING, USE OF THE PRODUCT, OR RETENTION OF THE PRODUCT CONSTITUTES ACCEPTANCE OF THIS AGREEMENT, REGARDLESS OF WHETHER YOU ARE THE ORIGINAL PURCHASER, USER, OR OTHER RECIPIENT OF THE PRODUCT.

YOU AND SAMSUNG EACH AGREE THAT ALL DISPUTES BETWEEN YOU AND SAMSUNG RELATING IN ANY WAY TO OR ARISING IN ANY WAY FROM THE STANDARD LIMITED WARRANTY OR THE SALE, CONDITION OR PERFORMANCE OF THE PRODUCT SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, AND NOT BY A COURT OR JURY. ANY SUCH DISPUTE SHALL NOT BE COMBINED OR CONSOLIDATED WITH A DISPUTE INVOLVING ANY OTHER PERSON'S OR ENTITY'S PRODUCT OR CLAIM, AND SPECIFICALLY, WITHOUT LIMITATION OF THE FOREGOING, SHALL NOT UNDER ANY CIRCUMSTANCES PROCEED AS PART OF A CLASS ACTION. THE ARBITRATION SHALL BE CONDUCTED BEFORE A SINGLE ARBITRATOR, WHOSE AWARD MAY NOT EXCEED, IN FORM OR AMOUNT, THE RELIEF ALLOWED BY THE APPLICABLE LAW.



The arbitration shall be conducted according to the American Arbitration Association (AAA) Commercial Arbitration Rules applicable to consumer disputes. The AAA Rules are available online at **adr.org** or by calling the AAA at 1-800-778-7879. This Agreement is entered into pursuant to the Federal Arbitration Act. The laws of the State of New York, without reference to its choice of law principles, shall govern the application and interpretation of the Agreement and all disputes that are subject to this Agreement. The arbitrator shall decide all issues of interpretation and application of this Agreement.

For any arbitration in which your total damage claims, exclusive of attorney fees and expert witness fees, are $5,000.00 or less ("Small Claim"), the arbitrator may, if you prevail, award your reasonable attorney fees, expert witness fees and costs as part of any award, but may not grant Samsung its attorney fees, expert witness fees or costs unless it is determined that the claim was brought in bad faith. In a Small Claim case, you shall be required to pay no more than half of the total administrative, facility and arbitrator fees, or $50.00 of such fees, whichever is less, and Samsung shall pay the remainder of such fees. Administrative, facility and arbitrator fees for arbitrations in which your total damage claims, exclusive of attorney fees and expert witness fees, exceed $5,000.00 ("Large Claim") shall be determined according to AAA rules.

# Appendix D



# Appendix E

## END USER LICENSE AGREEMENT FOR SAMSUNG SOFTWARE (EULA)

READ THIS INFORMATION BEFORE USING YOUR PRODUCT.

Please read this document before operating your device, accessories or software (for purposes of this document, defined collectively and individually as "Product") and keep it for future reference. This document contains important terms and conditions with respect to the Product. Retaining or using this Product constitutes acceptance of these terms and conditions and agreement to be bound by them.