IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| G.T., by and through next friend Liliana T. Hanlon, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendant. | Civil Action No: 1:21-cv-04976<br><br>Hon. Martha M. Pacold |

**DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, STAY PROCEEDINGS**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. THE ARBITRATOR SHOULD DECIDE THE ARBITRABILITY OF PLAINTIFF'S CLAIMS ........ 3

III. PLAINTIFF IS BOUND BY HER MOTHER'S ACCEPTANCE OF THE ARBITRATION AGREEMENT ........ 7

- A. Plaintiff Is Bound Because Her Mother Accepted the Arbitration Agreement on Her Behalf ........ 7
- B. Plaintiff Is Bound by the Arbitration Agreement as an Intended Beneficiary ........ 10

IV. PLAINTIFF'S DISAFFIRMANCE SHOULD NOT ALLOW HER TO AVOID ARBITRATION ........ 12

V. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.D. v. Credit One Bank, N.A.*,
885 F.3d 1054 (7th Cir. 2018) .......... 12

*Andes v. Lauer*,
399 N.E.2d 990 (Ill. App. Ct. 1980) .......... 9

*B.F. v. Amazon*,
No. C19-910-RAJ-MLP, 2019 WL 9364164 (W.D. Wash. Oct. 21, 2019) .......... 9

*Bost v. Paulson's Enters., Inc.*,
343 N.E.2d 168 (Ill. App. Ct. 1976) .......... 9

*Brice v. Plain Green, LLC*,
13 F.4th 823 (9th Cir. 2021) .......... 5

*Brown v. Worldpac, Inc.*,
No. 17 CV 6396, 2018 WL 656082 (N.D. Ill. Feb. 1, 2018) .......... 11

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) .......... 6

*Burns v. Wilderness Ventures, Inc.*,
No. 12 C 4188, 2012 WL 3779069 (N.D. Ill. Aug. 30, 2012) .......... 7, 8, 9

*Camp v. TNT Logistics Corp.*,
No. 04-1358, 2006 WL 91318 (C.D. Ill. Jan. 12, 2006) .......... 12

*Carlson v. Vill. of Glen Ellyn*,
158 N.E.2d 225 (Ill. App. Ct. 1959) .......... 9

*Citadel Servicing Corp. v. Castle Placement, LLC*,
431 F. Supp. 3d 276 (S.D.N.Y. 2019) .......... 11

*Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*,
417 F.3d 727 (7th Cir. 2005) .......... 11

*Costello v. City of Aurora*,
15 N.E.2d 38 (Ill. App. Ct. 1938) .......... 9

*Dannewitz v. Equicredit Corp. of Am.*,
775 N.E.2d 189 (Ill. App. Ct. 2002) .......... 12

*Dillon v. Ski Shawnee, Inc.*,
No. CIV.A. 13-7155 JAP, 2014 WL 3900877 (D.N.J. Aug. 11, 2014) .......... 8

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Ervin v. Nokia, Inc.*,
349 Ill. App. 3d 508 (2004) .......... 12

*Gibbs v. Sequoia Capital Operations, LLC*,
966 F.3d 286 (4th Cir. 2020) .......... 6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524 (2019) .......... 3, 4, 5

*Hill v. Gateway 2000, Inc.*,
105 F.3d 1147 (7th Cir. 1997) .......... 14

*I.C. ex rel. Solovsky v. Delta Galil USA*,
135 F. Supp. 3d 196 (S.D.N.Y. 2015) .......... 14

*In re Cassidy*,
892 F.2d 637 (7th Cir. 1990) .......... 2

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
298 F. Supp. 3d 1285 (N.D. Cal. 2018) .......... 15

*In re StockX Customer Data Sec. Breach Litig.*,
No. 19-12441, 2020 WL 7645597 (E.D. Mich. Dec. 23, 2020) .......... 5

*Ingram v. Neutron Holdings, Inc.*,
467 F. Supp. 3d 575 (M.D. Tenn. 2020) .......... 5, 7

*Iverson v. Scholl, Inc.*,
483 N.E.2d 893 (Ill. App. Ct. 1985) .......... 14

*Jackson v. Payday Fin., LLC*,
764 F.3d 765 (7th Cir. 2014) .......... 6

*Johnson v. Noble*,
240 Ill. App. 3d 731 (1992) .......... 11

*K.F.C. v. Snap*,
No. 3:21-cv-9-DWD, 2021 U.S. Dist. LEXIS 108695 (S.D. Ill. June 10, 2021) .......... 5, 6

*Kuznik v. Hooters of Am., LLC*,
No. 1:20-CV-01255, 2020 WL 5983879 (C.D. Ill. Oct. 8, 2020) .......... 5

