# EXHIBIT 2

```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION

BRYAN GOREE, individually and    )
on behalf of all others          )
similarly situated,              )   Case No. 22-cv-01738
                 Plaintiff,      )
                                 )   Chicago, Illinois
-vs-                             )   March 8, 2023
                                 )   10:06 a.m.
NEW ALBERTSONS, L.P., d/b/a      )
JEWEL OSCO,                      )
                 Defendant.      )

              TRANSCRIPT OF TELEPHONIC PROCEEDINGS
             BEFORE THE HONORABLE MARTHA M. PACOLD

TELEPHONIC APPEARANCES:

For the Plaintiff:     MR. DAVID J. FISH
                       Fish Potter Bolanos, P.C.
                       111 East Wacker Drive, Suite 2600
                       Chicago, IL 60601
                       (312)861-1800
                       Email: Dfish@fishlawfirm.com

For the Defendant:     William Foster Farley
                       Holland & Knight Llp
                       150 N. Riverside Plaza, Suite 2700
                       Chicago, IL 60606
                       (312)578-6698
                       Email: William.farley@hklaw.com

Also Present:          MR. MAXWELL HANSEN

Court Reporter:

             KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                      Official Court Reporter
                    United States District Court
              219 South Dearborn Street, Suite 1426
                     Chicago, Illinois  60604
                    Telephone:  (312) 435-5569
                Kathleen_Fennell@ilnd.uscourts.gov

             * * * * * * * * * * * * * * * * * *

          PROCEEDINGS REPORTED BY CERTIFIED STENOGRAPHER
               TRANSCRIPT PRODUCED WITH A COMPUTER
```

| | | |
|---|---|---|
| | 1 | (Proceedings heard telephonically:) |
| | 2 | THE CLERK: The United States District Court for the |
| | 3 | Northern District of Illinois is now in session, the Honorable |
| | 4 | Martha M. Pacold presiding. |
| 10:05:54 | 5 | 22 C 1738, Goree versus New Albertsons. If you can |
| | 6 | state your name for the record, we'll start with plaintiff's |
| | 7 | counsel. |
| | 8 | MR. FISH: Good morning. David Fish, F-I-S-H. |
| | 9 | THE COURT: Good morning. And for the defense? |
| 10:06:15 | 10 | MR. FARLEY: Good morning. William Farley, |
| | 11 | F-A-R-L-E-Y. |
| | 12 | THE COURT: Good morning to you both. |
| | 13 | MR. HANSEN: Maxwell Hansen, H-A-N-S-E-N. |
| | 14 | THE COURT: All right. Good morning to everyone. |
| 10:06:45 | 15 | Thank you for joining. |
| | 16 | So we're here for a ruling on the motion to dismiss, |
| | 17 | which is docket 11, and the motion to compel arbitration, |
| | 18 | which is docket 21. Can I -- and I guess the fuller title of |
| | 19 | that, the more complete title is the motion to compel |
| 10:07:10 | 20 | arbitration, dismiss class claims or, in the alternative, stay |
| | 21 | all proceedings, and that's docket 21. |
| | 22 | Before I turn to the ruling, is there anything that |
| | 23 | anyone would like to mention about the status of the case or |
| | 24 | anything along those lines? I just want to check that the |
| 10:07:28 | 25 | ruling is necessary before I turn to it. |

1 language of the contract must show that 'the contract was made
2 for the direct, not merely incidental, benefit of the third
3 person.'" *Sosa v. Onfido,* 8 F.4th 631, 639 (7th Cir. 2021).
4     And Albertsons has not made that showing, so the
5 motion to compel arbitration, docket 21, is denied.
6     I will now turn to the motion to dismiss under
7 Rule 12(b)(6), which is docket 11.
8     To survive a motion to dismiss, a complaint must
9 contain sufficient factual matter accepted as true to state a
10 claim to relief that is plausible on its face.  In assessing a
11 motion to dismiss, I construe the complaint in the light most
12 favorable to plaintiff, accept well-pled facts as true, and
13 draw all inferences in the plaintiff's favor.  *Carlson v. CSX*
14 *Transportation*, 758 F.3d 819, 826 (7th Cir. 2014).
15     Let me first briefly review the allegations in the
16 complaint.
17     Goree alleges that Albertsons required him to use
18 Vocollect, V-O-C-O-L-L-E-C-T, or so-called "talkman"
19 technology -- it's a term used in the complaint -- while he
20 worked at an Albertsons distribution center in Illinois.
21     He alleges that Albertsons used this technology to
22 allow the workers to interact with Albertsons warehouse
23 technology, and that in doing so, the technology functions to
24 recognize or identify workers by comparing their voices to
25 voiceprints they created.  That's in paragraph 5 of the

1 complaint.

