IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **G.T., by and through next friend LILIANA T. HANLON, SHIMERA JONES, LEROY JACOBS, BALARIE COSBY-STEELE, JOHN DEMATTEO, RICHARD MADAY, ALLISON THURMAN, and SHERIE HARRIS, individually, and on behalf of all others similarly situated**,<br><br>Plaintiffs,<br><br>v.<br><br>**SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD.**,<br><br>Defendants. | Civil Action No. 1:21-cv-04976<br><br>Hon. Lindsay C. Jenkins |

**DEFENDANTS SAMSUNG ELECTRONICS AMERICA, INC.'S AND SAMSUNG ELECTRONICS CO., LTD.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT**

O'MELVENY & MYERS LLP
Randall W. Edwards
Matthew D. Powers (*pro hac vice*)
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700

O'MELVENY & MYERS LLP
Ashley M. Pavel
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
(949) 823-6900

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Michael W. McTigue Jr.
Meredith C. Slawe
Kurt Wm. Hemr
One Manhattan West
New York, New York 10001
(212) 735-3000

DONOHUE BROWN MATHEWSON & SMYTH LLC
Mark H. Boyle
140 South Dearborn Street, Suite 800
Chicago, Illinois 60603
(312) 422-0900

*Attorneys for Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd.*

Dated: September 3, 2024

# TABLE OF CONTENTS

**Page**


INTRODUCTION .......... 1

LEGAL STANDARD .......... 4

ARGUMENT .......... 5

I. PLAINTIFFS STILL DO NOT ALLEGE THAT SAMSUNG OBTAINED OR EXERCISED CONTROL OVER THE FACE CLUSTERING DATA .......... 5

A. This Court Has Held That Allegations Of Control Over The Gallery App's Technology Does Not Suffice To Plead Control Over The Face Clustering Data .......... 5

B. Plaintiffs' New Allegations Regarding The Gallery App Either Rehash The Allegations The Court Found Insufficient Or Are Based On Speculation .......... 7

II. THE SECOND AMENDED COMPLAINT CONCEDES THAT THE FACE CLUSTERING DATA DOES NOT IDENTIFY PARTICULAR INDIVIDUALS .......... 9

III. ANY FURTHER AMENDMENT WOULD BE FUTILE, AND SO THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE .......... 13

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*Barnett v. Apple Inc.*,
2022 IL App (1st) 220187 (Ill. App. Ct. 1st Dist. Dec. 23, 2022)....................7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................4

*Bhavilai v. Microsoft Corp.*,
No. 22 C 3440, 2024 WL 992928 (N.D. Ill. Feb. 8, 2024)....................7

*Cacia ex rel. Randolph v. Norfolk & Western Railway Co.*,
290 F.3d 914 (7th Cir. 2002)....................13

*Castelaz v. Estée Lauder Cos., Inc.*,
No. 22 CV 5713, 2024 WL 136872 (N.D. Ill. Jan. 10, 2024)....................11

*Clarke v. Aveda Corp.*,
704 F. Supp. 3d 863 (N.D. Ill. 2023)....................11

*Donets v. Vivid Seats LLC*,
No. 20 CV 3551, 2023 WL 11909225 (N.D. Ill. Oct. 10, 2023)....................8

*G.T. v. Samsung Electronics America, Inc.*,
No. 21 CV 4976, 2024 WL 3520026 (N.D. Ill. July 24, 2024).................... *passim*

*Lee v. Northeast Illinois Regional Commuter Railroad Corp.*,
912 F.3d 1049 (7th Cir. 2019)....................13

*Martell v. X Corp.*,
No. 23 C 5449, 2024 WL 3011353 (N.D. Ill. June 13, 2024)....................12

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011)....................5

*Mendoza v. Microsoft Inc.*,
No. C14–316–MJP, 2014 WL 4540213 (W.D. Wash. Sept. 11, 2014)....................8

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D. Ill. 2019)....................5

*Orgone Capital III, LLC v. Daubenspeck*,
912 F.3d 1039 (7th Cir. 2019)....................8

*Sheppard v. Fantasia Trading LLC*,
No. EDCV 23-2407 JGB (EX), 2024 WL 3707825 (C.D. Cal. July 26, 2024)...................9

