**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| G.T., by and through next friend, LILIANA T. HANLON, *et al.*, individually and on behalf of all others similarly situated, | ) | |
| | ) | Case No. 1:21-cv-04976 |
| Plaintiffs, | ) | |
| v. | ) | Hon. Lindsay C. Jenkins |
| | ) | |
| SAMSUNG ELECTRONICS AMERICA, INC., and SAMSUNG ELECTRONICS CO., LTD., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**


INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 2

I. Samsung's Self-Serving Declaration May Not Be Considered ........................................ 2

II. Plaintiffs Plausibly Allege Samsung "Captured," "Collected," "Otherwise Obtained," Stored, and "Was in Possession of" the Biometric Data .................................................. 2

A. Plaintiffs Allege the Control Required Under Section 15(b) .................................. 2

1. Samsung Controlled the Biometric Data Stored on Samsung Devices and The Software/Process That Automatically Captured It ............................. 3

2. Samsung's Use of Secret Software to *Automatically* Capture Data Confirms Its Control, and Plaintiffs Also Allege an "Active Step." ........... 5

3. Samsung Stored the Data on Devices and in the Cloud ............................ 9

4. *Barnett* and Samsung's Other Authorities are Inapposite ........................ 12

B. Plaintiffs Allege the Control Required Under Section 15(a) ................................. 14

III. Plaintiffs Plausibly Allege a "Biometric Identifier" and "Biometric Information." .......... 16

A. Plaintiffs' Allegations Satisfy BIPA's Express Definitions .................................. 16

B. There Is No "Capable of Identifying" Requirement ............................................. 17

C. Plaintiffs Allege the Data Samsung Captures is Capable of "Identifying" an Individual under the Plain and Ordinary Meaning of That Term and by Name ...... 22

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*AnchorBank, FSB v. Hofer*,
649 F. 3d 610 (7th Cir. 2011)....................11

*Barnett v. Apple, Inc.*,
225 N.E.3d 602 (Ill. App. Ct. 1st Dist. 2022)....................passim

*Bhavilai v. Microsoft Corp.*,
2024 U.S. Dist. LEXIS 43745 (N.D. Ill. Feb. 8, 2024)....................1, 14

*Brown v. AS Beauty Grp. LLC*,
2024 U.S. Dist. LEXIS 93861 (N.D. Ill. May 22, 2024)....................8, 16, 19

*Bryant v. Compass Grp. USA, Inc.*,
958 F.3d 617 (7th Cir. 2020)....................21

*Castelaz v. Estée Lauder Co., Inc.*,
2024 U.S. Dist. LEXIS 7321 (N.D. Ill. Jan. 10, 2024)....................20, 22, 25

*Clarke v. Aveda Corp.*,
704 F. Supp. 3d 863 (N.D. Ill. 2023)....................20

*Colombo v. Youtube, LLC*,
679 F. Supp. 3d 940 (N.D. Cal. 2023)....................19

*Cothron v. White Castle Sys.*,
216 N.E.3d 918 (Ill. 2023)....................passim

*Davis v. e.l.f. Cosm., Inc.*,
2024 U.S. Dist. LEXIS 94318 (N.D. Ill. May 28, 2024)....................6, 16, 19

*Dawkins v. Fitness Int'l, LLC*,
210 N.E.3d 1184 (Ill. 2022)....................21, 22

*Deyerler v. HireVue, Inc.*,
2024 U.S. Dist. LEXIS 32211 (N.D. Ill. Feb. 26, 2024)....................2

*Doe v. Apple Inc., ("Hazlitt III")*
2022 U.S. Dist. LEXIS 222988 (S.D. Ill. Aug. 1, 2022)....................5, 11

*Figueroa v. Kronos Inc.*,
454 F. Supp. 3d 772 (N.D. Ill. 2020)....................8, 10

*Garza v. Navistar Int'l Transp. Corp.*,
666 N.E.2d 1198 (Ill. 1996)....................17

*Hall v. Tune Up Corp.*,
2013 U.S. Dist. LEXIS 109935 (N.D. Ill. 2013)....................6

*Hartman v. Meta Platforms, Inc.*,
2024 U.S. Dist. LEXIS 167696 (S.D. Ill. Sep. 17, 2024)....................24, 25

*Hazlitt v. Apple Inc.*, ("*Hazlitt I*")
500 F. Supp. 3d 738 (S.D. Ill. 2020)....................5, 6, 12

*Hazlitt v. Apple Inc.*, ("*Hazlitt II*")
543 F. Supp. 3d 643 (S.D. Ill. 2021)....................passim

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020)....................13, 14

*Howe v. Speedway LLC*,
2024 U.S. Dist. LEXIS 176263 (N.D. Ill. Sep. 29, 2024)....................10, 23, 24

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016)....................23

*Jones v. Microsoft Corp.*,
22 CH 5145 (Cir. Ct. Cook Cnty., Ill. Sept. 15, 2023)....................3, 15

*Konow v. Brink's, Inc.*,
2024 U.S. Dist. LEXIS 38202 (N.D. Ill. Mar. 5, 2024)....................16, 19

*Kukovec v. Estée Lauder Co.*,
2022 U.S. Dist. LEXIS 202212 (N.D. Ill. Nov. 7, 2022)....................6, 13, 16

*Kyles v. Hoosier Papa LLC,*
2023 U.S. Dist. LEXIS 54996 (N.D. Ill. Mar. 30, 2023)....................passim

*Martell v. X Corp.*,
2024 U.S. Dist. LEXIS 105610 (N.D. Ill. June 13, 2024)....................20, 21

*Melzer v. Johnson & Johnson Consumer Inc.*,
2023 U.S. Dist. LEXIS 73039 (D.N.J. Apr. 26, 2023) .............................................. 16, 19, 24

*People v. Chapman*,
965 N.E.2d 1119 (Ill. 2012) ..................................................................................17

*People v. Chenoweth*,
25 N.E.3d 612 (Ill. 2015) ........................................................................ 17, 18, 20, 21

*People v. Fiveash*,
39 N.E.3d 924 (Ill. 2015) ...................................................................................passim

*People v. Goossens*,
39 N.E.3d 956 (Ill. 2015) ...................................................................................18, 20

*People v. Gutman*,
959 N.E.2d 621 (Ill. 2011) ......................................................................................22

*People v. Ward*,
830 N.E.2d 556 (Ill. 2005) ....................................................................................8, 14

*Powell v. Shisheido*,
2:21-cv-02295-CSB-EIL (C.D. Ill. Aug. 22, 2022) ............................................... 8, 13, 15, 16

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004) ......................................................................................5

*Rivera v. Amazon Web Servs.*,
2023 U.S. Dist. LEXIS 129517 (W.D. Wash. July 26, 2023) .........................................7, 8, 13

*Robinson v. Lake Ventures LLC*,
2023 U.S. Dist. LEXIS 156296 (N.D. Ill. Sep. 5, 2023) .................................................22

*Rogers v. BNSF Ry. Co.*, (“*Rogers I*”)
2022 U.S. Dist. LEXIS 45578 (N.D. Ill. Mar. 15, 2022)..................................................3, 10

*Rogers v. BNSF Ry. Co.*, (“*Rogers II*”)
2022 U.S. Dist. LEXIS 173322 (N.D. Ill. Sep. 26, 2022) ...............................................7, 9

*Rosenbach v. Six Flags Entm't Corp.*,
129 N.E.3d 1197 (Ill. 2019) ..............................................................................passim



225782

*Sheppard v. Fantasia Trading LLC*,
2024 U.S. Dist. LEXIS 76761 (C.D. Cal. Apr. 25, 2024) ................................................19, 25

*Svoboda v. Amazon.com, Inc.*,
No. 1:21-cv-05336 (N.D. Ill.) ..........................................................................................9

*Tibbs v. Arlo Techs., Inc.*,
2024 U.S. Dist. LEXIS 113916 (N.D. Cal. June 27, 2024).....................................................9