*Logan Cty. Bank v. Taylor*,
295 N.E.2d 743 (Ill. App. Ct. 1973) .......... 14

*MacDonald v. CashCall, Inc.*,
883 F.3d 220 (3d Cir. 2018) .......... 6

*Motise v. Am. Online, Inc.*,
346 F. Supp. 2d 563 (S.D.N.Y. 2004) .......... 8

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Norcia v. Samsung Telecomms. Am., LLC*,
845 F.3d 1279 (9th Cir. 2017) .......... 14, 15

*Pang v. Samsung Elecs. Am., Inc.*,
371 F. Supp. 3d 633 (N.D. Cal. 2019) .......... 15

*Parker v. VIVA USA, Inc.*,
No. 19-CV-5184, 2020 WL 4430568 (N.D. Ill. July 31, 2020).......... 12

*Rent-A-Ctr. W., Inc. v. Jackson*,
561 U.S. 63 (2010).......... 3, 5, 6

*Schroder v. Teufel*,
No. 17-C-6119, 2017 WL 5569758 (N.D. Ill. Nov. 20, 2017) .......... 4

*Sheller by Sheller v. Frank's Nursery & Crafts*,
957 F. Supp. 150 (N.D. Ill. 1997) .......... 3, 13, 14

*Shepherd v. Shepherd*,
97 N.E.2d 273 (Ill. 1951) .......... 13

*Sosa v. Onfido Inc.*,
8 F.4th 631 (7th Cir. 2021) .......... 11

*Swiger v. Rosette*,
989 F.3d 501 (6th Cir. 2021) .......... 6

*Vega–Perez v. Carnival Cruise Lines*,
361 F. Supp. 2d 1 (D.P.R. 2005).......... 8

*Wilcosky v. Amazon.com, Inc.*,
517 F. Supp. 3d 751 (N.D. Ill. 2021) .......... 9

**RULES**

Fed. R. Civ. P. 12(b)(3).......... 3

## I. INTRODUCTION

In essence, Plaintiff's argument is that a minor could never be bound by any terms of use for any product—even where, as here, the minor's parent or guardian buys the product for the minor, agrees to those terms on the minor's behalf, and the minor then uses the product that was subject to those terms. Plaintiff's position is contrary to Illinois law and to common sense, and the Court should reject Plaintiff's arguments for multiple reasons.

Plaintiff has no choice but to put forth this patently untenable position because she would otherwise have no basis to avoid the Arbitration Agreement that her mother, Hanlon, expressly agreed to at the time she purchased and set up a Galaxy A20 smartphone for her minor child. In her opposition, Plaintiff does not dispute that the Arbitration Agreement language is clear, its broad scope covers all disputes (including BIPA claims) arising from use of Plaintiff's phone, and Hanlon received proper notice of and explicitly agreed to the Arbitration Agreement. Indeed, Plaintiff's mother has submitted a declaration confirming that she went through that process. Hanlon Decl. ¶ 6.

The opposition instead depends entirely on the flawed argument that Plaintiff is not bound by the Arbitration Agreement her mother accepted as part of the phone's purchase and setup—completed ***on Plaintiff's behalf*** to activate the phone her mother gave her—despite clear language in the Arbitration Agreement that states "***use*** of the Product, or ***retention*** of the Product constitutes acceptance of this Agreement, ***regardless of whether you are the original purchaser, user, or other recipient.***" Mot. at 6-7; Cantwell Decl. ¶ 26 (emphasis added). As an initial matter, Plaintiff and her mother should be estopped from arguing that Hanlon did not have the authority to bind Plaintiff to the dispute resolution procedure in the Arbitration Agreement, given that her mother is also the "next friend" purporting to act with authority for Plaintiff in pursuing this legal action. The doctrine of judicial estoppel is designed to prevent just such contradictory

arguments. *See generally In re Cassidy*, 892 F.2d 637, 641-42 (7th Cir. 1990) (general principle of judicial estoppel applies "to prevent litigations from playing fast and loose with the courts" where "intentional self-contradiction is being used as a means of obtaining unfair advantage") (internal citations and quotations omitted). In addition, each argument advanced in Plaintiff's opposition fails on its merits.

First, Plaintiff ignores controlling authorities on a key threshold issue of whether the Court should even adjudicate Plaintiff's effort to avoid the Arbitration Agreement. The Supreme Court has made clear that under a standard delegation clause, as exists in the Arbitration Agreement, whether Plaintiff can escape the dispute resolution procedure her mother agreed to is a question of enforceability to be decided by the arbitrator, and not the court. Plaintiff's authorities do not and cannot override this controlling rule.