2 Specifically at the beginning of their training,
3 according to the complaint, Albertsons requires workers to
4 repeat words several times into the Vocollect technology in
5 order to create a so-called "voiceprint" or "template" of the
6 worker's voice. In the process, the technology is trained "to
7 understand her" meaning the worker's "idiosyncratic way of
8 speaking and to specifically identify and recognize the
9 individual worker and her voice." And that's in the
10 complaint, paragraph 5.

11 After repeating these words, the resulting voice
12 template or voiceprint sets forth the worker's "voice pattern"
13 which becomes part of the worker's data file alongside the
14 worker's name and employee number. Complaint, paragraph 8.

15 The "voiceprint or voice template, as used by the
16 Vocollect system, is unique to each individual employee and is
17 part of the operator's stored data file that also contains
18 name and employee number and is, therefore, identified solely
19 with that worker." Complaint, paragraph 15.

20 Albertsons stores these voiceprints in a central
21 voice console alongside the rest of the employees' files.
22 Complaint, paragraph 19. Later when an employee inputs the
23 employee's number into a wireless device, the associated voice
24 template is loaded onto that device. Complaint, paragraph 10.

25 Using the device and speaking into a headset, the

        1  employee then has a so-called dialogue with the voice
2  recognition software while fulfilling orders, where the
3  software breaks down the employee's live speech into small
4  patterns and compares the voice with the characteristics of
5  the employee's voiceprint so that it can recognize the
6  employee's speech. Complaint, paragraphs 10 to 12.

7        The complaint further alleges that the voiceprints
8  are not merely voice recordings but biometric identifiers that
9  are influenced by both the physical structure of an operator's
10  vocal tract and the employee's specific vocal behavioral
11  characteristics. Complaint, paragraph 13.

12        This system is a speaker-dependent form of voice
13  technology that trains the system to recognize the worker's
14  voice and verbal patterns based on a record of mechanical
15  measurement of a worker's voice, that allows the system to
16  recognize the worker's voice and thus the worker. And that's
17  in the complaint, paragraphs 37 to 38.

18        Goree alleges that this amounts to the collection of
19  a biometric identifier or a voiceprint as defined by BIPA,
20  alleges that Albertsons collects the voiceprint without its
21  workers' consent, and alleges that Albertsons did not provide
22  the workers a written policy regarding the use and/or
23  destruction of such identifiers as required by BIPA.
24  Complaint, paragraphs 16 to 17.

25        Turning to the motion to dismiss -- that was a

1  summary of the allegations, so I'm now turning to the motion
2  to dismiss.
3  　　　　　First, just some background about the legal
4  framework.  BIPA regulates both (1) "biometric identifiers"
5  and (2) "biometric information." Those definitions are found
6  in 740 ILCS 14/10.
7  　　　　　BIPA defines "biometric identifier," the term
8  "biometric identifier" as "a retina or iris scan, fingerprint,
9  voiceprint, or scan of hand or face geometry"; the same
10 definition then goes on to list things that are not biometric
11 identifiers.
12 　　　　　BIPA does not define the term voiceprint.
13 　　　　　Separately, BIPA defines the term "biometric
14 information" as "any information regardless of how it is
15 captured, converted, stored or shared, based on an
16 individual's biometric identifier used to identify an
17 individual."
18 　　　　　So there are two different definitions of "biometric
19 identifier" and "biometric information."
20 　　　　　In support of its motion to dismiss, Albertsons
21 argues that the complaint does not sufficiently allege that
22 the voice templates at issue are in fact voiceprints within
23 the meaning of BIPA because the complaint does not allege that
24 the templates alone are capable of affirmatively identifying a
25 specific individual.

Albertsons argues that the term "biometric identifier" -- and here Albertsons in particular emphasizes the word "identifier" within the term biometric identifier -- means that the templates must be capable, standing alone, of affirmatively identifying a specific individual.