*Shipley v. Chicago Board of Election Commissioners*,
947 F.3d 1056 (7th Cir. 2020)..........................................................................................5

*Zellmer v. Meta Platforms, Inc.*,
104 F.4th 1117 (9th Cir. 2024).........................................................................................11

**STATUTE**

Biometric Information Privacy Act,
740 ILCS 14/15..........................................................................................................5, 6

**RULE**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................4

## INTRODUCTION

When this Court dismissed Plaintiffs' prior complaint in this action, it identified two principal deficiencies in Plaintiffs' attempt to plead claims against Samsung[1] for violations of Illinois's Biometric Information Privacy Act ("BIPA"):

(i) Plaintiffs failed to allege facts to show that Samsung ever **possessed or obtained** the "scan of the person's unique facial geometry" and "face templates" ("Face Clustering Data" or "Data"). The Court recognized that Plaintiffs did not allege that "the Data is sent to any centralized Samsung repository or database, or that Samsung can access the Data on individual Devices."

(ii) Plaintiffs did not allege facts to show that the Data constituted biometric information or biometric identifiers, because they did not allege that "the App's technology is **capable of identifying a person's identity** . . . Plaintiffs allege only that the App groups unidentified faces together, and it is the Device user who (has the option to) add names to the faces."

*G.T. v. Samsung Elecs. Am., Inc.*, No. 21 CV 4976, 2024 WL 3520026, at *2, 8 (N.D. Ill. July 24, 2024) (emphasis added). This Court admonished Plaintiffs that they could file an amended complaint if they could "cure the deficiencies and such an amendment is consistent with his obligations under Federal Rule of Civil Procedure 11." (ECF No. 79.) But Plaintiffs' Second Amended Complaint ("2AC," ECF No. 83) does not cure these fundamental deficiencies. That is confirmed by Exhibit 1, which is an annotated redline comparison of the changes between the consolidated amended complaint (ECF No. 50) and the recently filed Second Amended Complaint.

[1] "Samsung" means Defendants Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd.

***First***, Plaintiffs once again do not allege that Samsung possessed the Data or that Samsung collected, captured, or otherwise obtained it. Notwithstanding the Court's clear ruling on the prior motion about what was lacking, Plaintiffs do not and cannot allege that any Data are sent to any centralized repository or database, nor do they or can they allege facts establishing that Samsung can access such Data. Instead, their allegations are still directed to what the Samsung device, not Samsung, does: *i.e.*, that "Samsung stores the face templates in a database that ***Samsung keeps*** at least in the solid state memory of the user's Samsung Device" (2AC ¶ 57 (emphasis added)), as if adding words that are immediately contradicted by the rest of the sentence could somehow place Data in Samsung's possession. Plaintiffs' failure to address this fundamental deficiency, standing alone, warrants dismissal of the Second Amended Complaint.

***Second***, Plaintiffs' amendment does not (and could not) add anything meaningful to their description of how the Gallery App creates the Data, and it does not provide any reason to conclude that the Data constitutes biometric information or biometric identifiers. Plaintiffs again allege:

- The Gallery App's "algorithm captures a scan of the person's unique facial geometry . . . and uses it to create a unique digital representation of the face (*i.e.* the face template)." (2AC ¶¶ 54-55.)

- "Samsung uses these face templates to organize and group photos based upon the particular individuals who appear in the photos." (*Id.* ¶ 58.)

- "This process uses 'face clustering,' which analyzes each image for facial 'landmarks,' extracts those key facial features when found, and converts said data into 'vectors,' each of which is assigned a numerical value. Once the vectors have been assigned, a clustering engine analyzes the vectors to determine if similar values exist for the faces in other photos." (*Id.* ¶ 59.)

- "If there is a match, the Gallery App 'tags' the image and groups it with previously stored images depicting the same individual. Images of the same individual are 'stacked' together, with the front of the stack displaying the identified individual's face within a circular frame. **If the user has 'tagged' a photograph with the name of the depicted individual**, that individual's name is shown below his or her face in the circular frame." (*Id.* ¶ 60 (emphasis added).)