*Theriot v. Louis Vuitton N. Am., Inc.*,
645 F. Supp. 3d 178 (S.D.N.Y. 2022) ..................................................................................8

*Vance v. Amazon.com, Inc.*,
525 F. Supp. 3d 1301 (W.D. Wash. 2021).........................................................................10

*Wilk v. Brainshark, Inc.*,
631 F. Supp. 3d 522 (N.D. Ill. 2022)...........................................................................6, 16

*Williams v. Sebert Landscape Co.*,
946 N.E.2d 971 (Ill App. Ct. 2011).....................................................................................5

*Zahn v. N. Am. Power & Gas, LLC*,
815 F.3d 1082 (7th Cir. 2016)...................................................................................7, 17, 20

*Zellmer v. Meta Platforms, Inc.*,
104 F.4th 1117 (9th Cir. 2024)......................................................................................19, 20

**Statutes**

740 ILCS 14/10...........................................................................................................passim

740 ILCS 14/15...........................................................................................................passim

**Other Authorities**

Merriam-Webster.com ..............................................................................................3, 23

Samuel D. Hodge, Jr., *The Legal and Ethical Considerations of Facial Recognition Tech. in the Bus. Sector*, 71 DePaul L. Rev. 731 (2022)..........................................................................23

## INTRODUCTION

***First***, under Illinois Supreme Court law, including *Cothron v. White Castle Sys.*, 216 N.E.3d 918 (Ill. 2023), the test for whether a defendant captured, collected, obtained, or was in possession of biometric data[1] under BIPA §§15(a) and (b) turns on control. Here, Plaintiffs allege Samsung through its secret algorithm controlled their biometric data in every way one can conceivably control data by, *inter alia*, extracting it from photos, storing it where Samsung decided, for as long as Samsung decided, and accessing and using it to do what Samsung decided, while preventing Plaintiffs from accessing or deleting it. They also allege the data was transferred to Samsung's cloud servers which Samsung hosts and controls.

***Second***, it is immaterial that Samsung, like every other BIPA Defendant, accomplished this through software, which is the only way to control data since it is always digital. The fact Samsung programmed its secret algorithm to capture, collect, store, access, and use the data *automatically* just confirms Samsung's control of the data, and thus, its liability. The law has long held that companies are liable for what software they programmed automatically does.

***Third***, there was no third-party intermediary operating Samsung's secret algorithm or separating Samsung from the collection of the biometric data. Samsung's secret algorithm is simply not a "tool" anyone except Samsung can use or operate. Accordingly, *Barnett v. Apple, Inc.*, 225 N.E.3d 602 (Ill. App. Ct. 1st Dist. 2022) and *Bhavilai v. Microsoft Corp.*, 2024 U.S. Dist. LEXIS 43745 (N.D. Ill. Feb. 8, 2024) are inapposite.

***Fourth***, BIPA regulates the data at issue because Plaintiffs plausibly allege the data falls within BIPA's defined terms of "biometric identifier" and "biometric information."

[1] The phrase "biometric data" herein is used to encompass both of the statutorily-defined terms "biometric identifier" and "biometric information," or when the distinction is immaterial to the discussion. Further, references to collect, capture, and/or obtain are intended to encompass all of the active verb(s) in § 15(b).

***Fifth***, Samsung's capable-of-identifying argument requires the Court to re-define the defined phrase "biometric identifier" to impose an additional requirement the legislature intentionally omitted, violating the rules of statutory construction the Court must follow. *See People v. Fiveash*, 39 N.E.3d 924, 928 (Ill. 2015) (rejecting argument legislature intended "minor" to mean something other than what was in statutory definition of "minor," holding courts must analyze the statutory text by "[r]eplacing the word 'minor' with its statutory definition").

***Sixth***, even if it were necessary to allege the data Samsung captured was capable of "identifying" Plaintiffs, they have plausibly alleged the data can be used to do so under the plain and ordinary meaning of the word and by determining their names.

## ARGUMENT

### I. Samsung's Self-Serving Declaration May Not Be Considered.

Samsung improperly contradicts Plaintiffs' factual allegations, which must be considered true under 12(b)(6), by using a self-serving declaration from another case. *See, e.g.*, ECF No. 87 at 4 ("*Mot.*") (citing Exhibit 3, *i.e.* ECF No. 87-3);[2] *Deyerler v. HireVue, Inc.*, 2024 U.S. Dist. LEXIS 32211, at *10 (N.D. Ill. Feb. 26, 2024) (holding declarations "are inappropriate to consider in ruling on its Rule 12(b)(6) motion").

### II. Plaintiffs Plausibly Allege Samsung "Captured," "Collected," "Otherwise Obtained," Stored, and "Was in Possession of" the Biometric Data.

#### A. Plaintiffs Allege the Control Required Under Section 15(b).

The test under §15(b) is whether defendant controlled the biometric data or the software, system, or process that captured it. *See Cothron*, 216 N.E.3d at 923 ("The active verbs used in section 15(b)—collect, capture, purchase, receive, and obtain—all mean to gain control[.]"); *Kyles v. Hoosier Papa LLC*, 2023 U.S. Dist. LEXIS 54996, at *10, *14-15 (N.D. Ill. Mar. 30, 2023)

[2] All pinpoint citations to ECF No. 87 refer to the page number in the footer of the brief.

(relying on allegations "Plaintiff did not control the FOCUS system" that automatically collected the data, "Papa John's . . . controlled the system"); *Jones v. Microsoft Corp.*, 22 CH 5145 (Cir. Ct. Cook Cnty., Ill. Sept. 15, 2023) at 3 (relying on allegations "Microsoft has some control, direct *or indirect*, over *the platform* and the data within it"), attached as **Exhibit 1**; *Rogers v. BNSF Ry. Co.*, 2022 U.S. Dist. LEXIS 45578, at *19 (N.D. Ill. Mar. 15, 2022) ("*Rogers I*") (relying on evidence "BNSF ultimately called the shots on *whether and how*" data was collected).

### 1. Samsung Controlled the Biometric Data Stored on Samsung Devices and The Software/Process That Automatically Captured It.

Plaintiffs allege Samsung had control. The plain and ordinary meaning of "control" is "to exercise restraining or directing influence over" or "have power over." *Control Definition*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/control.[3] That is what Plaintiffs allege Samsung did with the biometric data, the software Samsung secretly deployed to capture it, and the entire process through which the data was captured, stored, accessed, and used.

Specifically, each time a Device user took or received a photo, Samsung's secret, proprietary facial recognition algorithm automatically captured and stored a scan of the unique geometry of the face in the photo. ECF No. 83 ¶¶ 4, 6, 53-54, 59 (hereinafter, "*SAC*"). Then Samsung, via its software, automatically accessed each scan and used it to create a unique digital representation of the person's face (*i.e.* a face template). *Id.* ¶¶ 4, 6, 55-56, 59. Next, Samsung stored each face template in a database on the user's Samsung Device *and* Samsung's Cloud servers. *Id.* ¶¶ 5, 52, 57, 75. Then, each and every time a Device user took or received another photo, Samsung's software automatically repeated that process for the new photo, then accessed all previously-stored face templates to compare them to the newly-stored face template to identify

[3] The URL for each Merriam-Webster.com definition quoted herein uses the format "https://www.merriam-webster.com/dictionary/____" with the blank being the word quoted.

the person in the new photo. *Id.* ¶¶ 5-6, 58-59, 66, 80. If it identified the person as someone in prior photos, it grouped the new photo with the other photos of that person. *Id.* ¶ 60.

Plaintiffs allege Samsung *alone* exercised "complete and exclusive control over" how the biometric data was used (*e.g.* whether information based on biometric identifiers was used to identify users), and who was able to access, use, and destroy the biometric data. *Id.* ¶ 69. They further allege Samsung exercised directing influence and power over the biometric data and entire system/process by *alone* deciding whether biometric data was collected, which biometric data was collected, the type of biometric data that was collected, which biometric data was stored, the format, location in which, and duration for which the data was stored and used, and whether the data was encrypted or otherwise protected, as well as by *alone* controlling every aspect of the algorithm it secretly deployed to automatically collect, store, access, and use the data. *Id.* ¶ 69. Thus, Samsung fully controls the biometric data and the software that collected it. *Id.* ¶ 74.