Second, even if the Court reaches the enforceability question despite the contrary controlling authority, Plaintiff's substantive contention that the agreement is unenforceable against her is wrong. Under Illinois law, a minor or a parent acting on the minor's behalf can enter into contracts that include venue or dispute resolution provisions. Plaintiff's minority status does not allow avoidance of an agreement's terms where her parent accepted the terms and the minor accepted the benefits under the agreement. Plaintiff's argument that her mother lacked authority to bind her relies on authorities that plainly do not apply, as explained below.

Third and finally, Plaintiff's attempt to disaffirm the contract now cannot change the binding nature of the Arbitration Agreement ***at the time of the phone's use***. To be sure, a minor can disaffirm a contract in certain circumstances. But under established equitable principles in Illinois, a minor cannot disaffirm a contract after having received benefits of the contract that she cannot "give back," where those benefits give rise to her claim. *Sheller by Sheller v. Frank's*

*Nursery & Crafts*, 957 F. Supp. 150, 153-54 (N.D. Ill. 1997). Plaintiff's attempted "disaffirmance" of the EULA containing the Arbitration Agreement fails because she cannot give back the benefits she already received—her past use of the phone was only possible because her mother accepted the EULA when the phone was set up and given to Plaintiff. True "disaffirmance" would put the parties back to the position they were in before Plaintiff used the phone—including before any use of the Gallery App—meaning that Plaintiff cannot both "disaffirm" the EULA and still retain her claims that stem from her use of the phone.

Because Plaintiff must arbitrate the claims in this case, this Court should dismiss the action under Rule 12(b)(3) or enter a stay pending arbitration.

## II. THE ARBITRATOR SHOULD DECIDE THE ARBITRABILITY OF PLAINTIFF'S CLAIMS

At the time of purchase and the setup of the phone, Plaintiff's mother expressly agreed with Samsung that all challenges to the Arbitration Agreement are to be determined by the arbitrator, not the Court. Plaintiff's opposition acknowledges that Hanlon agreed to the Arbitration Agreement when she opened the phone's packaging and completed the clickwrap activation and setup process, allowing Plaintiff to use it. Opp. at 1; Hanlon Decl. ¶ 6. Plaintiff also does not dispute that the Arbitration Agreement delegates all issues of arbitrability to the arbitrator. Mot. at 9; Cantwell Decl. ¶ 33. Those concessions are dispositive: Supreme Court law mandates that the arbitrator—not the court—determine the arbitrability of a claim where the arbitration clause contains a valid delegation clause, as the Arbitration Agreement here does. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529-30 (2019) ("parties may agree to have an arbitrator decide … 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy"); *Rent-A-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010).

The Court should not usurp the arbitrator's role here because the present dispute is one of arbitrability: a question of enforceability of the EULA's Arbitration Agreement against a minor Plaintiff where Plaintiff's mother clearly assented to its terms. There is no dispute that Plaintiff's mother accepted the EULA and thereby agreed to arbitrate all claims arising out of the use of the phone when she set up the phone. And the only reasonable conclusion based on the factual allegations in the complaint (and Hanlon's declaration) is that she did so on Plaintiff's behalf so that Plaintiff could use the phone. Because Plaintiff's mother accepted the EULA, the only dispute is one of arbitrability—i.e., whether her mother's acceptance on her behalf means that the EULA governs Plaintiff's use of the phone. In her opposition, Plaintiff tries to avoid clear law—that arbitrability questions are decided by the arbitrator—by disputing whether any contract was formed at all. Opp. at 3-4. But the factual allegations leave no doubt that there ***is*** a valid contract: Plaintiff's mother accepted the EULA, including the Arbitration Agreement, so contract formation is not the issue. Instead, enforceability against Plaintiff as a minor is the issue. And that is a question for the arbitrator.

As the Supreme Court has explained, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 530; *see also Schroder v. Teufel*, No. 17-C-6119, 2017 WL 5569758, at *4 (N.D. Ill. Nov. 20, 2017) (collecting cases) ("courts in this district have consistently concluded that an arbitration agreement's incorporation of the AAA's rules into the arbitration clause qualifies as a clear and unmistakable expression of the parties' intent to leave the question of the arbitration clause's validity to the arbitrator"). In this case, it is therefore for the arbitrator and not the Court to decide the enforceability of the EULA, with its Arbitration Agreement provisions, including whether Plaintiff's minor status impacts enforceability.