Albertsons appears to be arguing that the voice templates are being used to recognize an employee's speech and to translate the employee's spoken words into text, not to identify an employee. Compare, for example, a timekeeping system using a fingerprint for employees to clock in and out.

Plaintiff responds that a biometric identifier as defined by the statute need not be used to identify an individual, that BIPA protects the defined term "biometric identifiers," and that term expressly is defined to include voiceprints, and plaintiff argues that BIPA separately protects biometric information, which is defined as information "based on an individual's biometric identifier used to identify an individual."

So there's basically a legal dispute about the interpretation of the definition of biometric identifier and the word voiceprint within that definition.

I agree with Judge Kness's disposition of a similar motion to dismiss in a similar case, *Barton v. Walmart*, 21-cv-4329. In that case, Judge Kness issued a ruling on May 31, 2022. That ruling is attached as Exhibit A to the

Case: 1:21-cv-04976 Document #: 62-2 Filed: 03/15/23 Page 9 of 11 PageID #:731

16

1  response to the motion to dismiss, and it is docket 14-1.
2  And let me just quote a few relevant excerpts from
3  that ruling.
4  Judge Kness said that "The ultimate question of
5  whether defendant's software identifies individuals such as
6  the plaintiff is a factual question that's better addressed
7  after discovery." He said that "drawing an unduly fine
8  distinction between voice and identity would be improper
9  without the benefit of an evidentiary record supporting such a
10 distinction." And he said that "whether the voiceprint alone,
11 or in conjunction with some other passcode, identifies
12 individuals is really a question of fact that's more properly
13 assessed at the summary judgment stage with the benefit of a
14 developed evidentiary record."
15 And I -- I understand earlier I noted that there is a
16 legal dispute between the parties as to the interpretation of
17 the definition of biometric identifier and the meaning of the
18 word voiceprint, but I think that legal question is premature
19 to reach without the benefit of a factual record.
20 Even if I did adopt Albertsons' proposed
21 interpretation of the definition of biometric identifier, it
22 remains plausible based on the allegations in the complaint
23 that the voiceprints at issue could be used to identify
24 individuals, given that the complaint alleges that the
25 voiceprints are unique to each individual employee. See the

|    |    |    |
|---|---|---|
|  | 1 | complaint, paragraph 15. |
|  | 2 | Factual development may ultimately not support |
|  | 3 | concluding that the voice templates at issue are voiceprints |
|  | 4 | within the meaning of BIPA's definition of biometric |
| 10:32:47 | 5 | identifiers, but that question may turn on fact-dependent |
|  | 6 | inquiry into the particulars of the technology and what |
|  | 7 | exactly the technology is capturing. |
|  | 8 | And at this point, accepting the complaint's |
|  | 9 | allegations as true and drawing reasonable inferences in |
| 10:33:03 | 10 | Goree's favor, the motion to dismiss is denied. |
|  | 11 | This ruling does not preclude any legal or factual |
|  | 12 | arguments either party would like to make at a later stage. |
|  | 13 | *See Bregettcy v. Horton*, 423 F.3d 674, 680-81 (7th Cir. 2005). |
|  | 14 | So to summarize and conclude, I have denied both the |
| 10:33:28 | 15 | motion to compel arbitration, docket 21, and the motion to |
|  | 16 | dismiss, docket 11. |
|  | 17 | Because I have denied both motions, Albertsons has |
|  | 18 | until March 22, 2023, to answer the complaint under Rule |
|  | 19 | 12(a)(4)(A).  If Albertsons seeks additional time, you may |
| 10:33:51 | 20 | move for an extension of time, but that is the default |
|  | 21 | deadline that's set by the rules. |
|  | 22 | I will refer this case to Judge Gilbert for discovery |
|  | 23 | supervision and scheduling and for settlement. |
|  | 24 | So that concludes the rule today.  Thank you very |
| 10:34:08 | 25 | much for your time and your attention, and take care. |

1  MR. FISH: Thank you, Judge.
2  MR. FARLEY: Thank you, your Honor.
3  THE COURT: Thanks everyone. Bye.
4  (Which were all the proceedings heard.)
5                    CERTIFICATE
6  I certify that the foregoing is a correct transcript from
7  the record of proceedings in the above-entitled matter.
8  /s/Kathleen M. Fennell          March 13, 2023
9  Kathleen M. Fennell                 Date
   Official Court Reporter