- "[T]he biometric identifiers and biometric information Samsung captured, collected, and stored can be, and in fact were, used by Samsung to identify a specific individual, **just as facial recognition identifies a specific individual as well as by name**." (*Id.* ¶ 61 (emphasis added).)

In short, Plaintiffs once again allege (i) that the Gallery App can sort photos based whether the photos are likely to contain images of the same person and (ii) only the Plaintiffs themselves are capable of identifying the individuals in the photo. (*Id.* ¶¶ 60-61.) The Second Amended Complaint thus continues to concede what the Court already ruled was inadequate: that it is only "the Device user who (has the option to) add names to the faces." *G.T.*, 2024 WL 3520026, at *8. Plaintiffs still do not allege that the Gallery App itself, without Plaintiffs' input, "is capable of identifying a person's identity." *Id.*

The Second Amended Complaint is otherwise rife with plainly deficient allegations that generically parrot the elements of Plaintiffs' claims or make speculative assertions without any factual foundation. These allegations are not entitled to the presumption of truth. For example:

- Plaintiffs newly allege that "face templates" are "used by Samsung to identify the person in other photographs on the Device [and] constitute biometric information." (2AC ¶ 59.) This conclusory allegation is directly contradicted by Plaintiffs' specific factual allegations regarding the functionality of the Gallery App quoted above.
- Plaintiffs added an allegation that "Samsung's Privacy Policy in effect when this case was filed expresly [*sic*] identifies 'biometric information' as one category of personal information Samsung **may** collect." (2AC ¶ 67 (emphasis added).) But nothing about this disclosure in Samsung's Privacy Policy (dated July 1, 2021, attached as Exhibit 2) shows that Samsung collects the Face Clustering Data from Galaxy devices. It does not.

In the Order, the Court took "Plaintiffs' well-pleaded factual allegations [from the Amended Complaint] as true" and granted Samsung's motion to dismiss with leave to amend, but noted that

"there [was] some doubt" on whether amendment would be futile. *G.T.*, 2024 WL 3520026, at *1, 9. The added allegations in the Second Amended Complaint are not new at all, and confirm the Court's doubts; Plaintiffs still do not allege that Samsung even has access to any Data on Plaintiffs' devices, or that the Gallery App is capable of identifying individuals.

There is good reason Plaintiffs did not include allegations that actually address the deficiencies identified by the Court. Plaintiffs knew they could not do so consistent with their obligations under Rule 11. In November 2022, Samsung had provided Plaintiffs with a copy of a declaration signed under the penalty of perjury by a Samsung employee, Youngil Shin, which also has been publicly filed in *Wallrich v. Samsung Electronics America, Inc.*, No. 1:22-cv-05506 (N.D. Ill. Oct. 7, 2022), ECF No 1-9 at 4-8. (Exhibit 3.) That Declaration explains that (i) the Face Clustering Data is "stored exclusively on the user's local device" and "Samsung has designed its devices so that neither Samsung nor third-party app providers can access the" Data, (Ex. 3 ¶ 19), and (ii) the Data "cannot be used to reconstruct a specific face . . . and cannot recognize specific individuals," (*id.* ¶ 13). Plaintiffs thus could not cure the multiple deficiencies identified in the prior dismissal order, and instead simply rehash the allegations that this Court already rejected.

Accordingly, for the reasons set forth in the Court's Order, Samsung respectfully requests that the Court dismiss the Second Amended Complaint with prejudice.

## LEGAL STANDARD

A complaint should be dismissed where it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). Claims are facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under the *Twombly/Iqbal* standard, the Court only "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and

conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Further, although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted by more specific allegations. *See Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1064 (7th Cir. 2020) (affirming dismissal of complaint where general allegation was contradicted by their specific allegation, stating "Plaintiffs' own allegations doom their claim"); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (disregarding plaintiff's allegation that "'[e]ach Defendant systematically and automatically collected, used, stored and disseminated [her] . . . biometric identifiers'" because "the more precise allegation" contradicted this allegation (alterations in original)). Here, the Second Amended Complaint fails to plead any plausible claim for relief, and should be dismissed.