By contrast, Plaintiffs and other Samsung Device users have no ability to control their biometric data, or the location or manner in which their data is stored and used, or by whom it is used. *Id.* ¶¶ 70-71. Samsung prevents them from accessing, using, or deleting their biometric data. *Id.* ¶ 73. It also prevents them from disabling its proprietary algorithm or limiting what data is collected, and bars them from modifying the algorithm it uses to exercise its control. *Id.* ¶¶ 6, 63-64, 72. As such, Plaintiffs and others cannot use the Gallery App as intended without Samsung's algorithm automatically collecting their biometric data—indeed, they were not even aware that was occurring because Samsung concealed it. *Id.* ¶¶ 6-10, 65, 68, 77-79.[4]

Indeed, those allegations are materially identical to the allegations the court found

[4] The foregoing allegations plead "collection" as Samsung extracted the biometric data "from a number of persons [and] sources"—*i.e.* every person in any photo on the Device—and "gather[ed]" it in a database. *Cothron*, 216 N.E.3d at 924. Samsung also "captured" the data by "tak[ing and] seiz[ing]" it from those photos without the user's knowledge or consent. *Id.*

sufficient in *Hazlitt v. Apple Inc.*, 500 F. Supp. 3d 738 (S.D. Ill. 2020) ("*Hazlitt I*"). That was a mirror-image of this case but involving the photos app on Apple devices. It alleged "Apple does not store" the biometric data "on its servers, but rather, . . . on each Apple device locally" in a database. *Id.* at 742. The court still held plaintiffs plausibly alleged control under § 15(b):

> Plaintiffs allege that Apple both "collected" and "possessed" their biometric data using proprietary software that Apple owned, exclusively controlled, and barred individual users from accessing, removing, or disabling. More specifically, Plaintiffs allege that Apple used its software to create, gather, and harvest faceprints, which Apple stored in facial recognition databases that Apple provided users no knowledge of, or control over, and Apple alone could access the biometric data or disable its collection. Plaintiffs assert that Apple is subject to BIPA liability from its collection and possession of Plaintiffs' biometric data based on common law agency principles. In furtherance of this theory, Plaintiffs allege that Apple's software cannot be used as intended without biometric data automatically being collected, that device users had no ability to disable the collection (or notice of collection), and Apple prevents users from accessing, disabling, or altering the software.

*Hazlitt I*, 500 F. Supp. 3d at 750 (internal citations omitted). [5]

### 2. Samsung's Use of Secret Software to *Automatically* Capture Data Confirms Its Control, and Plaintiffs Also Allege an "Active Step."

Samsung, like Apple in *Hazlitt I* and *Hazlitt II*, controlled the data through software. But that's no defense and is true in every BIPA case, as data is necessarily digital. Nor does it matter Samsung or Apple programmed their software to capture, collect, store, access, and use the data automatically.[6] "[U]nder a plain reading of [BIPA's] text, it does not matter how one collects

---

[5] *See also Williams v. Sebert Landscape Co.*, 946 N.E.2d 971, 974 (Ill App. Ct. 2011) ("'control' is closely tied with the ability to exclude people from the use of a piece of property or to direct how that property is to be used"). Any reliance on *Doe v. Apple Inc.*, 2022 U.S. Dist. LEXIS 222988 (S.D. Ill. Aug. 1, 2022) ("*Hazlitt III*") for this issue misplaced as it solely concerned **<u>different</u>** claims that were added **<u>after</u>** plaintiffs took discovery about how Apple's software worked. *Id.* at *9 (holding amendment to §§ 15(a) and (b) counts asserted new claims entirely separate from claims in *Hazlitt I* and *Hazlitt II* by alleging "newly added facts" that Apple collected/possessed biometric data on its servers). As such, *Hazlitt III* has no bearing on *Hazlitt I* or *Hazlitt II*, both of which solely concerned the claims asserted **<u>before</u>** any discovery occurred—claims that are substantively identical to the claims alleged here. *Hazlitt III* merely illustrates why this is a factual issue more suited for dispositive motions after discovery.

[6] For decades, courts have been holding entities liable for things their software automatically does that violate the law. *See, e.g., Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 438 (2d Cir. 2004) (trespass claim

information." *Wilk v. Brainshark, Inc.*, 631 F. Supp. 3d 522, 530 (N.D. Ill. 2022).

*Hazlitt I* is just one of many BIPA cases holding plaintiffs alleged plausible claims based on what defendant's software automatically did. *See Kukovec v. Estée Lauder Co.*, 2022 U.S. Dist. LEXIS 202212, at *6, *17 (N.D. Ill. Nov. 7, 2022) (allegations defendant's virtual try-on ("VTO") software automatically "captures users' facial geometry . . . without telling the user" and "using facial-geometry scans . . . 'identif[ies] the shape and features of the user's face'" adequate under §§15(a)-(b) as "it is reasonable to infer that collection of biometric data is necessary for it to work," not relying on where process occurred or defendant receiving/storing data); *Davis v. e.l.f. Cosm., Inc.*, 2024 U.S. Dist. LEXIS 94318, at *16 (N.D. Ill. May 28, 2024) (allegations defendant's VTO software automatically "works by capturing, possessing, or otherwise obtaining (however temporarily) Plaintiff's facial geometry (which is a defined biometric identifier) . . . are sufficient" under § 15(b)). Those facts are materially identical to the allegations here.

Other cases have likewise held allegations nearly identical to those here adequately plead control under §§ 15(a) and (b). In *Kyles*, Papa John's developed and required franchisees to use the software (its proprietary FOCUS system), which collected and stored templates of employees' fingerprints, and when an employee used the system, captured the employee's fingerprint anew and compared it to the stored template. *Kyles*, 2023 U.S. Dist. LEXIS 54996 at *2-3. The court rejected Papa John's argument that it had no more control over the data than Apple had in *Barnett v. Apple*, explaining "Plaintiff alleges many of the facts that the *Barnett* Court found missing" and pointing to allegations "Plaintiff did not control the FOCUS system," he "could not access, let alone delete, his biometric data," and he "could not choose whether to use" the system; "[i]nstead, Papa John's allegedly controlled the system." *Id.* at *9-10. The court held those facts plausibly

---

based on what defendant did automatically "[b]y virtue of its use of a software robot"); *Hall v. Tune Up Corp.*, 2013 U.S. Dist. LEXIS 109935, at *11 (N.D. Ill. 2013) (claim for what software automatically did).

alleged "Papa John's exercised *some control* over" the data under §§ 15(a) and (b). *Id.* at *7-8, *14-15. Those allegations are virtually identical to the allegations here.

*Rivera v. Amazon Web Servs.*, 2023 U.S. Dist. LEXIS 129517 (W.D. Wash. July 26, 2023) involved Rekognition, Amazon's facial recognition software that was embedded into ProctorU's app plaintiffs used. *Id.* at *1-3. The court held plaintiffs adequately pled "Amazon 'collected' their data" by "alleg[ing] that *Amazon's program*, Rekognition, 'accesses' images . . . and 'extract[s] the facial geometry of the individuals pictured into a feature vector.'" *Id.* at *13 (emphasis added); *see also id.* at *12 n.3 ("the Court uses the word 'collect' to encompass all the operative terms"). Here, Plaintiffs allege Samsung's secret software does the same thing.

Relatedly, there is no "active step" requirement under § 15(b). The language is found nowhere in § 15(b) and it is well established a court "may not depart from the law's terms by reading into it . . . limitations, or conditions the legislature did not express, nor may we add provisions not found in the law." *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1204 (Ill. 2019). Because BIPA is "an Illinois statute, we apply Illinois's rules of statutory construction." *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1089 (7th Cir. 2016).