Plaintiff does not rebut the binding Supreme Court precedent holding that questions as to scope and enforceability of an arbitration provision must be resolved by the arbitrator. *Henry Schein*, 139 S. Ct. at 530; *Rent-A-Ctr. W., Inc.*, 561 U.S. at 69-70. That is because she cannot do so. Indeed, that was precisely the holding of *K.F.C. v. Snap*, discussed in Samsung's opening brief but largely ignored in Plaintiff's opposition. No. 3:21-cv-9-DWD, 2021 U.S. Dist. LEXIS 108695 (S.D. Ill. June 10, 2021). The court there held that the ***arbitrator*** should decide whether an arbitration clause that incorporated an AAA delegation provision could be enforced against a minor because the "incorporation of the AAA's rules provides clear and unmistakable evidence of intent to delegate threshold issues of the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim to the arbitrator." *Id*. at *3 (internal quotations omitted); *see also Kuznik v. Hooters of Am.*, *LLC*, No. 1:20-CV-01255, 2020 WL 5983879, at *4-5 (C.D. Ill. Oct. 8, 2020) (enforcing employment agreement's arbitration clause against former minor employee who challenged enforceability on basis of his minority status); *In re StockX Customer Data Sec. Breach Litig*., No. 19-12441, 2020 WL 7645597, at *6 (E.D. Mich. Dec. 23, 2020) (under a valid delegation clause the arbitrator had "exclusive authority" to determine "the issue of whether a minor effectively disaffirmed the arbitration agreement"); *Ingram v. Neutron Holdings, Inc.*, 467 F. Supp. 3d 575, 581-82 (M.D. Tenn. 2020) (ordering arbitration where the plaintiff raised the defense of infancy as a challenge to an arbitration agreement with a valid delegation clause).

The authorities cited by Plaintiff to avoid the Arbitration Agreement's clear delegation clause do not support her position. For example, several of those out-of-circuit cases actually ***enforced*** arbitration provisions and their delegation clauses. *See Brice v. Plain Green, LLC*, 13 F.4th 823, 830 (9th Cir. 2021) (finding the delegation enforceable); *Swiger v. Rosette*, 989 F.3d

501, 505 (6th Cir. 2021) (same). Likewise, in *Rent-A-Center*, the court did not even consider the delegation clause because the respondent did not specifically challenge that provision in the arbitration agreement. 561 U.S. at 72-73; *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) (holding "a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause within it, must go to the arbitrator, not the court"). In fact, the only two cases Plaintiff cites where the court invalidated the delegation clause, *Gibbs v. Sequoia Capital Operations, LLC*, and *MacDonald v. CashCall, Inc.*, involved legal issues of tribal law that have nothing to do with the issues in this case. 966 F.3d 286, 294 (4th Cir. 2020); 883 F.3d 220, 226 (3d Cir. 2018).[1]

Finally, Plaintiff claims that the "Delegation Clause and Arbitration Agreement are both unenforceable [because] Plaintiff is a minor and hereby disaffirms any contract she may have with Samsung." Opp. at 16. Her disaffirmance argument generally fails, for the reasons explained in Section IV, *infra*. And specifically as to the delegation clause, Plaintiff does not cite a single case that holds that disaffirmance negates a valid delegation clause in an arbitration provision. Even where a party tries to disaffirm a contract containing a delegation clause, courts still uphold that provision and send the question of arbitrability to the arbitrator. *See K.F.C.,* 2021 U.S. Dist. LEXIS 108695, at *3 (since the "delegation clause contained in the AAA arbitration rules appears to be valid, the court must refer to the arbitrator the question of the arbitration agreement's enforceability—including issues related to Plaintiff's status as a minor and the effectiveness of any disavowal on the part of the Plaintiff"); *Ingram*, 467 F. Supp. 3d at

[1] The agreement in *MacDonald v. CashCall, Inc.,* was found to be "illusory" and "unreasonable" because it required the arbitration to be conducted by the Cheyenne River Sioux Tribal Nation, even though the tribe did not offer arbitration services. 883 F.3d at 228, citing *Jackson v. Payday Fin.*, *LLC*, 764 F.3d 765, 776 (7th Cir. 2014). The choice-of-law provision in the arbitration provision in *Gibbs v. Sequoia Capital Operations* was held to be unconscionable because the application of tribal law would "stymie the vindication of [plaintiff's] federal statutory claims." 966 F.3d at 294.

581-82 (deciding that the minor plaintiff's attempted repudiation of the arbitration agreement was a question of arbitrability to be decided by the arbitrator).

In short, Plaintiff's mother agreed to the Arbitration Agreement that contained a valid delegation clause. The question of enforcement against Plaintiff is therefore one of arbitrability that should be decided by the arbitrator and not this Court.