## ARGUMENT

### I. PLAINTIFFS STILL DO NOT ALLEGE THAT SAMSUNG OBTAINED OR EXERCISED CONTROL OVER THE FACE CLUSTERING DATA

#### A. This Court Has Held That Allegations Of Control Over The Gallery App's Technology Does Not Suffice To Plead Control Over The Face Clustering Data

Plaintiffs do not and cannot state a claim that Samsung violated either Section 15(a) or Section 15(b) of BIPA because they do not plausibly allege that Samsung possessed the Face Clustering Data or collected, captured, or otherwise obtained it.

To state a claim under BIPA Section 15(a), Plaintiffs must allege facts showing that Samsung was "in possession" of biometric data. 740 ILCS 14/15(a). Likewise, to state a claim under Section 15(b), Plaintiffs must allege facts showing that Samsung collected, captured, or otherwise obtained biometric data. *Id.* 14/15(b).

The Court held that the amended complaint failed to plead a claim under Section 15(a) because "Plaintiffs have not adequately alleged Samsung was 'in possession' of their Biometrics,"

noting that although "Samsung controls the App and its technology . . . it does not follow that this control gives Samsung dominion over the Biometrics generated from the App, and plaintiffs have not alleged Samsung receives (or can receive) such data . . . the salient inquiry for determining possession under Section 15(a) is whether the entity exercised control over the Biometrics, not whether it exercised control over the technology generating the Biometrics." *G.T.*, 2024 WL 3520026, at *4-5.

Following the same reasoning, the Court held that Plaintiffs failed to plead a Section 15(b) claim: "Plaintiffs do not allege Samsung receives the Data the App accumulates, or that Samsung even has access to it . . . there is a salient difference between providing a technology and then using that technology to collect, capture, or obtain Biometrics . . . Plaintiffs have failed to allege Samsung took an 'active step' in gaining control over their Biometrics, which dooms their Section 15(b) claim." *Id*. at *5-6.

The Court reached these conclusions even though it fully credited Plaintiffs' allegations in the amended complaint that (i) Plaintiffs "are powerless to protect their biometric information because Samsung does not inform its users of these functions, nor does Samsung permit its users to disable them," and (ii) that "because Samsung designs and installs the App, it has full control over what data is collected, as well as all components of the Data itself, including where and how it is stored." *Id*. at *1.

In their Second Amended Complaint, Plaintiffs re-assert their theory that, because Samsung designed the Gallery App, pre-installed it on their phones, and through its design choices controls what data the Gallery App collects, Samsung has violated Sections 15(a) and (b). Plaintiffs' new allegations are either variations of those assertions or conclusory recitations of their claims' elements based on nothing but speculation.

### B. Plaintiffs' New Allegations Regarding The Gallery App Either Rehash The Allegations The Court Found Insufficient Or Are Based On Speculation

As the redline comparison attached as Exhibit 1 shows, there are no allegations in the Second Amended Complaint that Samsung can access the Data on Plaintiffs' devices. Instead, Plaintiffs simply restate their prior allegations, adding only that "[c]onsumers who buy Samsung Devices own the hardware, but merely license the software necessary for the device to function . . . [u]nder the terms of the EULAs, the Samsung Device user is prohibited from modifying or altering the software." (2AC ¶¶ 63-64.) They repeatedly characterize the software's functionality as Samsung's own conduct, alleging that: "**[t]hrough its software,** Samsung automatically scans and analyzes each photograph added to a Device," (2AC ¶ 54), "Samsung **through its software** then accesses the stored scan of face geometry," (2AC ¶ 55), and "**[t]hrough its software**, Samsung accomplishes this [organization of photos] by accessing the face templates," (2AC ¶ 58).

But this Court has already rejected the argument that Samsung has possessed, collected, or obtained the Face Clustering Data simply because it controls "the technology generating the" Data. *G.T.*, 2024 WL 3520026, at *5; *see Bhavilai v. Microsoft Corp.*, No. 22 C 3440, 2024 WL 992928, at *1 (N.D. Ill. Feb. 8, 2024) ("control of the facial scan software is not the same as control of the facial scan data that is collected using the software . . . [Plaintiff] has not alleged that Microsoft used or exercised any control over her facial scan data in any way"); *Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, ¶ 43 (plaintiffs' argument that Apple possessed their biometrics because "Apple software" on a device "collects and analyzes their information" wrongly "equates the product with the company").