In *Kyles*, Papa John's argued "it did not 'actively collect' Plaintiff's biometric data because the FOCUS system, not Papa John's, 'directly collected' it." *Kyles*, 2023 U.S. Dist. LEXIS 54996 at *13. The court rejected Papa John's argument, reasoning there is no case holding "an entity must 'actively *collect'* the biometric data from an individual (either directly or otherwise). Nor does §15(b)'s plan language support such a requirement." *Id.* at *13. Thus, reading an "active step" requirement into § 15(b) "is a dubious proposition [as] it amounts to adding language that the statute doesn't include." *Rogers v. BNSF Ry. Co.*, 2022 U.S. Dist. LEXIS 173322, *8-9 (N.D. Ill. Sep. 26, 2022) ("*Rogers II*"); *see also Rivera*, 2023 U.S. Dist. LEXIS 129517 at *12 ("it is

unclear whether [the active-step] interpretation of the statute is correct.").

The rationale for the "active step" requirement is also mistaken. Courts adding it reason that since §15(b) does not use the term "possession" and §15(a) does, §15(b) must require something more than mere possession. But the legislature used the phrase "in possession of" in §15(a) not to silently add an "active step" requirement to § 15(b), but because §15(a) was "intended to apply to entities that, before BIPA's effective date, already possessed" biometric data, while §15(b) "was intended to cover only those entities that came into possession of such [data] after BIPA's effective date." *See Rivera*, 2023 U.S. Dist. LEXIS 129517 at *12-13 (citing *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 784 (N.D. Ill. 2020)). So, the choice to use different words makes perfect sense without an "active step" requirement—indeed, the words the legislature used in §15(b), like possession in §15(a), "all mean to gain control" in one way or another. *See Cothron*, 216 N.E.3d at 923; *Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 653 (S.D. Ill. 2021) ("*Hazlitt II*") (possession is "when a person has or takes control of the" data) (quoting *People v. Ward*, 830 N.E.2d 556, 560 (Ill. 2005)).

In any event, Samsung took active steps to capture the data by secretly embedding into its Devices and deploying facial recognition software that automatically scans face geometry, creates a face template it collects, stores, accesses, and uses whenever a user uses the Gallery App; preventing users from deciding whether that occurs; and inviting them to use the Gallery App. *See supra* at 3-4; *SAC* ¶¶ 3, 51-52, 87. This is more than sufficient and more than mere creation of the technology. *See Brown v. AS Beauty Grp. LLC*, 2024 U.S. Dist. LEXIS 93861, at *13 n.2 (N.D. Ill. May 22, 2024) ("Putting a [VTO] tool on a website that creates a geometric scan of users' faces is in itself an active step."); *Theriot v. Louis Vuitton N. Am., Inc.*, 645 F. Supp. 3d 178, 184 (S.D.N.Y. 2022) (same as VTO app that automatically captured the data); *Powell v. Shisheido*,

2:21-cv-02295-CSB-EIL (C.D. Ill. Aug. 22, 2022) at 12 (same by alleging face geometry "map was created through [software in] Defendant's website"), attached as **Exhibit 2**.[7]

### 3. Samsung Stored the Data on Devices and in the Cloud.

Samsung storing the data on its servers or elsewhere is unnecessary to plead it collected the data. The Illinois Supreme Court has rejected that storage is required to "collect" or "capture" data, holding § 15(b) "distinguishes between collection and storage." *Cothron*, 216 N.E.3d at 924.

*Cothron* concluded an entity can capture or collect biometric data without storing it at all. *Cothron* involved software that stored each employee's initial fingerprint scan in a database. *Id.* at 924. But the software did not store the subsequent fingerprint scans; instead, it just compared those "authentication" scans against the stored "original" scan in order to identify the employee. *See id.* The court held White Castle captured or collected plaintiff's fingerprints *every* time the software scanned them—including the "authentication" scans which were never stored. *See id.* at 925 ("This is true the first time an entity scans a fingerprint . . . , but it is no less true with each subsequent scan[.]"); *see also id.* at 929 (holding a separate § 15(b) "claim accrues . . . with *every scan*," not just the one scan that was stored). Thus, storage is not required under § 15(b).[8]

Other BIPA cases agree a defendant can capture data under § 15(b) without storing it.

[7] *Accord Tibbs v. Arlo Techs., Inc.*, 2024 U.S. Dist. LEXIS 113916, at *23-24 (N.D. Cal. June 27, 2024) (same as to Arlo's software "scan[ning] the faces, bodies, and hands of visitors" and "stor[ing] the scans in an electronic database"); *Kyles* at *14-15 (same by deploying/operating FOCUS software that collected, accessed and used the data, and by preventing employees from deciding whether to use FOCUS system); *Rogers II* at *8 (same "by hiring Remprex to collect biometric data on its (BNSF's) behalf").

[8] Refusing to acknowledge the authentication scans that were never stored cannot alter *Cothron's* holding. *See* ECF No. 80 at 12 ("*Order*"); ECF No. 64 at 13 of 22 (prior reply). The *Cothron* opinion and answer therein to the certified question make clear the Illinois Supreme Court did not assume without deciding each scan was a "collection"—it only "assume[d] . . . White Castle's alleged collection . . . was done *in violation of the Act*" (*i.e.* was done without first making the required disclosures and receiving written consent). *Cothron*, 216 N.E.3d at 922 (emphasis added). The court's answer reiterates that assumption by holding a separate § 15(b) claim exists for "every scan. . . *without prior informed consent*"—not every scan only to the extent it constitutes a collection or is stored. *See id.* at 929 (emphasis added).

*Svoboda v. Amazon.com, Inc.*, No. 1:21-cv-05336 (N.D. Ill.) rejected the argument there was no capture or possession because the data defendants' VTO software automatically extracted never left the user's device, holding "storage is not a necessary component of either the 15(a) or the 15(b) causes of action." *Id.*, Hr'g Tr. at 7:12-16, Apr. 28, 2022, attached as **Exhibit 3**. In *Rogers*, the data was "stored on Remprex databases" by Remprex, but the court held a jury could find BNSF "violated BIPA . . . "by collecting, capturing, . . . or otherwise obtaining the" data because "BNSF ultimately called the shots on whether and how [it] was collected." *Rogers I*, 2022 U.S. Dist. LEXIS 45578 at *19. And in *Howe v. Speedway LLC*, 2024 U.S. Dist. LEXIS 176263, *29 (N.D. Ill. Sep. 29, 2024), the court held "BIPA does not have an express retention requirement, at least not . . . under [§] 15(b)." Along that line, § 15(e) regulates storage of data. 740 ILCS 14/15(e).

In sum, a defendant can capture/control data under § 15(b) without storing it, which makes perfect sense. Just as "collect, capture," etc. precede "stored" in the text of § 15(b), capturing data must precede storage because one cannot store data without first controlling it. *See Vance v. Amazon.com, Inc.*, 525 F. Supp. 3d 1301, 1313 (W.D. Wash. 2021) ("to have stored . . . the data, the defendant necessarily first had to 'obtain' the data") (cleaned up) (quoting *Figueroa*, 454 F. Supp. 3d at 784). As such, the allegations detailed above also plead Samsung "otherwise obtained" the data under § 15(b). *See Howe*, 2024 U.S. Dist. LEXIS 176263 at *29-30 ("Although the finger scans collected by the timeclock might only be retained for less than a half-second before being discarded, they are nonetheless 'gained or attained' . . . to generate the Template," and thus, "Speedway 'otherwise obtained' biometric identifiers.").

Even if storage on Samsung's servers were required despite *Cothron*, Plaintiffs allege the biometric data including face templates are stored on Samsung's Cloud servers it hosts and controls, in order to copy the Gallery App's contents to the Cloud as a backup and to facilitate

sharing. *SAC* ¶¶ 5, 52, 57, 75. In addition, the Gallery App is not only involved in how Samsung captures the data, but the Gallery App is also where Samsung stored the grouped photo albums after its algorithm used the data to group them. *Id.* ¶¶ 3-6, 54-55, n.11, 57-58, 60. It is also where the name of the person in those albums is inputted (*i.e.* "tagged"). *Id.* ¶ 60.