## III. <u>PLAINTIFF IS BOUND BY HER MOTHER'S ACCEPTANCE OF THE ARBITRATION AGREEMENT</u>

### A. <u>Plaintiff Is Bound Because Her Mother Accepted the Arbitration Agreement on Her Behalf</u>

Plaintiff's opposition and the Hanlon declaration expressly admit that her mother purchased and set up the phone—necessarily accepting the EULA terms as detailed in Samsung's opening brief—and then gave it to Plaintiff. Opp. at 1; Hanlon Decl. ¶¶ 6-7. Plaintiff does not dispute that her mother purchased the phone for Plaintiff, nor does she allege that the phone was primarily intended for anyone else (or that anyone else used it once her mother set it up for her). These admissions are dispositive to establish that her mother accepted the EULA (including the Arbitration Agreement) on Plaintiff's behalf so as to enable Plaintiff's use of the phone. This, in turn, means Plaintiff is bound by her legal guardian's agreement to arbitration. Plaintiff's radical argument—that a parent cannot bind her child to comply with terms for a product's use—is contrary to established law.

As multiple courts have held, minors ***can*** be bound by dispute procedures in contracts entered into by their parents on the minors' behalf. For example, a court in this District applied Illinois law to enforce a venue provision against the administrator of the estate of a decedent minor daughter where the minor's parent entered into an agreement with the defendant on the minor's behalf. *Burns v. Wilderness Ventures, Inc.*, No. 12 C 4188, 2012 WL 3779069, at *3 (N.D. Ill. Aug. 30, 2012). As the court in *Burns* explained, enforcement of the agreement's

dispute resolution provision was warranted, particularly where (as here) it "does not seek to limit [the minor's estate's] substantive right to sue, but rather only to limit the procedural avenues of such suit to those mutually agreed." *Id.* Indeed, the court specifically held that "the fact that [decedent] was a minor does not alter the fact that her legal guardian adult signed contracts containing procedural limitations on her behalf." *Id. See also Dillon v. Ski Shawnee, Inc.*, No. CIV.A. 13-7155 JAP, 2014 WL 3900877, at *2 (D.N.J. Aug. 11, 2014) (holding that parent can bind a minor child to a forum-selection clause contained in the terms associated with a ski lift ticket that the parent purchased for the child); *Vega–Perez v. Carnival Cruise Lines*, 361 F. Supp. 2d 1 (D.P.R. 2005) (enforcing forum-selection clause contained in cruise ship passage contract executed by minor's mother). Plaintiff likewise cannot avoid her mother's acceptance of the Arbitration Agreement on her behalf.

Plaintiff's effort to distinguish Samsung's authority is unavailing. The facts here are akin to *Motise*: Plaintiff used a device her mother gave her that was subject to the EULA, just like the plaintiff in *Motise* used his stepfather's AOL account and thus was bound by AOL's terms of service. *Motise v. Am. Online, Inc.*, 346 F. Supp. 2d 563, 566 (S.D.N.Y. 2004). Plaintiff argues that she did not "impersonate" her mother, so the terms should not apply to her. Opp. at 7. But that argument ignores the EULA's language to which her mother expressly agreed: "use of the Product, or retention of the Product constitutes acceptance of this Agreement, regardless of whether you are the original purchaser, user, or other recipient of the Product." Mot. at 6-7.

Plaintiff does not cite a single case under Illinois law refusing to enforce an arbitration agreement against a minor when the minor's parent accepted it for the minor. [2] Instead, Plaintiff

[2] Plaintiff agrees that there is no substantive difference or conflict between Illinois and New York law, Opp. at n.2, and she fails to cite any New York cases barring the enforcement of an arbitration clause against a minor when the minor's parent accepted contractual terms on the minor's behalf.

argues generally that a parent and legal guardian cannot bind a minor child to a product's terms and conditions for use. Opp. at 5. That is simply not the law, and none of Plaintiff's authorities support her argument. In *Bost*, the court actually ***enforced*** a trust agreement that was signed by the father of a minor prior to his being appointed her guardian because "to allow [the minor] to avoid the trust agreement … would allow her to perpetrate a fraud." *Bost v. Paulson's Enters., Inc.*, 343 N.E.2d 168, 172 (Ill. App. Ct. 1976). In *Andes*, there was no contract involved at all. *Andes v. Lauer*, 399 N.E.2d 990, 993 (Ill. App. Ct. 1980) (holding in a Dram Shop Act subrogation dispute that contributory negligence could not be imputed on the parent of minor who crashed the parent's car).[3]