Plaintiffs also try to make something of Samsung's Privacy Policy, alleging that "[t]he version of Samsung's Privacy Policy in effect when this case was filed expressly [*sic*] identifies 'biometric information' as one category of personal information Samsung may collect." (2AC

¶ 67.) But Plaintiffs do not and cannot allege that Samsung's Privacy Policy stated that it collected the Face Clustering Data.[2] The Privacy Policy is comprehensive, stating on its face that it applies to "personal information we **may** obtain online across all of our Internet-connected Samsung devices and services (from mobile phones and tablets to TVs, **home appliances, online services, and more**)." (Ex. 2 at 1.) The section quoted by Plaintiffs merely states that "[w]e **may** collect the following categories of personal information about you[:] . . . Biometric Information," in addition to eight other enumerated items, including broad categories of information such as "Online Activities." (*Id.* at 7.) This allegation does not support any speculation that Samsung "obtains" or "collects" any Face Clustering Data via the Gallery App, and any such speculation would be contradicted by the facts that are alleged in the Second Amended Complaint. This allegation thus does not cure Plaintiffs' pleading deficiencies. *See G.T.*, 2024 WL 3520026, at *3 n.5 ("Plaintiffs allege in several places that the Data is 'at least' stored on the local Device (keeping open the possibility that Samsung received the Data elsewhere) but that is impermissibly speculative; Plaintiffs must allege facts"); *Mendoza v. Microsoft Inc.*, No. C14-316-MJP, 2014 WL 4540213, at *3 (W.D. Wash. Sept. 11, 2014) (dismissing privacy claim where the "vast majority of Plaintiffs' allegations" were derived from "conjecture based on Microsoft's privacy policies"); *see also Donets v. Vivid Seats LLC*, No. 20 CV 3551, 2023 WL 11909225, at *2 (N.D. Ill. Oct. 10, 2023) (Jenkins, J.) (plaintiff did not adequately plead Section 15(d) claim where plaintiff alleged that fingerprint data was disclosed "to at least the payroll company hired [defendant]," stating that plaintiff "must include specific facts concerning the basis for his belief that [defendant] disclosed or disseminated his biometric information, and he has not done so").

---

[2] Courts may "take judicial notice of matters of public record and consider documents incorporated by reference in the pleadings." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019).

Plaintiffs also allege that "Samsung's Gallery App has a feature that allows users to backup their photographs to a cloud server. Prior to September 2021, those photographs were uploaded and stored the [*sic*] Samsung Cloud, a cloud-server created, hosted, and controlled by Samsung." (2AC ¶ 75.) But as the Court held, "photographs are explicitly excluded from the definition of biometric identifiers, and Plaintiffs do not allege the underlying Data was uploaded to the cloud." *G.T.*, 2024 WL 3520026, at *3 n.5; *see also Sheppard v. Fantasia Trading LLC*, No. EDCV 23-2407 JGB (EX), 2024 WL 3707825, at *11 (C.D. Cal. July 26, 2024) (allegation that defendant stored thumbnail images on its cloud did not plead Section 15(b) claim because "it is well-established that photographs such as thumbnails are not biometric identifiers").

In short, Plaintiffs still do not allege that Samsung—rather than the software operating on Plaintiffs' devices—can access the Data on Plaintiffs' devices or in any other place. Plaintiffs have not alleged that "Samsung receives the Data the App accumulates, or that Samsung even has access to it." *G.T.*, 2024 WL 3520026, at *5. Accordingly, the Second Amended Complaint should be dismissed.

## II. THE SECOND AMENDED COMPLAINT CONCEDES THAT THE FACE CLUSTERING DATA DOES NOT IDENTIFY PARTICULAR INDIVIDUALS

Plaintiffs' "new" allegations about the Face Clustering Data in the Second Amended Complaint simply reword the prior pleading's allegations that the Data are comprised of scans of facial geometry and mathematical representations of face templates. Those allegations again confirm that **only** the user, not Samsung, can choose to identify any Data with an individual.