Further, Samsung's privacy policy in effect when Plaintiff G.T. filed suit expressly identified "biometric information" as a category of data Samsung may collect. *Id.* ¶ 67. Along that line, and not coincidentally, Samsung discontinued its Cloud service in September 2021, after this suit was filed—and a year before creating its evasive declaration phrased entirely in the present tense. *See id.* ¶ 75; ECF No. 2-1 at 1 (August 11, 2021, file stamp).

Those allegations mirror many of the allegations the court found sufficient in *Hazlitt III*. *See* 2022 U.S. Dist. LEXIS 222988 at *3-5. Construing the facts in the light most favorable to Plaintiffs, a reasonable inference is the face templates (and name "tags") were backed up and stored in the cloud with the contents of the Gallery App. Otherwise, the "grouped" albums that use the face templates and tags would not work when restored from the cloud back up. Because the Court must "mak[e] all possible inferences from the allegations in the plaintiff's favor" at this stage, *AnchorBank, FSB v. Hofer*, 649 F. 3d 610, 614 (7th Cir. 2011), Plaintiffs plausibly allege Samsung controlled the data by transferring it to and storing it on Cloud servers Samsung hosts and controls.

Therefore, Samsung is mistaken there are no allegations the biometric data is "sent to any centralized repository or database." *Mot.* at 2.

Regardless, Samsung's argument conflates *controlling* data with specific ways an entity that already controls data can choose to *exercise* its control. As shown, Plaintiffs allege Samsung through its automatic software controlled the data in virtually every way conceivable by extracting/copying it, storing it where Samsung decided for whatever period Samsung decided,

and accessing/using it to do what Samsung decided, while at the same time preventing Device users from doing those things. Neither the language of § 15(b) nor *Cothron* interpreting it contains any requirement that an entity who has control of the data—and has therefore *already* "captured" it under § 15(b) as construed by *Cothron*—must then further exercise that control, much less by removing the data from the place the entity decided to store and use it in the first place.

### 4. *Barnett* and Samsung's Other Authorities are Inapposite.

The allegations here and in *Hazlitt I*—about <u>secret</u> software users cannot disable automatically collecting, storing, and accessing biometric data users don't know about and cannot access, use, or destroy—stand in stark contrast *Barnett v. Apple*. That case involved Touch/Face ID features that were extensively detailed on "Apple's website" and "completely optional"—"the user is the sole entity deciding whether or not to use these features," the user must affirmatively "enable the features," and "the user has the power to delete" their data "from the device at any time." *Barnett*, 225 N.E.3d at 603-604, 613. In other words, "Apple designed these features almost with the express purpose of handing control to the user," as the features were "completely elective," the users *knowingly* "must undertake a series of steps" to use them and may stop "if she decides that she no longer wants to use" them, and [t]here is no allegation . . . Apple has ever once prevented a user from deleting her own information." *Id.* at 610. In fact, the court distinguished *Hazlitt* on grounds those plaintiffs "had no power to delete the collected information or disable the feature on their devices," *id.*, which is exactly what Plaintiffs allege here.

As such, *Hazlitt* cannot be distinguished on grounds the *Barnett* plaintiffs alleged the data was stored "on the users' individual devices," *id.* at 610, as that is a similarity—not a difference—because the plaintiffs in *Hazlitt* **<u>and</u>** in *Barnett* alleged the data was stored "on each Apple device locally," *Hazlitt I*, 500 F. Supp. 3d at 742; *Hazlitt II*, 543 F. Supp. 3d at 647 (same).

*Barnett*'s holding Apple itself did not "capture" the data was based on all of the facts discussed above establishing there were intermediaries (*i.e.* the device users) separating Apple from the collection of biometric data, and those intermediaries—not Apple—controlled the data and *knowingly* enabled and operated the software for its intended purpose of collecting the data.[9]

That is not remotely analogous to the facts alleged here, where there was no third-party intermediary operating the software or separating Samsung from the collection of biometric data. Instead, the allegations are no one including Plaintiffs even knew the software existed because Samsung concealed it, and they had no ability to disable the secret software and no idea that simply taking/saving a photo will result in it collecting biometric data. Further, Samsung operated the software by programming it to automatically collect biometric data and then secretly deploying it for that purpose. Samsung's secret algorithm is simply not a "tool" Plaintiffs or any other third-party can use or operate. Indeed, Plaintiffs expressly allege third-parties cannot even access, use, or control the data—Samsung alone can do those things. *SAC* ¶¶ 69-74.

Accordingly, *Barnett* and the other cases Samsung has relied on are inapposite. *Compare Kukovec*, 2022 U.S. Dist. LEXIS 202212 at *17-18 (as defendant embedded VTO software into its website "without telling the user," holding "no intermediary separated the defendant from the collection of plaintiff's facial geometry" and *Heard I*, *Namuwonge*, *Jacobs*, and *Kloss v. Acuant* are inapposite as those defendants were "not the companies using the technology"), *Powell* (Ex. 2) at 10-12 (holding *Heard*, *Namuwonge*, *Bernal*, and *Jacobs* inapposite because Defendant is not someone "who sells" the "biometric-data-collecting" software to clients—"Defendant *is* the client" who secretly embedded the software into its websites), *Rivera*, 2023 U.S. Dist. LEXIS

[9] If the dispositive fact were only the data was stored locally on the users' devices, the court's holding would violate Illinois' rules of statutory construction by reading-into § 15(b) a storage requirement that does not exist. *See Cothron*, 216 N.E.3d at 924; *Rosenbach*, 129 N.E.3d at 1204.

129517 at *14 (holding *Namuwonge*, *Bernal*, and *Jacobs* inapposite as those defendants "simply provid[ed] the technology to" third-parties who operated it to collect the data, but here "Plaintiffs allege that Amazon remains involved in the data collection process *through* *__Rekognition's__* 'accessing' and 'extraction' of" data), *and Kyles*, 2023 U.S. Dist. LEXIS 54996 at *11 (holding *Jacobs*, *Heard I*, and *Bernal* inapposite because, "although Papa John's developed the FOCUS system [that captured data], it is not merely a . . . software vendor" but "also allegedly operates the system, creates requirements for how franchisees use it, retains access to the system, and . . . uses data from it"), *with Barnett*, 225 N.E.3d at 610 (as software features were advertised and "completely elective" in that device users "must undertake a series of steps in order to use them[,] . . . it is the user herself who utilizes these tools to capture her own biometric" data), *and Bhavilai*, 2024 U.S. Dist. LEXIS 43745 at *1-3 (plaintiff "failed to allege that Microsoft did anything beyond providing a tool" third-parties operated to collect the data).[10]

**B. __Plaintiffs Allege the Control Required Under Section 15(a).__**

Under §15(a), there is possession when an entity "has or takes control of [biometric data] or holds the [data] at [its] disposal.'" *E.g.*, *Hazlitt II*, 543 F. Supp. 3d at 653 (quoting *Ward*, 830 N.E.2d at 560). This "does not require exclusive control." *Id.* at 653; *accord Ward*, 830 N.E.2d at 561 (applying that "ordinary and popular meaning of 'possession,'" refusing to apply legal definition requiring exclusive control). The allegations detailed above satisfy this standard. *See supra* at 3-4 (detailing allegations in *SAC* ¶¶ 4-10, 53-59, 63-66, 68-74, 80).

*Hazlitt II* is instructive, as it involved an identical §15(a) claim arising from Apple's facial recognition software which, like Samsung's, was secretly "pre-install[ed]" on all Apple devices.

[10] *Bhavilai* is also inapposite as Bhavilai merely argued "Microsoft 'exercised dominion and control' over her facial scan because it designed, licensed, and updated the facial scan software" and "retained the ability to control whether and how a user could use the facial scan software." *Bhavilai*, 2024 U.S. Dist. LEXIS 43745 at *1-2. Here, Plaintiffs allege so much more on how Samsung exercised control. *See supra* at 3-4.