Plaintiff's two other authorities (*Carlson* and *Costello*) are inapplicable because they involved ***failures*** to act by the parents or legal representatives by filing timely claims, resulting in a waiver of a substantive legal right. *Carlson v. Vill. of Glen Ellyn*, 158 N.E.2d 225, 227 (Ill. App. Ct. 1959); *Costello v. City of Aurora*, 15 N.E.2d 38, 40 (Ill. App. Ct. 1938). Here, to the contrary, Plaintiff's mother is acting on behalf of Plaintiff as her next friend in bringing her claim. Nor is complying with the Arbitration Agreement a waiver of any substantive right—Plaintiff and her mother will be able to litigate the merits of Plaintiff's claims in arbitration. Instead, as in *Burns*, the present dispute is centered on a procedural limitation—one that parents ***can*** agree to on behalf of their minor children. *See Burns*, 2012 WL 3779069, at *3 (guardian's

[3] Plaintiff's reliance upon *B.F. v. Amazon*, No. C19-910-RAJ-MLP, 2019 WL 9364164 (W.D. Wash. Oct. 21, 2019), and *Wilcosky v. Amazon.com, Inc*., 517 F. Supp. 3d 751 (N.D. Ill. 2021), do not support her position either. Both involved minors' use of their parents' Alexa device, and neither involved a situation like here where the minor's parents agreed on behalf of the minor to an agreement with an arbitration clause. In *B.F.*, which also was based on Washington (not Illinois) law, the court specifically distinguished that case from one where parents agreed on their minor children's behalf to arbitrate their children's claim. 2019 WL 9364164, at *10-11. And in *Wilcosky*, the minor plaintiff in that case was three years old and had no active involvement in the use of the Alexa device. 517 F. Supp. 3d at 771.

acceptance of forum selection clause on minor's behalf did not limit right to sue). In short, Plaintiff is bound by the Arbitration Agreement that her mother entered on her behalf.

### B. Plaintiff Is Bound by the Arbitration Agreement as an Intended Beneficiary

Plaintiff's assertion that she was not a third-party intended beneficiary of the EULA and Arbitration Agreement should be rejected out of hand—she was admittedly the user of the device given to her by her mother, and those agreements encompass her use. As the Arbitration Agreement explains (in language that Plaintiff simply ignores): "***use*** of the Product, or ***retention*** of the Product constitutes acceptance of this [Arbitration] Agreement, ***regardless of whether you are the original purchaser, user, or other recipient***." Mot. at 6-7 (emphasis added). Moreover, the Agreement applies to "all disputes between you and Samsung relating in any way to or arising in any way from the … condition or performance of the Product." *Id.*

Given the complaint's allegations and the declaration of Plaintiff's mother confirming she gave the phone to Plaintiff following its purchase and setup, the Court should reject Plaintiff's conclusory assertion that her mother did not purchase and set up the phone "for G.T.'s benefit." *Contra* Opp. at 9. Here the facts are clear: Hanlon bought the phone, set it up, and then promptly gave it to her minor daughter, G.T. Hanlon Decl. ¶¶ 6-7; FAC ¶¶ 57-59. The entire point of Hanlon's actions was to acquire and set up the phone ***so Plaintiff could use it***. And Plaintiff unquestionably benefited from her use of the phone that her mother gave her.

Nevertheless, Plaintiff argues that she is not an intended beneficiary of her mother's actions. Opp. at 9. Again, Plaintiff's position is contrary to the law and common sense. As Plaintiff recognizes, *id*. at 8, under Illinois law a third-party beneficiary relationship is created "where the arbitration clause itself is susceptible to [the] interpretation" that "the signatories to the agreement intended that the nonsignatories were to derive benefits from the agreement."

*Brown v. Worldpac, Inc.*, No. 17 CV 6396, 2018 WL 656082, at *3 (N.D. Ill. Feb. 1, 2018). *See also* Mot. at 11, 13 & n.7 (citing cases). Plaintiff attempts to distinguish two of those cases by arguing the third-party beneficiaries were signatories, Opp. at 10, but both cases do not turn on that fact and directly support the enforceability of an arbitration provision against a third-party beneficiary where that third party is encompassed by the underlying agreement, as Plaintiff is here. *Johnson v. Noble*, 240 Ill. App. 3d 731, 735-36 (1992) ("Where it is shown that the signatories to the agreement intended that the nonsignatories were to derive benefits from the agreement and where the arbitration clause itself is susceptible to this interpretation, then arbitration is proper."); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 735 (7th Cir. 2005) (enforcing participation agreement against non-signatory beneficiary because the non-signatory was contemplated by the clear terms of the agreement).[4]