In the Order, the Court rejected Plaintiffs' argument that "every scan is necessarily a biometric identifier," reasoning as follows:

> BIPA only covers those 'retina or iris scan[s], fingerprint[s], voiceprint[s], or scan[s] of hand or face geometry' that are capable of identifying an individual. Therefore, the fact that the App performs face scans is not dispositive . . . Plaintiffs do not allege the App's technology is capable of identifying a person's identity.

> Rather, Plaintiffs allege only that the App groups unidentified faces together, and it is the Device user who (has the option to) add names to the faces. The Court concludes these allegations are insufficient to show that the Data constitutes either a biometric identifier or biometric information.

*G.T.*, 2024 WL 3520026, at *8-9 (alterations in original); *see id*. at *6 (collecting cases). The Court reached those conclusions even though it fully credited Plaintiffs' allegations as to how the App functioned:

> [T]he App creates a unique digital representation of the face, called a 'face template.' Once a face template is created, the App organizes photographs based on images with similar face templates. The App does this through 'face clustering,' a process by which the App extracts key facial features from the face template and converts that information into numerical 'vectors' based on the facial feature. The App compares the vectors in a new image to the previous images on the Device and will group together images that are sufficiently analogous. The result is pictures with a certain individual's face are 'stacked' together on the App.

*Id*. at *1.

In the Second Amended Complaint, Plaintiffs' allegations regarding the functionality of the Gallery App and the Face Clustering Data the App generates remain essentially unchanged, except for conclusory, generalized allegations that state only that the Face Clustering Data "can be used to identify" individuals. (*See, e.g.*, 2AC ¶ 56 ("Each face template is a distinct numerical representation of the unique shape and geometry of an individual's face, including the contours of, and distance between, unique facial landmarks and features. **Each face templates [*sic*] is unique to an individual and can be used to identify them**"); *id*. ¶ 59 ("The mathematical representation of the person's face created in this process is based on and specific to their facial geometry, and **is used by Samsung to identify the person in other photographs on the Device**. **Thus, the face templates constitute biometric information**"); *id*. ¶ 61 ("As this process demonstrates, the biometric identifiers and biometric information Samsung captured, collected, and stored can be, and in fact were, **used by Samsung to identify a specific individual, just as facial recognition identifies a specific individual as well as by name**").)

Ultimately, however, Plaintiffs still concede, as they must, that the only way the individuals in photos or contacts containing photos can be identified with particular photos are through information that is exclusively provided by the user. (*See* 2AC ¶ 60 ("**If the user has 'tagged' a photograph** with the name of the depicted individual, that individual's name is shown below his or her face in the circular frame"); *id* ¶ 58, n.13 ("Samsung accomplishes this by accessing the face templates stored in its database,[3] including those face templates Samsung creates using scans of face geometry it extracts from the photographs stored in **the Devices contact list, which typically includes the person's name, phone number and/or e-mail address,**" citing a Samsung webpage that states users can "fill out their contact information and personal details. **You can add** multiple numbers and addresses the Phone and Email fields . . . .").) Plaintiffs' generalized allegations that the "face templates" are "used by Samsung to identify the person in other photographs on the Device" are contradicted by the specific allegations (*e.g.*, 2AC ¶¶ 58, 60, 178) confirming that only the ***user*** is capable of providing the identity of individuals in their photos. *See, e.g.*, *Castelaz v. Estée Lauder Cos., Inc.*, No. 22 CV 5713, 2024 WL 136872, at *6-7 (N.D. Ill. Jan. 10, 2024) (Jenkins, J.) (dismissing BIPA claim where plaintiffs failed to provide "any specific factual allegations that [defendant] is capable of determining Plaintiffs and members of the Illinois class members' identities by using the collected facial scans, whether alone or in conjunction with other methods or sources of information available to" defendant); *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1125-26 (9th Cir. 2024) ("'biometric identifiers' under BIPA must be able to identify . . . [because the] face signatures cannot identify, they are not biometric identifiers or biometric information as defined by BIPA"); *Clarke v. Aveda Corp.*, 704 F. Supp.