543 F. Supp. 3d at 646. Like Samsung, Apple argued it could not be "in possession of" data that "remains . . . on the . . . Device, which is owned and controlled by the user." *Id.* at 652. The court rejected that argument and refused to dismiss the §15(a) claim:

> Plaintiffs allege Apple "possesses" their biometric data because it has complete and exclusive control over the data on Apple Devices, including what biometric identifiers are collected, what biometric data is saved, whether biometric identifiers are used to identify users (creating biometric information), and how long biometric data is stored. Plaintiffs also claim Apple uses its software to create, gather, and harvest faceprints, which Apple stores in facial recognition databases that Apple provided users no knowledge of or control over, and that Apple alone could access the biometric data or disable its collection. Users also cannot disable the collection of biometric data, cannot limit what information is collected or from whom information is collected, cannot remove the People folder, and cannot delete the database of facial recognition information that Apple creates or any information in that database. Finally, Apple only allows users to use Apple Devices on the condition that it collects biometric data. . . . Plaintiffs have adequately alleged that Apple possessed their biometric data such that BIPA section 15(a) applies to it.

*Id.* at 653 (internal citations omitted). Here, as detailed above, the allegations regarding Samsung's exclusive control are materially-identical to *Hazlitt* and thus allege possession under §15(a).

Separately, Plaintiffs allege Samsung holds the biometric data at its disposal. "Disposal" means "the power or authority to make use of as one chooses: the power or authority to *dispose* of something," and "dispose" means "to put in place." *Disposal* and *Dispose Definitions*, Merriam-Webster.com. Here, Samsung put the face templates in place for future use by storing them in databases, and then made use them every time a Device user took or received a photo, by accessing and using each template for a facial recognition analysis. *SAC* ¶¶ 5, 57-59. This would be impossible unless Samsung held the templates at its disposal and had "some control" over them. *See Jones* (Ex. 1) at 3 (allegations need only support inference defendant "has some control, direct or indirect, over the platform and the data within it"); *Powell* (Ex. 2) at 13 ("if Defendant disposed of the data, it must have first held the data at its disposal" thus establishing possession).

## III. Plaintiffs Plausibly Allege a "Biometric Identifier" and "Biometric Information."

### A. Plaintiffs' Allegations Satisfy BIPA's Express Definitions.

***First***, Plaintiffs expressly allege Samsung's facial recognition algorithm "capture[s] a scan of the face geometry of each face it detects"—specifically, "the length, width, depth and location of various facial landmarks, including the mouth, chin, nose, ears, eyes, eyebrows, as well as the distances and spacing between those features." *SAC* ¶¶ 53-54; *accord id.* ¶¶ 4, 7. BIPA expressly defines "biometric identifier" to include "a scan . . . of face geometry." *See* 740 ILCS 14/10.

Thus, Plaintiffs' allegations necessarily suffice. *See Davis*, 2024 U.S. Dist. LEXIS 94318 at *16 (allegations software "works by capturing . . . Plaintiff's facial geometry (which is a defined biometric identifier) . . . are sufficient"); *Kukovec*, 2022 U.S. Dist. LEXIS 202212 at *17 (same as to allegations software "us[es] facial-geometry scans from a user's uploaded picture or live camera" to "identif[y] the shape and features of the user's face").[11]

***Second***, Plaintiffs also allege "biometric information" was involved. The "algorithm" converted each face geometry scan into a "face template," which is "a unique digital representation of the face"—specifically, "a distinct numerical representation of the unique shape and geometry of an individual's face, including the contours of, and distance between, unique facial landmarks and features." *SAC* ¶¶ 4, 55-56. The template "is based on and specific to their facial geometry

---

[11] *Accord Brown*, 2024 U.S. Dist. LEXIS 93861 at *11 (alleging software "collect[s] and process[es] . . . facial geometry" scans that "identify the shape and features of the user's face," and what the "process involves," is "more than adequate"); *Konow v. Brink's, Inc.*, 2024 U.S. Dist. LEXIS 38202, *5-6 (N.D. Ill. Mar. 5, 2024) (alleging software works by "capturing 'scans of his facial geometry' . . . and conducting 'facial mapping'" sufficient as that "falls explicitly within BIPA's definition"); *Wilk*, 631 F. Supp. 3d at 530 (alleging software "scans videos for facial features" sufficient as "BIPA explicitly defines 'biometric identifier' to include a 'scan of . . . face geometry'"); *Powell* (Ex. 2) at 12 (alleging software "creates a 100-point geometric map of the user's face" sufficient as reasonable inference is "such a map amounts to 'face geometry,' which is included in BIPA's definition"); *Melzer v. Johnson & Johnson Consumer Inc.*, 2023 U.S. Dist. LEXIS 73039, *9 (D.N.J. Apr. 26, 2023) (alleging "algorithms scan, detect, align, and process a consumer's facial image at specific coordinates" sufficient as those "facial scans . . . fall within BIPA's definition of a 'biometric identifier,' which explicitly includes a scan of facial geometry").

and is used by Samsung to identify the person in other photographs." *Id.* ¶ 59; *see also* ¶¶ 5, 53, 58, 60-61. Because "face geometry" is a biometric identifier, this plausibly allege the templates are "biometric information." *See* 740 ILCS 14/10 (defining same as "[1] any information, regardless of how it is captured, converted, stored, or shared, [2] based on an individual's biometric identifier [3] used to identify an individual").

**B. There Is No "Capable of Identifying" Requirement.**

It is not necessary to plead the scan of face geometry is capable of identifying the user.

***First***, "biometric identifier" is a defined term in the statute, and thus reading a capable-of-identifying requirement into it attempts to give the term a meaning different than what the legislature chose. This violates Illinois rules of statutory construction which, as shown above, the Court must follow in construing BIPA. *Zahn*, 815 F.3d at 1089. Specifically, "[w]hen a term is defined within a statute, that term must be construed by applying the statutory definition provided by the legislature." *Fiveash*, 39 N.E.3d at 928; *People v. Chenoweth*, 25 N.E.3d 612, 617 (Ill. 2015) (same); *Garza v. Navistar Int'l Transp. Corp.*, 666 N.E.2d 1198, 1201 (Ill. 1996) (same). Using "plain and ordinary meaning" is permissible only "[w]hen a statute contains a term that is not specifically defined." *People v. Chapman*, 965 N.E.2d 1119, 1127 (Ill. 2012).

*Chenoweth* involved a provision requiring prosecution "within one year of the discovery of the *offense* by an aggrieved person." 25 N.E.3d at 617. The Illinois Supreme Court reversed the appellate court and rejected the argument the aggrieved person discovered the "offense" when she learned defendant wrote unauthorized checks on her account, reasoning the statute "itself defines 'offense' as 'a violation of any penal statute of this State,'" and thus, "'discovery of the *offense'* means [discovering] that a criminal statute has been violated." *Id.* at 618.

In *Fiveash*, the Illinois Supreme Court rejected defendant's argument the legislature

intended "minor" to mean something other than what was in the statutory definition of "minor," reasoning "the legislature specifically chose 'minor,' a word expressly defined in the Act." 39 N.E.3d at 928. The court proceeded to analyze the statutory text by "[r]eplacing the word 'minor' with its statutory definition, as we must, [to show how] section 5-120 properly reads." *Id.* at 928.

So too here. Under *Chenoweth* and *Fiveash*, all references to "biometric identifier" in §15 "must be read to incorporate" the legislature's definition—nothing more. *Id.* The legislature expressly defined "biometric identifier" to include six specific items:

> "Biometric identifier" means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry.

740 ILCS 14/10. No part of the definition states any of the items listed must be capable of being used by anyone to identify a person by name or otherwise. As such, Illinois' rules of construction discussed above allow for only one conclusion—each item expressly listed in the definition is a "biometric identifier," even absent allegations or proof the defendant (or anyone else) can (or actually did) use the item to determine a person's name.