Plaintiff also cites *Sosa v. Onfido Inc.*, 8 F.4th 631, 639 (7th Cir. 2021), but that case involved terms of service that ***did not*** contemplate the non-party defendant. In contrast, the Arbitration Agreement in this case broadly and explicitly applies to any user of the phone: "Opening the product packaging, ***use of the Product, or retention of the Product constitutes acceptance of this Agreement, regardless of whether you are the original purchaser, user, or other recipient of the Product***." Mot. at 6-7 (emphasis added). The facts here more closely align with those in *Brown*, where the court held that the defendant's customer could enforce an arbitration agreement as a third-party beneficiary because the arbitration clause covered all disputes involving the defendant "or its customers" even though the customer was not explicitly named in the agreement. 2018 WL 656082, at *2. *See also Parker v. VIVA USA, Inc.*, No. 19-

---

[4] Contrary to Plaintiff's argument, Opp. at n.7, New York law, like Illinois law, is that when an arbitration clause clearly contemplates third parties, the arbitrability of those non-signatories' claims should be decided by an arbitrator. *Citadel Servicing Corp. v. Castle Placement, LLC*, 431 F. Supp. 3d 276, 287-88 (S.D.N.Y. 2019).

CV-5184, 2020 WL 4430568, at *3 (N.D. Ill. July 31, 2020) (granting motion to compel arbitration where non-signatory beneficiary is identified in arbitration clause as defendant's "customer"); *Camp v. TNT Logistics Corp*., No. 04-1358, 2006 WL 91318, at *4 (C.D. Ill. Jan. 12, 2006) (differentiating *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508 (2004), and holding that a non-signatory third party was an "intended third-party beneficiary … subject to the provisions of the arbitration clause contained therein" when reading the contract as a whole).[5]

When she accepted the EULA, Hanlon represented that she would "assume responsibility and be bound by this EULA for the Minor's access and use of the Product." Mot. at 6; Cantwell Decl. ¶ 23. She represented that Plaintiff would be bound by the Arbitration Agreement and that Plaintiff was older than 13. *See* Mot. at 5-6. Hanlon's misrepresentation of Plaintiff's age does not invalidate Hanlon's agreement that Plaintiff would be bound by the Arbitration Agreement as the intended beneficiary user of the phone.

## IV. <u>PLAINTIFF'S DISAFFIRMANCE SHOULD NOT ALLOW HER TO AVOID ARBITRATION</u>

Plaintiff cannot avoid the Arbitration Agreement now by attempting to "disaffirm" the EULA that controlled her use of the phone. *Contra* Opp. at 11-14. Her attempt to disaffirm fails because Plaintiff cannot return the benefits that she gained through the use of the device. True disaffirmance would require fully undoing her relationship to Samsung—including the use of her

---

[5] Plaintiff's other cases are inapplicable. In *A.D. v. Credit One Bank, N.A*., the court applied materially different Nevada and California laws, which specify that minors lack the capacity to enter into contracts. 885 F.3d 1054, 1062 n.10 (7th Cir. 2018). And even then the court only held the mother's agreement did not bind the minor because the minor had only used her mother's credit card ***once*** and was not an "Authorized User" and, therefore, not required to arbitrate TCPA claims. *Id.* at 1062. And *Dannewitz v. Equicredit Corp. of Am.* concerned a defendant attempting to compel arbitration pursuant to a mortgage loan plaintiff signed with another company, where the contract explicitly defined the covered persons in a way that excluded the defendant. 775 N.E.2d 189, 192 (Ill. App. Ct. 2002).

phone that she alleges as the basis for her complaint, thereby dissolving her claims in this case. *Sheller*, 957 F. Supp. at 154.

Under Illinois law, a minor's ability to disaffirm a contract is limited by equitable principles that forbid the disaffirming party from being in a ***better*** position than had they never entered into the contract. In *Shepherd v. Shepherd*, for example, the Illinois Supreme Court held that the equities forbid a plaintiff from disaffirming a quitclaim deed he entered into as a minor because "the privilege of minority ... is to be used as a shield and not as a sword." 97 N.E.2d 273, 282 (Ill. 1951). Plaintiff's opposition never addresses *Shepard* because her position is exactly what that case forbids: she used the phone for months but now purports to "disaffirm" the agreements ***after*** she enjoyed the use of the phone that gave rise to this action.

On these facts, Plaintiff's contention that she "is still free to disaffirm because that is a benefit she can return," Opp. at 14, should be rejected. As the court in *Sheller* made clear, equitable principles prevent a minor from repudiating a contract while having retained the advantage of a contract that entitled them to bring suit. 957 F. Supp. at 154. Likewise here Plaintiff cannot "return" her prior use of the phone or the functionality Samsung made available to her under the EULA. And simply giving the phone back ***now***, after using it for an extended period and engaging in the conduct at issue in this suit, would leave Plaintiff in a better position than before. Plaintiff argues that *Sheller* does not apply to this case, but she once again is wrong. First, Plaintiff contends that *Sheller* "did not apply Illinois law" (Opp. at n.10) on the relevant issue of enforceability, which is simply incorrect. 957 F. Supp. at 153-34. Second, the holding of *Sheller* clearly applies to these claims. In *Sheller*, the court enforced an arbitration clause against the plaintiffs in order to prevent them from using their status as minors to disaffirm a benefit (their employment) they had already received: "[a]fter disaffirmance, the infant is not

entitled to be put in a position superior to such a one as he would have occupied if he had never entered into the voidable agreement" since the minor "is not entitled to retain an advantage from a transaction which he repudiates." *Id*. at 153 (internal citations omitted).