3 References to a "database" in the Second Amended Complaint merely mean the "database that Samsung keeps at least in the solid state memory of the user's Samsung Device." (2AC ¶ 57.)

3d 863, 866 (N.D. Ill. 2023) ("Plaintiffs allege that Aveda, through its 'Try-On' feature, 'scanned and collected, and then stored . . . digital copies of each [plaintiff's] facial geometry,'" but plaintiffs "provide no allegations demonstrating Aveda was capable of identifying them from this data"); *Martell v. X Corp.*, No. 23 C 5449, 2024 WL 3011353, at *4 (N.D. Ill. June 13, 2024) ("Plaintiff only alleges that the photo was scanned, without alleging that the faces in the photo were scanned to identify an individual. Without allegations that PhotoDNA uses facial geometry to identify individuals, Plaintiff failed to allege that the hashes are biometric identifiers").

Further, in Plaintiffs' general description of the "risk posed by Biometrics," they add an allegation that "[o]nce a picture of a person's face is scanned and its biometric measurements are captured, computers can store that information and use it to identify that individual any other time that person's face appears on the internet or in public using facial recognition." (2AC ¶ 39.) Similarly, five Plaintiffs added an allegation stating, for example, that "Plaintiff DeMatteo has a Facebook account that is searchable by his name and features a publicly-available account photo of his face." (*Id.* ¶ 124; *see also id.* ¶¶ 93, 155, 171, 202.) These allegations are entirely irrelevant. As with the rest of the new allegations in the Second Amended Complaint, Plaintiffs' aim with these added allegations is unclear, given that Plaintiffs do not, and cannot, allege that the Face Clustering Data can be used to identify publicly availably images of them on the internet. Moreover, Plaintiffs' decision to make photos of their face publicly available is exactly that—their own decision.

Once again, Plaintiffs have not alleged and cannot allege that Samsung, the Gallery App, or the Face Clustering Data can identify individuals in a photograph. The specific allegations in the Second Amended Complaint again confirm that it is only the user who can identify people in their photographs based on their own knowledge. Accordingly, Plaintiffs' allegations remain

"insufficient to show that the Data constitutes either a biometric identifier or biometric information." *G.T.*, 2024 WL 3520026, at *8.

## III. ANY FURTHER AMENDMENT WOULD BE FUTILE, AND SO THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Courts frequently note that where a party has been given an opportunity to amend a complaint, that party will not be given leave to amend again. *See, e.g.*, *Cacia ex rel. Randolph v. Norfolk & W. Ry. Co.*, 290 F.3d 914, 921–22 (7th Cir. 2002) (trial court properly dismissed amended complaint with prejudice where "the trial court had previously permitted plaintiffs to amend their complaint once and found that the plaintiffs' second amended complaint 'suffers from the same defect as the first' because it attempted only to reformulate plaintiffs' negligence arguments"); *Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053 (7th Cir. 2019) (same). Plaintiffs proceeded with filing a Second Amended Complaint that did not address the deficiencies identified in the Order, even after this Court noted that "there [was] some doubt on these facts" on whether amendment would be futile. *G.T.*, 2024 WL 3520026, at *9. Accordingly, the Court should dismiss the Second Amended Complaint with prejudice.

## CONCLUSION

For the foregoing reasons and reasons set forth in the Order, the Court should dismiss the Second Amended Complaint with prejudice.

Dated: September 3, 2024

By: /s/ *Michael W. McTigue Jr.*
Michael W. McTigue Jr.

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Michael W. McTigue Jr.
Meredith C. Slawe
Kurt Wm. Hemr
One Manhattan West
New York, New York 10001
(212) 735-3000

O'MELVENY & MYERS LLP
Randall W. Edwards
Matthew D. Powers (*pro hac vice*)
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700

O'MELVENY & MYERS LLP
Ashley M. Pavel
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
(949) 823-6900

DONOHUE BROWN MATHEWSON &
SMYTH LLC
Mark H. Boyle
140 South Dearborn Street, Suite 800
Chicago, Illinois 60603
(312) 422-0900

*Attorneys for Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd.*