Other Illinois rules of construction and BIPA provisions independently compel the same interpretation. For starters, a court "may not depart from the law's terms by reading into it . . . limitations . . . the legislature did not express, nor may we add provisions not found in the law." *Rosenbach*, 129 N.E.3d at 1204. Reading a capable-of-identifying requirement into the statutory definition of "biometric identifier" plainly violates this rule.

Likewise, courts must "assume that the legislature intended . . . limitations to certain conditions when it expressly provided that limitation, while at the same time, the legislature did not intend such limitations when the language is absent." *People v. Goossens*, 39 N.E.3d 956, 959 (Ill. 2015). Here, other definitions in BIPA expressly impose the very limitations the cases improperly add to the "biometric identifier" definition even though it omits those limitations:

> "Biometric information" means any information . . . based on an individual's biometric identifier *used to identify an individual.* . . .
>
> "Confidential and sensitive information" means personal information that *can be used to uniquely identify an individual* or an individual's account or property.

740 ILCS 14/10 (emphasis added). Thus, under Illinois' rules of construction, the inclusion of the italicized language in those definitions coupled with its omission from the definition of "biometric identifier" demonstrates it cannot be required for a biometric identifier. *See, e.g.*, *Rosenbach*, 129 N.E.3d at 1204 (rejecting that "aggrieved" in BIPA § 20 demonstrated legislative intent to limit right of action to instances of actual damage because, "[w]hen the General Assembly has wanted to impose such a requirement in other situations, it has made that intention clear").

Thus, there is no capable-of-identifying requirement for a "biometric identifier." *See Sheppard v. Fantasia Trading LLC*, 2024 U.S. Dist. LEXIS 76761, *19-21 (C.D. Cal. Apr. 25, 2024) (relying on "BIPA's omission of the phrase 'used to identify' in its definition of biometric identifier, but its inclusion in the definition of biometric information"); *Colombo v. Youtube, LLC*, 679 F. Supp. 3d 940, 944-45 (N.D. Cal. 2023) (relying on *Fiveash* to conclude "ignor[ing] the definition of 'biometric identifier' supplied by the Illinois legislature in favor of a single-minded focus on the word 'identifier' is misdirected"); *Melzer*, 2023 U.S. Dist. LEXIS 73039 at *8-10 (relying on "omission of the 'used to identify' condition in the 'biometric identifier' definition").[12]

*Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117 (9th Cir. 2024) does not show otherwise

[12] Other courts have also rejected this requirement. *See Davis*, 2024 U.S. Dist. LEXIS 94318 at *16-17, *18 n.2 ("there is no requirement anywhere in the statutory language that . . . the face geometry scans were actually used to identify" and "the Court does not find support for" a capable-of-identifying requirement, so "the only relevant question is whether Plaintiffs adequately pled . . . face geometry" was captured); *Brown*, 2024 U.S. Dist. LEXIS 93861 at *14-15 ("[T]he Court does not find support in the statute or policy rationale for this 'narrower reading of BIPA's broad language.' . . . There is no requirement to plead that the specific biometric identifiers in each case were especially capable of being used to identify an individual.") (quoting *Konow*, 2024 U.S. Dist. LEXIS 38202 at *10 ("This court is not certain that the 'uniquely identifying' test is supported by BIPA's plain language.")). Plaintiffs cite *Sheppard* and *Colombo* for their persuasive, unassailable analyses, which remain such despite *Zellmer*.

as it mistakenly relied on a federal rule of construction that violates *Fiveash* and *Chenoweth*, which control here under *Zahn*. *See id.* at 1123-24 (relying on federal rule from *Bond* that, in construing a federal statute, "it is not unusual to consider the ordinary meaning of a defined term," ignoring legislature's "biometric identifier" definition and construing only "ordinary meaning of 'identifier'"). *Zellmer* also reasoned—in violation of *Rosenbach* and *Goossens*—that inclusion of the language italicized above in the "biometric information" and "confidential and sensitive information" definitions actually supports a conclusion the "biometric identifier" definition shares those same requirements despite the legislature intentionally *omitting* them. *See id.* at 1124 (relying on federal rule of construction from *Almendarez-Torres*, incorrectly asserting same rule applied in Illinois but citing Illinois case not supporting assertion or containing that rule).[13]

Similarly, *Martell* does not apply any Illinois rule of construction. *See Martell v. X Corp.*, 2024 U.S. Dist. LEXIS 105610, *9-14 (N.D. Ill. June 13, 2024). *Martell* reasoned since the statutorily-defined phrase "biometric identifier" "includes the word identifier," it should rely on a dictionary definition of the word "identifier." *Id.* at *10-11. Yet a court is prohibited from using the plain and ordinary meaning for a statutorily-defined term. *See Fiveash*, 39 N.E.3d at 928.

*Martell* also reasoned, without the "capable of identifying" requirement, the biometric identifier definition "would contravene the very purpose of BIPA" because, "[i]f a face geometry scan could not identify an individual, how could a business provide the individual with notice and obtain their consent?" 2024 U.S. Dist. LEXIS 105610 at *11. Yet the notion that an entity cannot make disclosures to and obtain consent from someone without first identifying them by determining their name is mistaken. Here, for example, Samsung could easily make the required disclosures to everyone the first time the Gallery App is opened on a new or restored Device and

[13] *Castelaz v. Estée Lauder Co., Inc.*, 2024 U.S. Dist. LEXIS 7321, *17-20 (N.D. Ill. 2024) and *Clarke v. Aveda Corp.*, 704 F. Supp. 3d 863, 865-66 (N.D. Ill. 2023) only relied on cases adopting the requirement.

require them to click or e-sign expressly consenting before allowing them to proceed. More fundamentally, BIPA requires consent to be obtained <u>before</u> capturing the scan of face geometry, so identification (by name or otherwise) using that scan simply cannot be a prerequisite to consent. *See* 740 ILCS 14/15(b) (providing disclosures/consent must occur "first" in relation to capturing face geometry); *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020) (holding "informed-consent regime" in § 15(b) "is the heart of BIPA"). *Martell*'s reasoning to the contrary eviscerates the prior consent requirement and "heart of BIPA," which violates the Illinois rule that courts must avoid a construction "that 'would lead to real-world results . . . the legislature could not have intended.'" *See Dawkins v. Fitness Int'l, LLC*, 210 N.E.3d 1184, 1193-94 (Ill. 2022).

Here, the Court relied on the Illinois rule of construction that "[e]ach word in a statute is to be 'given a reasonable meaning and not rendered superfluous.'" *Order* at 15. But the capable-of-identifying requirement does not apply to defined terms as well as violates this rule by rendering superfluous the phrase "can be used to uniquely identify an individual" in the definition of confidential and sensitive information, and the phrase "used to identify" in the biometric information definition. In short, BIPA § 10 and § 15 could have used any word for the defined term "biometric identifier" and still the only permissible way to construe it is by "[r]eplacing [it] with its statutory definition, as we must." *Fiveash*, 39 N.E.3d at 928.

In sum, the cases Samsung relies on are inconsistent with the legislature's express definition of "biometric identifier" and the controlling rule of construction from *Fiveash* and *Chenoweth*.

***<u>Second</u>***, the cases adopting a capable-of-identifying requirement use conflicting tests for what it even requires one to allege. Some cases use a subjective test requiring allegations "[*this defendant*] is capable of determining Plaintiffs and . . . class members' identities by using the

collected facial scans, whether alone or in conjunction with other methods or sources of information *available to* [*it*] (*e.g.*, the user's account information such as their name, email, physical address, etc.)." *See, e.g.*, *Castelaz*, 2024 U.S. Dist. LEXIS 7321 at *20 (Jenkins, J.).