None of the "disaffirmance" cases Plaintiff cites support her position. One held the minor could ***not*** disaffirm because the plaintiff there, like Plaintiff here, would unfairly benefit if she were allowed to disaffirm. *I.C. ex rel. Solovsky v. Delta Galil USA*, 135 F. Supp. 3d 196, 208 (S.D.N.Y. 2015) ("not allowing disaffirmance because if plaintiff disaffirmed the contract she would be in a superior position than at the time she entered the contest" through the ownership of rights to a T-shirt design). And in the other cases Plaintiff cites, the minor never actually received any benefits under the contract that they were attempting to disavow—unlike Plaintiff here, those plaintiffs ***were*** able to return to the status quo by "disaffirming" the agreements. *Iverson v. Scholl, Inc*., 483 N.E.2d 893, 897 (Ill. App. Ct. 1985) (allowing disaffirmance where minor beneficiary never received the benefit of uncle's life insurance policy because she was induced into endorsing death benefit check to a third party); *Logan Cty. Bank v. Taylor*, 295 N.E.2d 743 (Ill. App. Ct. 1973) (not analyzing if a benefit was unfairly conferred upon former minor in analyzing if turning car over to bank was an act of disaffirmance).

Finally, Plaintiff contends that because she ***could have*** opted out of the Arbitration Agreement, she did not benefit from the Arbitration Agreement even though she did not actually opt out. Plaintiff misses the point: Plaintiff benefited from the use of the phone, which was governed by the EULA; and not whether Plaintiff benefited separately from the specific Arbitration Agreement in it. In her brief, Plaintiff cites *Norcia v. Samsung Telecommunications America, LLC*, 845 F.3d 1279, 1286 (9th Cir. 2017) to support her position, but *Norcia* refused to follow *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1290 (7th Cir. 1997) which is controlling here.

The facts in *Norcia* also were different—in that case, there was no clickwrap agreement to affirmatively bind the plaintiff to the phone's in-box arbitration agreement and the court held that the plaintiff's use of the phone did not amount to an acceptance of the contract. 845 F.3d at 1286. But here, Plaintiff's mother admits she accepted the clickwrap contract on Plaintiff's behalf and did not opt out of arbitration. Later cases have distinguished *Norcia* for facts like those present here, holding that consumers who were aware of the Arbitration Agreement and brought suit based on the user agreement were bound by the terms—even if they could have opted out within the allotted period. *See Pang v. Samsung Elecs. Am., Inc*., 371 F. Supp. 3d 633, 639-40 (N.D. Cal. 2019); *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig*., 298 F. Supp. 3d 1285 (N.D. Cal. 2018). As in *Pang* and *In re Samsung Galaxy Smartphone*, Plaintiff here cites the underlying user agreement governing the use of the phone as supporting her claims. FAC ¶¶ 29, 30, 37. Therefore, her unexercised right to opt out does not negate that she received the benefit of the use of the device under the EULA—the only way to use the device at all.

## V. CONCLUSION

Samsung respectfully requests that the Court (1) compel Plaintiff to arbitrate the claims in this case, and (2) dismiss or stay this action pending the outcome of arbitration.

Dated: January 20, 2022

By: *s/Mark H. Boyle*
Mark H. Boyle

DONOHUE BROWN MATHEWSON & SMYTH LLC
Mark H. Boyle
140 South Dearborn Street, Suite 800
Chicago, IL 60603
(312) 422-0900

O'MELVENY & MYERS LLP
Randall W. Edwards (*pro hac vice*)
Matthew D. Powers (*pro hac vice*)
Benjamin C. Seelig (*pro hac vice*)
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
(415) 984-8700

Attorneys for Samsung Electronics America, Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 20th day of January, 2022, he caused the foregoing DEFENDANT SAMSUNG ELECTRONICS AMERICA, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, STAY PROCEEDINGS to be filed with the Clerk of the District Court via the CM/ECF system, which will send notification of such filing to all listed parties.

*s/Mark H. Boyle*

140 South Dearborn Street, Suite 800
Chicago, IL 60603
(312) 422-0900