Others use a hybrid test requiring allegations "that there is *a type of technology* that could identify them utilizing the *data the Defendant has collected and stored*." *Robinson v. Lake Ventures LLC*, 2023 U.S. Dist. LEXIS 156296, at *20 (N.D. Ill. Sep. 5, 2023) (Jenkins, J.). In contrast, the prior Order here uses a narrower subjective test that can only be satisfied by the specific software at issue, requiring allegations that a "function within *the* [*Gallery*] *App* is capable of identifying an individual." *Order* at 16; *id.* at 18 (requiring "the App's technology [be] capable of identifying a person's identity").[14]

Those are unjust results especially as it requires a plaintiff to allege information embedded in the secret software, which cannot possibly be what the legislature intended—especially given its "biometric identifier" definition omits the key language when other definitions show the legislature knew how to express the requirement—thus violating more rules of construction the Court must follow. *See People v. Gutman*, 959 N.E.2d 621, 624 (Ill. 2011) ("a court presumes that the legislature did not intend to create . . . unjust results"); *Dawkins*, 210 N.E.3d at 1193-94.

**C. Plaintiffs Allege the Data Samsung Captures is Capable of "Identifying" an <u>Individual under the Plain and Ordinary Meaning of That Term and by Name.</u>**

All versions of the test require something (the data, technology) be capable of "identifying" by determining the person's name. The "biometric information" definition also uses "identify." But the plain and ordinary meaning of those words has nothing to do with determining a name.

Both words mean "to perceive or state the *identity* of" or "ascertain the *identity* of (someone

[14] Contrary to the Court's Order, Plaintiffs allege Samsung's secret "algorithm"—not the Gallery App—captured and collected the data. *SAC* ¶¶ 4, 54-55; *accord* ECF No. 50 ¶¶ 4, 53 (prior complaint).

or something that is unfamiliar or unknown)," while "identity" means "the distinguishing *character* or personality of an individual" or "the condition of *being the same*." *Identify* and *Identity Definitions,* Merriam-Webster.com. "Character" is "one of the . . . *features* that make up and distinguish an individual" or "a *feature* used to separate distinguishable things," while "feature" not surprisingly means "the makeup or appearance of the face or its parts." *Id.*, *Character* and *Feature Definitions*. Nothing in those definitions suggests "identifying" has anything to do with determining a person's name. Rather, they are clearly referring to a person's physical features (*e.g.* face, fingers), which BIPA further limits to "biometric" features (*e.g.* face geometry, fingerprints). *See Howe*, 2024 U.S. Dist. LEXIS 176263 *23 (Chang, J.) (partial scan qualifies if it "is a 'unique personal *feature* that can be used to identify a person'").

That is consistent with BIPA's purpose as no one can reasonably argue it was not intended to regulate data used for facial recognition. *See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1171 (N.D. Cal. 2016) (the "legislature enacted BIPA to address emerging biometric technology, such as . . . face recognition software"). Facial recognition does not use a person's name, it "map[s] out their facial features" and "then compares the information with a database of stored images to locate a match." Samuel D. Hodge, Jr., *The Legal and Ethical Considerations of Facial Recognition Tech. in the Bus. Sector*, 71 DePaul L. Rev. 731, 736 (2022).

Here, Plaintiffs plausibly allege the data is capable of "identifying" under the plain and ordinary meaning of the word, as the software captures scans of each person's unique face geometry and converts it into a "face template," which is "a unique digital representation of the face" that Samsung stores. *SAC* ¶¶ 4-5, 34, 53-57. "Once . . . a person's face is scanned and its biometric measurements are taken, computers can . . . use [this information] to identify that individual any other time that person's face appears on the internet or in public using facial

recognition." *Id.* ¶ 39. They also expressly allege each template "can be used to identify" the person and explain how it "is used . . . to identify the person" in the hundreds (if not thousands) of other photos on the Device. *Id.* ¶¶ 56, 59-60. Accordingly, the data "can be, and in fact were, used by Samsung to identify a specific individual, just as facial recognition" does. *Id.* ¶ 61.

Those allegations plead the data is capable of "identifying" a specific person under the plain and ordinary meaning of the term. *See Howe*, 2024 U.S. Dist. LEXIS 176263 *24-25 (same template-matching process involved here qualifies, reasoning the "system only works if [the scan] contains enough information to identify a specific individual," no mention of name); *Hartman v. Meta Platforms, Inc.*, 2024 U.S. Dist. LEXIS 167696, at *29-30 (S.D. Ill. Sep. 17, 2024) ("Scanning a person's face to identify the locations of its constituent parts . . . creates a geometric representation that is unique to that person. . . . Thus, an 'estimation of the location of parts of users' faces' based on a scan of their face is intrinsically unique and could plausibly be used to identify them."); *Melzer*, 2023 U.S. Dist. LEXIS 73039 at *10-11 (sufficient to allege software "extracts and creates a unique identifier in the form of a faceprint" and "once a person's face is scanned and its unique facial geometry is captured, computers can . . . use it to identify that individual, including any other time that person's face appears on the internet or in public").

In any event, Plaintiffs' allegations also satisfy the test that requires determining a person's name. In addition to the above allegations about the capability of "using facial recognition" on the biometric data collected, *SAC* ¶ 39, Plaintiffs allege they have social media profiles that are searchable by their names and have publicly-available photos of their faces, *id.* ¶¶ 93, 124, 155, 171, 202. They also allege Samsung extracts scans of face geometry from the photos stored in the Device's contacts along with the person's name, email address, and phone number. *Id.* ¶ 58. Once Samsung creates an album of a person using facial recognition, users can provide the name of the

person by "tagging" the album—the same album into which Samsung's software subsequently adds additional photos in which it identifies the person using facial recognition. *Id.* ¶ 60. And Samsung's privacy policy in effect when G.T. originally filed suit expressly identified "biometric information" and "'identifiers such as real name[,] postal address[,] telephone number'" as categories of data Samsung may collect. *Id.* ¶ 67. Accordingly, Plaintiffs expressly allege this data "can be . . . used by Samsung to identify a specific individual . . . by name." *Id.* ¶ 61.

Making all reasonable inferences in Plaintiffs' favor as the Court must at this stage, the foregoing plausibly alleges the biometric data Samsung captured, in conjunction with various "other . . . sources of information available" and "methods" such as facial recognition, is capable of determining Plaintiffs' names—irrespective of whether the user supplied the name information, which is true in most cases and always with respect to "account information." *See Castelaz*, 2024 U.S. Dist. LEXIS 7321 at *20; *Hartman*, 2024 U.S. Dist. LEXIS 167696 at *1-2, *31-32 (where Messenger app—not Facebook app—allegedly collected face geometry, alleging plaintiffs "created usernames and passwords *for themselves* to set up their Facebook *accounts* . . . sufficiently alleged that *they supplied* identifying information that Meta could match to their face geometry scans"); *Sheppard*, 2024 U.S. Dist. LEXIS 76761 at *22-23 (allegations Plaintiffs "have publicly accessible social media profiles containing their names and faces" and "using facial recognition" can "match" their biometric data collected from the "public facing social media profile" and by Defendant "are sufficient . . . to plead that Defendant is 'capable of determining' Plaintiffs' identities, especially under the minimal pleading standards of Rule 8"); *see also Order* at 16 ("there must be some ability to connect the biometrics to an individual").

## CONCLUSION

For all of the foregoing reasons, Samsung's motion to dismiss should be denied.

Dated: October 8, 2024

Respectfully Submitted,

By: /s/ Theodore H. Kuyper

Keith J. Keogh
Theodore H. Kuyper
Gregg M. Barbakoff
**KEOGH LAW, LTD.**
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092
keith@keoghlaw.com
tkuyper@keoghlaw.com
gbarbakoff@keoghlaw.com

Christian Levis (*pro hac vice forthcoming*)
Amanda Fiorilla (*pro hac vice forthcoming*)
Rachel Kesten (*pro hac vice forthcoming*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

***Attorneys for Plaintiffs and the Putative Class***

## CERTIFICATE OF SERVICE

I hereby certify that, on October 8, 2024, I caused a copy of the foregoing ***Plaintiffs' Response in Opposition to Motion to Dismiss Second Amended Complaint*** to be served upon all counsel of record via electronic filing using the CM/ECF system.

/s/ Theodore H. Kuyper