IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **G.T., by and through next friend LILIANA T. HANLON, SHIMERA JONES, LEROY JACOBS, BALARIE COSBY-STEELE, JOHN DEMATTEO, RICHARD MADAY, ALLISON THURMAN, and SHERIE HARRIS, individually, and on behalf of all others similarly situated**,<br><br>Plaintiffs,<br><br>v.<br><br>**SAMSUNG ELECTRONICS AMERICA, INC. and SAMSUNG ELECTRONICS CO., LTD.**,<br><br>Defendants. | Civil Action No. 1:21-cv-04976<br><br>Hon. Lindsay C. Jenkins |

**DEFENDANTS SAMSUNG ELECTRONICS AMERICA, INC.'S AND SAMSUNG ELECTRONICS CO., LTD.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

O'MELVENY & MYERS LLP
Randall W. Edwards
Matthew D. Powers (*pro hac vice*)
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700

O'MELVENY & MYERS LLP
Ashley M. Pavel
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
(949) 823-6900

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Michael W. McTigue Jr.
Meredith C. Slawe
Kurt Wm. Hemr
Colm. P. McInerney
Andrew D. Quinn
One Manhattan West
New York, New York 10001
(212) 735-3000

DONOHUE BROWN MATHEWSON & SMYTH LLC
Mark H. Boyle
140 South Dearborn Street, Suite 800
Chicago, Illinois 60603
(312) 422-0900

Dated: October 22, 2024

*Attorneys for Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd.*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 4

I. PLAINTIFFS DO NOT ALLEGE THAT SAMSUNG POSSESSED, COLLECTED, OR OTHERWISE OBTAINED THE DATA STORED IN THE SOLID STATE MEMORY OF THE DEVICES ........................................ 4

A. Plaintiffs Do Not Allege That Samsung “Stored” Face Clustering Data In The Cloud ........................................................................ 4

B. Plaintiffs’ Allegations That Samsung Controlled the Software on the Devices Do Not Establish “Control” Under Sections 15(a) and 15(b) ........................................................................................ 6

II. THE DATA DOES NOT IDENTIFY PARTICULAR INDIVIDUALS; THE 2AC’S PUTATIVELY NEW ALLEGATIONS DO NOT PLEAD OTHERWISE ..................................................................................... 11

A. BIPA Applies Only to Data That Is Capable of Identifying a Particular Individual ........................................................................ 12

B. The Second Amended Complaint Does Not Allege That the Data Is Capable of Identifying An Individual .................................................... 14

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Barnett v. Apple Inc.*,
2022 IL App (1st) 220187........................................................................3, 7, 11

*Bhavilai v. Microsoft Corp.*,
No. 22 C 3440, 2024 WL 992928 (N.D. Ill. Feb. 8, 2024).......................................7, 8, 11

*Brown v. AS Beauty Group LLC*,
No. 22 C 7288, 2024 WL 2319715 (N.D. Ill. May 22, 2024) ............................................9

*Carpenter v. McDonald's Corp.*,
580 F. Supp. 3d 512 (N.D. Ill. 2022) ..........................................................................12

*Cothron v. White Castle System Inc.*,
2023 IL 128004 (Ill. 2023)..........................................................................................10

*Davis v. e.l.f. Cosmetics, Inc.*,
22 C 5069, 2024 WL 2722663 (N.D. Ill. May 28, 2024) .................................................10

*Doe v. Apple Inc.*,
No. 3:20-CV-421-NJR, 2022 WL 17538446 (S.D. Ill. Aug. 1, 2022) ...............................5

*Dynak v. Board of Education of Wood Dale School District 7*,
2020 IL 125062 (2020) ................................................................................................13

*G.T. v. Samsung Electronics America Inc.*,
No. 21 CV 4976, 2024 WL 3520026 (N.D. Ill. July 24, 2024) ................................ *passim*

*Hartman v. Meta Platforms, Inc.*,
No. 3:23-CV-02995-NJR, 2024 WL 4213302 (S.D. Ill. Sept. 17, 2024) ..........................15

*Hazlitt v. Apple Inc.*,
500 F. Supp. 3d 738 (S.D. Ill. 2020)...................................................................7, 13

*Hazlitt v. Apple Inc.*,
543 F. Supp. 3d 643 (S.D. Ill. 2021)..........................................................................7

*Howe v. Speedway LLC*,
No. 1:19-CV-01374, 2024 WL 4346631 (N.D. Ill. Sept. 29, 2024)..............................8, 15

*Kraft, Inc. v. Edgar*,
561 N.E.2d 656 (Ill. 1990)..........................................................................................12

*Kukovec v. Estee Lauder Cos., Inc.*,
No. 22 CV 1988, 2022 WL 16744196 (N.D. Ill. Nov. 7, 2022) ........................................10

*Kyles v. Hoosier Papa LLC*,
No. 1:20-CV-07146, 2023 WL 2711608 (N.D. Ill. Mar. 30, 2023) ....................................8

*Mosby v. Ingalls Memorial Hospital*,
2023 IL 129081 ....................................................................................................12

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D. Ill. 2019) ......................................................................6

*People v. Chenoweth*,
2015 IL 116898 ....................................................................................................14

*People v. Fiveash*,
2015 IL 117669 ....................................................................................................14

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ..................................................................................6

*Powell v. Shiseido Americas Corp.*,
No. 21-CV-2295, 2022 WL 19914948 (C.D. Ill. Aug. 22, 2022) .......................................9

*Rivera v. Amazon Web Services, Inc.*,
No. 2:22-CV-00269, 2023 WL 4761481 (W.D. Wash. July 26, 2023) ...............................9

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) .............................................................12, 13

*Rogers v. BNSF Railway Co.*,
No. 19 C 3083, 2022 WL 787955 (N.D. Ill. Mar. 15, 2022) ..............................................9

*Rogers v. BNSF Railway Co.*,
No. 19 C 3083, 2022 WL 4465737 (N.D. Ill. Sept. 26, 2022) ............................................9

*Theriot v. Louis Vuitton North America, Inc.*,
645 F. Supp. 3d 178 (S.D.N.Y. 2022) ......................................................................10

*Vance v. Amazon, Inc.*,
525 F. Supp. 3d 1301 (W.D. Wash. 2021) ...................................................................9

*Wade v. City of North Chicago Police Pension Board*,
226 Ill. 2d 485 (2007) ..........................................................................................12

*Zellmer v. Meta Platforms, Inc.*,
104 F.4th 1117 (9th Cir. 2024) ...........................................................................13, 14

## STATUTES

740 ILCS 14/10 ..... 12, 13

## OTHER AUTHORITIES

*Fingerprint*, merriam-webster.com, https://www.merriam-webster.com/dictionary/fingerprint ..... 13

*Voiceprint*, Black's Law Dictionary (11th ed. 2019) ..... 13

## INTRODUCTION

Plaintiffs use the Second Amended Complaint ("2AC") [1] to improperly urge reconsideration of the Court's Order, not to fix the deficiencies the Court identified. Accordingly, Plaintiffs gloss over the deficiencies in the 2AC, instead choosing to argue—sometimes implicitly, but often explicitly—that the Court's Order was wrongly decided. Worse, Plaintiffs' Opposition repeats arguments made in their prior briefing, misrepresents allegations in the 2AC, mischaracterizes the Court's Order, and misstates the holdings of several cases.

Indeed, Plaintiffs seek to dispute each of the Court's key holdings in its Order:

**1) Plaintiffs dispute the Court's holding that Samsung's provision of software does not constitute control of Plaintiffs' biometric data**

| *The Court already held …* | *… but Plaintiffs now argue:* |
|---|---|
| "Samsung controls the App and its technology, but it does not follow that this control gives Samsung dominion over the Biometrics generated from the App, and plaintiffs have not alleged Samsung receives (or can receive) such data." *G.T. v. Samsung Elecs. Am. Inc.*, No. 21 CV 4976, 2024 WL 3520026, at *4 (N.D. Ill. July 24, 2024). | "[I]t is immaterial that Samsung, like every other BIPA Defendant, accomplished this [control] through software, which is the only way to control data since it is always digital. The fact Samsung programmed its secret algorithm to capture, collect, store, access, and use the data *automatically* just confirms Samsung's control of the data, and thus, its liability." (Opp. 1 (emphasis in original).) |

Once again, Plaintiffs contend that because Samsung developed software for the Devices, it necessarily controls the Data that is stored exclusively on Plaintiffs' local Devices. But Plaintiffs' **factual allegations** remain the same as those in their prior pleading, and Plaintiffs do not cite any new authority, let alone controlling authority, contrary to this Court's holding. In fact, the Opposition cites several cases Plaintiffs cited in their original opposition—as well as additional

[1] Capitalized terms have the meanings ascribed to them in Samsung's Motion (ECF No. 87).

cases published before the Court's Order—that are inapposite. On closer examination, those cases that actually address the issues raised here support the Court's holding: the complaints in those cases, unlike the 2AC, plausibly alleged facts to establish that the defendant had access to and control over biometric data either via a server or website in its control.

The core deficiency in the 2AC—and in all of Plaintiffs' pleadings—is that Samsung's provision of the software that Plaintiffs used on their Devices does not establish that Samsung had any access to or control over the **Data** that Plaintiffs generate locally on their own Devices using that software. The Opposition's assertion that courts have been "holding entities liable for things their software automatically" did "for decades" highlights the fundamental flaw in Plaintiffs' theory: BIPA does not regulate devices and software; it regulates whether and how defendants possess, collect, or otherwise obtain data and information. The 2AC does not plausibly plead that Samsung possessed, collected, or otherwise obtained the Data alleged to be biometric. Plaintiffs assert that "[i]f the dispositive fact were only the data was stored locally on the users' devices, the court's holding would violate Illinois' rules of statutory construction by reading into § 15(b) a storage requirement that does not exist." (Opp at 13 n.9.) But this Court did not hold that Samsung must "store" the Data to be liable under Sections 15(a) and (b).

The Opposition next claims that "Plaintiffs allege the biometric data including face templates are stored on Samsung's Cloud servers," citing paragraphs 5, 52, 57, and 75 of the 2AC. Not so. Those paragraphs merely allege that certain Data is stored "on, at least, the user's Samsung Device" and that "[p]rior to September 2021, those photographs were uploaded and stored in the Samsung Cloud." (2AC ¶¶ 5, 57, 75.) But the Court already held that the prior allegation of storage on "at least user's Device" is insufficient, and photographs alone are not regulated by BIPA. Nowhere in the 2AC do Plaintiffs allege that Samsung collected any purported biometric data from

those photographs on the Samsung Cloud. The "inference" Plaintiffs urge does not follow from the facts they allege and indeed is mere speculation.[2]

**2) Plaintiffs seek to reargue the Court's holding that the Face Clustering Data does not identify particular individuals and therefore does not constitute a "biometric identifier" or "biometric information" under BIPA**

| *The Court already held . . .* | *. . . but Plaintiffs now argue:* |
|---|---|
| "Here, Plaintiffs do not allege the App's technology is capable of identifying a person's identity. Rather, Plaintiffs allege only that the App groups unidentified faces together, and it is the Device user who (has the option to) add names to the faces. The Court concludes these allegations are insufficient to show that the Data constitutes either a biometric identifier or biometric information." *G.T.*, 2024 WL 3520026, at *8. | "It is not necessary to plead the scan of face geometry is capable of identifying the user. . . . '[B]iometric identifier' is a defined term in the statute, and thus reading a capable-of-identifying requirement into it attempts to give the term a meaning different than what the legislature chose. This violates Illinois rules of statutory construction . . ." (Opp. 17.) |

The Opposition argues that "a court is prohibited from using the plain and ordinary meaning for a statutorily-defined term" (Opp. at 20), but none of the cases cited to support this bold and sweeping contention establishes such a prohibition. That is not surprising given the axiomatic rule of statutory construction that each word in a statute must be given reasonable meaning. The Opposition's argument that the 2AC adequately pleads that the Data can be used to identify a person is belied by the specific allegations in 2AC that make clear that only users can identify persons.

---

2 Further, in an effort to distinguish *Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, the Opposition contends that there is no "third-party" "separating Samsung from the collection of biometric data." (Opp. at 1.) In fact, the 2AC acknowledges that the user, not Samsung, has exclusive possession of the Device, and is in complete control of what the Device does. The Device does not generate Data on its own; it requires the input of the user to first take a photo of a person. Likewise, the Device does not input tags or create contacts, only the user does. The 2AC does not allege any facts to the contrary.

Ultimately, the Opposition's most glaring omission is that nowhere do Plaintiffs explain how the 2AC cures the deficiencies identified by the Court in the Order. It does not. For the reasons set forth below and in Samsung's Motion, the 2AC should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFFS DO NOT ALLEGE THAT SAMSUNG POSSESSED, COLLECTED, OR OTHERWISE OBTAINED THE DATA STORED IN THE SOLID STATE MEMORY OF THE DEVICES

The Court's Order recognized that Plaintiffs did not allege that "the Data is sent to any centralized Samsung repository or database, or that Samsung can access the Data on individual Devices." *G.T.*, 2024 WL 3520026, at *1. Although it repeatedly claims otherwise, the Opposition does not actually identify any allegations in the 2AC that Samsung possesses, collects, or otherwise obtains the Data. Instead, the Opposition devotes 13 full pages to arguing on various grounds that the Court's Order is incorrect as a matter of law. It is not.

#### A. Plaintiffs Do Not Allege That Samsung "Stored" Face Clustering Data In The Cloud

The Opposition repeatedly—and inaccurately—asserts that the 2AC alleges that the Data was stored on Samsung's Cloud servers (*see* Opp. at 1, 3, 9, 10-11), but the 2AC does not allege that. Recognizing that pleading deficiency, Plaintiffs argue without **any** corresponding factual allegation in the 2AC that "a reasonable inference is the face templates (and name 'tags') were backed up and stored in the cloud with the contents of the Gallery App" (*id*. at 11). The Opposition then points to Samsung's Privacy Policy, (Ex. 2 to Mot.), to bolster the brief's *ipse dixit* that the Plaintiffs "plausibly allege Samsung controlled the data by transferring it and storing it on Cloud servers," (Opp. at 11). None of that is correct.[3]

[3] Plaintiffs' arguments that Samsung stored the data on the Samsung Cloud are not only inconsistent with the allegations in the 2AC, but also with the Court's admonishment that the 2AC must be "consistent with [Plaintiffs'] obligations under Federal Rule of Civil Procedure 11." (ECF

**First**, the 2AC does not allege that any Data was transferred to the cloud. It alleges only that Samsung stores Data "in a database that Samsung keeps at least in the solid state memory of the user's Samsung Device" and that "[p]rior to September 2021, those photographs were uploaded and stored the [*sic*] Samsung Cloud." (2AC ¶¶ 57, 75.) The 2AC's specific allegation that only "photographs" were uploaded is not changed by a quotation to an article from Samsung UK that stated "[t]he Gallery app can connect to the Samsung Cloud." (2AC ¶ 52.) It is well-established that photographs alone are not biometric identifiers. (Mot. at 9); *see G.T.*, 2024 WL 3520026, at *3 n.5 ("Plaintiffs do not allege the underlying Data was uploaded to the cloud").[4]

**Second**, Plaintiffs' reliance on the Samsung Privacy Policy in place in August 2021 is misplaced: nothing in that Privacy Policy, anywhere, even suggested that "biometric information" was collected by Samsung **in connection with the Gallery App**. (Mot. at 7-8; Ex. 2 to Mot.) Nowhere in the Privacy Policy does Samsung state that "biometric information" is collected from the Devices. (Mot. at 8).

---

No. 79.) Samsung provided a sworn employee declaration signed by Youngil Shin to Plaintiffs' counsel in November 2022, (Mot. at 4), that declared that the Data is stored "exclusively on the user's local device," (Ex. 3 to Mot. ¶ 19). The Opposition claims that "Samsung discontinued its Cloud service in September 2021, after this suit was filed—and a year before creating its evasive declaration phrased entirely in the present tense." (Opp. at 11.) This is misleading. On August 6, 2024, Samsung's counsel provided a supplemental employee declaration from Mr. Shin that made clear that the statements from the original declaration, including that the Data is stored exclusively on the user's local device, are "accurate since Face Clustering capability was released on Galaxy devices in 2012." (Reply Ex. 1 ¶ 2.) Though Samsung is not relying on these declarations for purposes of whether the 2AC states a claim, they may be relevant for determining whether Plaintiffs followed this Court's admonishment that the 2AC must comply with the obligations under Rule 11 of the Federal Rules of Civil Procedure.

[4] Plaintiffs' reliance on *Doe v. Apple Inc.*, No. 3:20-CV-421-NJR, 2022 WL 17538446, at *2 (S.D. Ill. Aug. 1, 2022) ("*Hazlitt III*") is misplaced: there, plaintiffs specifically alleged that "[o]nce a user with an active iCloud Photos Library tags a person in a photograph, that tag is automatically sent to Apple's servers" and "[b]ecause [the alleged biometric data] is stored on Apple's servers, Plaintiffs allege, Apple collects and possesses biometric data under the meaning of BIPA." *Id.*

The 2AC's factual allegations establish only that "photographs" may have been uploaded to the Samsung Cloud prior to 2021. The requested "inference" that Face Clustering Data was also uploaded does not rise above the level of speculation, and is not supported by the specific facts alleged in the 2AC. *See Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (disregarding plaintiff's "speculative" allegation that "'[e]ach Defendant systematically and automatically collected, used, stored and disseminated [her] . . . biometric identifiers'" because "the more precise allegation" contradicted this allegation (alterations in original)). The Opposition's assertion that Plaintiffs allege that Data was stored in the Samsung Cloud is an improper attempt to further amend the 2AC through their brief: it is "axiomatic" that "plaintiff[s] may not amend [their] complaint in [their] response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).

As they did in their original opposition, Plaintiffs mischaracterize their pleading's allegations relating to the cloud. Once again, instead of curing the deficiencies identified by the Court in its Order by alleging that any Data was sent to the cloud, they request a speculative "inference" to establish this putative fact that they know they cannot plead in good faith. Plaintiffs' failure to allege any plausible facts as to Samsung's purported collection or possession of the Data on the cloud confirms that Plaintiffs do not have a good faith basis to allege such facts and that their claims should be dismissed with prejudice.

### B. Plaintiffs' Allegations That Samsung Controlled the Software on the Devices Do Not Establish "Control" Under Sections 15(a) and 15(b)

The 2AC includes no allegations that (i) the Data was ever sent to Samsung, (ii) Samsung ever came into physical possession of the Data, or (iii) Samsung even can access the Data on Plaintiffs' Devices. (*See* Ex. 1 to Mot. (Redline of CAC vs. 2AC); Mot. at 2, 3, 7-9.) As

demonstrated above, Plaintiffs' allegations regarding the Samsung Cloud and Privacy Policy are not to the contrary. That disposes of Plaintiffs' Section 15(a) and 15(b) claims.

**Section 15(a)**. Plaintiffs' allegations of "control" establish only that Samsung designed the software on the Devices and licensed it to Plaintiffs. (2AC ¶ 69.) None of the allegations establishes that Samsung exercised dominion or control over the Data that Plaintiffs concede solely is kept "in the solid state memory of the user's Samsung Device." (*Id.* ¶ 57). Simply put, "control of the facial scan software is not the same as control of the facial scan data that is collected using the software." *Bhavilai v. Microsoft Corp.*, No. 22 C 3440, 2024 WL 992928, at *1 (N.D. Ill. Feb. 8, 2024); *Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, ¶ 43 (Plaintiffs' argument that Apple possessed their biometrics because "Apple software" on a device "collects and analyzes their information" wrongly "equates the product with the company").

Plaintiffs' reliance on *Hazlitt v. Apple Inc.*, 500 F. Supp. 3d 738 (S.D. Ill. 2020) ("*Hazlitt I*") and *Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643 (S.D. Ill. 2021) ("*Hazlitt II*") is once again misplaced. Both cases are contrary to the *Bhavilai* court's holding and the myriad of cases cited by the Opposition that confirm that for a private entity to have possessed alleged biometrics data, it must at least have access to the data. *See Barnett*, 2022 IL App (1st) 220187, ¶ 45 ("[W]e do not find . . . *Hazlitt* persuasive"). In any event, the plaintiffs in *Hazlitt I* and *II* alleged "that Apple alone could access the biometric data" stored on the devices. *Hazlitt II*, 543 F. Supp. 3d at 653.

Here, Plaintiffs do not, and cannot, allege Samsung could access the Data stored on the Devices, and instead allege that Samsung "controls . . . [w]hether Biometrics are kept locally on users' Samsung Devices [and] Who can access the stored Biometrics." (2AC ¶ 69.) The Opposition argues that "Samsung holds the biometric data at its disposal," (Opp. at 15), but according to

Plaintiffs' own allegations, Samsung designed the software to keep the Data "in the solid state memory of the user's Samsung Device." (2AC ¶ 57.)

**Section 15(b)**. Plaintiffs do not allege that Samsung collects, captures, or otherwise obtains the Data by merely providing the software on the Devices. The Opposition confirms that Plaintiffs "failed to allege that [Samsung] did anything beyond providing a tool." *Bhavilai v. Microsoft Corp.*, 2024 WL 992928, at *1.

The Opposition's argument begins with the false statement of law that "[t]he test under § 15(b) is whether a private entity controlled the biometric data **or the software, system, or process** that captured it." (Opp. at 2.) The deluge of cases cited by Plaintiffs in support of this contention—all but one of which were available before the Court previously ruled—do not stand for the proposition that a private entity can be held liable for purported collection of biometric data that it cannot even access. To the contrary, those authorities support this Court's conclusion that "there is a salient difference between providing a technology and then using that technology to collect, capture, or obtain Biometrics." *G.T.*, 2024 WL 3520026, at *6. In each of these cases, the defendant exercised control over the alleged biometrics by virtue of the defendant's actual access and/or use of the alleged biometrics.

*Kyles v. Hoosier Papa LLC*, No. 1:20-CV-07146, 2023 WL 2711608 (N.D. Ill. Mar. 30, 2023) (cited Opp. at 2, 6-7, 9, 14) is illustrative. The complaint alleged that "[t]hrough FOCUS system's internet connection, Papa John's has **remote access** to FOCUS systems at franchise locations through which it can **download, collect data, and monitor fingerprint-scanner usage**." *Id*. at *1 (emphasis added). The court emphasized that the complaint alleged the defendant "**maintained remote access** to the system [containing the alleged biometrics]," and "'**download[ed]** and collect[ed]'" the biometric information from the system. *Id*. at *3 (emphasis

added). Likewise, in *Howe v. Speedway LLC*, No. 1:19-CV-01374, 2024 WL 4346631, at *9 (N.D. Ill. Sept. 29, 2024), the court held that "Speedway **plainly retains and controls** [fingerprint] Templates for employees" to track the time they worked. *Id.* at *4 (emphasis added).[5]

In *Powell v. Shiseido Americas Corp.*, No. 21-CV-2295, 2022 WL 19914948, at *5 (C.D. Ill. Aug. 22, 2022) (cited Opp. 8, 13, 15, 16), the complaint alleged that "Defendant procured the YouCam Makeup application" and "placed it **on its . . . website** under the name Virtual Try On." *Id*. (emphasis added). The court held these allegations were sufficient to state a claim under Section 15(b). In all of the "Virtual Try-On" line of cases, a defendant allegedly collected biometric data through software on its website, which it necessarily controls and has access to by virtue of its access and control to the servers hosting the website.[6]

---

[5] *Accord Jones v. Microsoft Corp.*, 22 CH 5145 (Cir. Ct. Cook Cnty., Ill. Sept. 15, 2023) (cited Opp. at 3, 15) (Opp. Ex. 1) (complaint alleged that "**defendant stored fingerprint data from its customer in its cloud**, Microsoft Azure," court held that the "cloud storage service, Azure, is provided by Microsoft and, therefore, **it necessarily follows that Microsoft has some control**, direct or indirect, over the platform and the data within it") (emphases added); *Rivera v. Amazon Web Servs., Inc.*, No. 2:22-CV-00269, 2023 WL 4761481, at *3 (W.D. Wash. July 26, 2023) (cited Opp. at 7, 8, 13) (defendant possessed and collected biometrics because complaint alleged "to use Amazon's Rekognition program, customers must 'upload images to [Amazon]'s cloud-based storage solution'" and defendant "'accesses the relevant images and uses its machine vision algorithms to extract the facial geometry of individuals pictured'"); *Svoboda v. Amazon.com, Inc.*, No. 1:21-cv- 05336, Hr'g Tr. at 7:7-11, April 28, 2022, (Opp. Ex. 3) (complaint "plausibly alleg[ed] that the biometrics would go to Amazon's system and Amazon . . . would store the information . . ."); *Vance v. Amazon, Inc.*, 525 F. Supp. 3d 1301, 1312-13 (W.D. Wash. 2021) (complaint alleged that defendant applied for and downloaded a dataset that contained the plaintiffs' biometric data, which was sufficient to allege the defendant had "obtained" the data and was able to "use[]" it); *Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2022 WL 4465737, at *3 (N.D. Ill. Sept. 26, 2022) ("*Rogers II*") ("if BNSF's contention is that a completed act of collecting or obtaining (etc.) of data is required, that requirement is met here as well, as there is no dispute that Remprex actually collected data on BNSF's behalf"); *Rogers v. BNSF*, 2022 WL 787955, at *7 (N.D. Ill. Mar. 15, 2022) ("*Rogers I*") (summary judgment denied where "BNSF employees were also involved in the registration of drivers," that involved the collection of fingerprint scans).

[6] *See Brown v. AS Beauty Grp. LLC,* No. 22 C 7288, 2024 WL 2319715, at *4 (N.D. Ill. May 22, 2024) (alleging "Defendant's 'website extract[ed] the user's biometric data, which is combined with data necessary to show [Defendant's] beauty products on the user's face, before that data is

The Opposition's argument that "storing the data on [Samsung's] servers or elsewhere is unnecessary to plead it collected the data" (Opp. at 9-10) misses the mark. The deficiencies identified by the Court in Plaintiffs' allegations, which the 2AC does not cure, were Plaintiffs' failure to "affirmatively allege the Data is sent to any centralized Samsung repository or database, or that Samsung can access the Data on individual Devices." *G.T.*, 2024 WL 3520026, at *1. *Cothron v. White Castle System Inc.*, 2023 IL 128004 (Ill. 2023), on which the Opposition relies for Plaintiffs' storage argument, actually confirms that a Section 15(b) claim is not pled where a plaintiff does not allege that the defendant has access to the biometric data. The court explained that "[t]he active verbs used in Section 15(b)—collect, capture, purchase, receive, and obtain—all mean to gain control," that "collect" means "to receive, gather, or exact from a number of persons or other sources" and that to "capture" means "to take, seize, or catch." 2023 IL 128004 at ¶¶ 16, 23. All of Samsung's alleged actions that the Opposition cites from the 2AC just recharacterize the software's functionality as Samsung's own conduct. (*See, e.g.*, Opp. at 3 ("[E]ach time a Device user took or received a photo, Samsung's secret, proprietary facial recognition algorithm automatically captured and stored a scan of the unique geometry of the face in the photo") (citing 2AC ¶¶ 4, 6, 53-54, 59).)

---

repackaged and sent back to the user's device'"); *Kukovec v. Estee Lauder Cos., Inc.*, No. 22 CV 1988, 2022 WL 16744196, at *2 (N.D. Ill. Nov. 7, 2022) ("Too Faced Cosmetics's try-on tool [on its website] allows online shoppers to see how a product looks on them. . . . Clicking the "LIVE CAMERA" button activates the user's computer camera automatically. . . . From there, the user can download the image or post it to social media."); *Davis v. e.l.f. Cosms., Inc.*, No. 22 C 5069, 2024 WL 2722663, at *5 (N.D. Ill. May 28, 2024) (alleging that on "[h]aving gained access to the user's photo or live video feed [through Defendant's website], [Defendant] collects, captures, possesses or otherwise obtains users' facial biometric information and identifiers as part of the Virtual Try-On process"); *Theriot v. Louis Vuitton N. Am., Inc.*, 645 F. Supp. 3d 178, 180 (S.D.N.Y. 2022) (complaint alleged "[a] user's facial geometry data is extracted, combined with data necessary to show the glasses on the user's face, repackaged, and then sent back to the user's device. Through use of this technology [on its website], LVNA collects detailed biometric data including complete facial scans of the users of the Virtual Try-On tool").

The Opposition seeks to distinguish *Barnett v. Apple Inc.*, 2022 IL App (1st) 220187 and "Samsung's other authorities" on the basis that there is "no third-party intermediary operating the software or separating Samsung from the collection of biometric data." (Opp. at 12-14.) But Plaintiffs acknowledge the various actions that they took as users, making them the "intermediaries" of the Devices. (*See* 2AC ¶ 53 ("**Each time a user** takes or receives a photograph"), *id.* ¶ 60 ("If **the user has 'tagged'** a photograph"), *id*. ¶ 58, n.13 (explaining that users "can add multiple numbers and addresses [to] the Phone and Email fields").) *See Bhavilai*, 2024 WL 992928, at *1 ("The fact that Microsoft has the ability to give users the ability to collect facial scan data does not mean that Microsoft possesses the facial scan data.").

Ultimately, Plaintiffs expressly allege two critical facts that doom their Section 15(a) and 15(b) claims: (i) "Consumers who buy Samsung Devices **own the hardware**" and (ii) "Samsung stores the face templates in a database that Samsung keeps at least **in the solid state memory of the user's Samsung Device**." (2AC ¶¶ 57, 63.) Plaintiffs do not allege that Samsung—rather than the software operating on Plaintiffs' Devices—can access the Data on Plaintiffs' devices or in any other place. Plaintiffs own the Devices, not Samsung. Thus, Plaintiffs have not alleged that "Samsung receives the Data the App accumulates, or that Samsung even has access to it." *G.T.*, 2024 WL 3520026, at *5.

## II. THE DATA DOES NOT IDENTIFY PARTICULAR INDIVIDUALS; THE 2AC'S PUTATIVELY NEW ALLEGATIONS DO NOT PLEAD OTHERWISE

This Court held that (i) "BIPA only covers those 'retina or iris scan[s], fingerprint[s], voiceprint[s], or scan[s] of hand or face geometry' that are capable of identifying an individual" and (ii) "Plaintiffs do not allege the App's technology is capable of identifying a person's identity." *G.T.*, 2024 WL 3520026, at *8. The Opposition relitigates these holdings, arguing that "[i]t is not necessary to plead the scan of face geometry is capable of identifying the user," and even if it were,

the Data does so because Plaintiffs have public social media profiles, have created contacts with photos, and have tagged photos. (Opp. at 17, 23-24.) Both of Plaintiffs' contentions are wrong.

### A. BIPA Applies Only to Data That Is Capable of Identifying a Particular Individual

The text and structure of BIPA support reading "biometric identifier" as something capable of identifying an individual.[7] The term "'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," and **does not** include "photographs" and "physical descriptions such as height, weight, hair color, or eye color." 740 ILCS 14/10. Courts interpreting BIPA have long recognized that "a 'biometric identifier' is . . . a set of measurements of a specified physical component (eye, finger, voice, hand, face) **used to identify a person**." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1096 (N.D. Ill. 2017) (emphasis added); *see also Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 515 (N.D. Ill. 2022) ("[A] biometric identifier is a unique personal feature that **can be used to identify a person**." (emphasis added)).

Conversely, courts have rejected attempts by plaintiffs to circumvent the plain meaning of "biometric identifier" by claiming that data qualifies as such even if it cannot identify a person, so long as the data could constitute part of one of the biometric identifiers covered by the statute, including "scans of face geometry." 740 ILCS 14/10. As courts have explained, BIPA "list[s] examples" of biometric identifiers, "including 'a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry.'" *Carpenter*, 580 F. Supp. 3d at 515. But "[e]ach specific item on the list" still must "fit[] within the meaning of the term 'biometric identifier,' that is, a biology-based

---

7 "The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the intent of the legislature." *Wade v. City of N. Chicago Police Pension Bd.*, 226 Ill. 2d 485, 509, 877 N.E.2d 1101, 1115 (2007). "A statute should be construed so that no word or phrase is rendered superfluous or meaningless." *See, e.g., Kraft, Inc. v. Edgar*, 561 N.E.2d 656, 661 (Ill. 1990); *Mosby v. Ingalls Memorial Hospital*, 2023 IL 129081 ¶ 36 (when interpreting statutes in Illinois, "[e]ach word in a statute is to be 'given a reasonable meaning and not rendered superfluous'").

set of measurements ('biometric') that can be used to identify a person ('identifier.')." *Rivera*, 238 F. Supp. 3d at 1094; *see Hazlitt I*, 500 F. Supp. 3d at 749 ("The word 'identifier' modifies the word 'biometric' to signal that the types of data listed **could be used to identify a person**.") (emphasis added).

That statutorily enumerated list of items confirms that a biometric identifier must be capable of identifying an individual. A "fingerprint" is defined as "an ink impression of the lines upon the fingertip taken **for the purpose of identification**." *Fingerprint*, merriam-website.com, https://www.merriamwebster.com/dictionary/fingerprint (last visited Oct. 21, 2024). A "voiceprint" is defined as "[a] distinctive pattern of curved lines and whorls made by a machine that measures human vocal sounds **for the purpose of identifying an individual speaker**." *Voiceprint*, Black's Law Dictionary (11th ed. 2019) (emphasis added). A "scan of face geometry" is not a term readily definable by reference to a dictionary, and thus, should be interpreted per the "general rule that words grouped in a list should be given related meaning." *Dynak v. Bd. of Educ. of Wood Dale Sch. Dist. 7*, 2020 IL 125062, ¶ 22 (2020). Thus, each of the items "can thus be used to identify a person in the proper context" and "[t]he unifying theme behind each term here is that each identifies a person." *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1124 (9th Cir. 2024).

BIPA also regulates "biometric information," which is data "based on" a "biometric identifier," "regardless of how it is captured, converted, stored, or shared," that is "used to identify an individual." 740 ILCS 14/10. This additional item was included by the legislature because it recognized that entities could potentially "evade . . . the Act's restrictions by converting a person's biometric identifier into some other piece of information." *Rivera*, 238 F. Supp. 3d at 1095. Thus, it sought to ensure that "whatever [an] entity does in manipulating a biometric identifier," "the resulting information is still covered by [BIPA]" if it can "**be used to identify the person**." *Id*.

(emphasis added). It follows that the legislature added "used to identify an individual" to provide clarity as to what the potentially broader term "information" includes. But "the ability to identify did not need to be spelled out in ['biometric identifier']—it was readily apparent from the use of 'identifier.'" *Zellmer*, 104 F.4th at 1124.

The Opposition argues that this Court's Order and other courts' opinions, including a Ninth Circuit case, are all incorrect because "a court is prohibited from using the plain and ordinary meaning for a statutorily-defined term," and cites *Chenoweth* and *Fiveash* in putative support of these arguments. (Opp. at 17-22.) Neither case stands for this proposition. In *People v. Chenoweth*, 2015 IL 116898, the court interpreted the "statutory phrase 'discovery of the offense.'" *Id.* ¶ 27. The court then used the dictionary definition of "discovery" and the statutory definition of "offense" to determine that the phrase had a certain meaning. *Id.* At **no point** did the court express a prohibition on using the plain meaning of defined term, and, as in *Zellmer*, the court interpreted the phrases "[i]n the context of the statute." *Id.* Likewise, *People v. Fiveash*, 2015 IL 117669, ¶ 13, stands for the uncontroversial proposition that "when a term is defined within a statute, that term must be construed by applying the statutory definition provided by the legislature." Nothing in *Fiveash* suggests that interpreting the plain meaning of the term "identifier" is prohibited because it is part of a defined phrase.

### B. The Second Amended Complaint Does Not Allege That the Data Is Capable of Identifying An Individual

Nothing in the 2AC changes the fact that Plaintiffs allege only that the Data is comprised of scans of facial geometry and mathematical representations of face templates. (*See* Mot. at 9-13.) The Opposition's claim that Plaintiffs allege that they "satisfy the test that requires determining a person's name" is false: the allegations cited in support of that argument are based on sheer speculation. (*See* Mot. a 11-13.)

The Opposition's citations to *Howe* and *Hartman* are unavailing. In *Howe*, the defendant "admittedly collect[ed] [the fingerprint templates] to identify its employees." 2024 WL 4346631, at *4. In *Hartman v. Meta Platforms, Inc.*, the court recognized that "Plaintiffs have imperfectly but sufficiently alleged that the information at issue is capable of identifying them," where plaintiffs alleged that "that they created usernames and passwords for themselves to set up their Facebook accounts," "Messenger Kids requires a child's name to set up an account," and "Meta stores Plaintiffs' biometric data on its servers." No. 3:23-CV-02995-NJR, 2024 WL 4213302, at *11-13 (S.D. Ill. Sept. 17, 2024).

Here, as the Motion explains, Plaintiffs concede that the only way the individuals in photos or contacts containing photos can be identified is through information that is provided solely by the user. (*See* Mot. at 11-12.) Indeed, the 2AC recognizes that tags can be whatever the user decides, (2AC ¶ 60 ("**If** the user has 'tagged' a photograph with the name of the depicted individual")). The tag that a user assigns need not accurately identify the person(s) in the photo at all, which underscores the Data alone does not (and cannot) identify individuals. Accordingly, Plaintiffs' purportedly new allegations do not change the Court's conclusion that "Plaintiffs allege only that the App groups unidentified faces together, and it is the Device user who (has the option to) add names to the faces." *G.T.*, 2024 WL 3520026, at *8.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Second Amended Complaint with prejudice. The Court previously permitted Plaintiffs to amend their complaint if they could "cure the deficiencies . . . consistent with [their] obligations under Federal Rule of Civil Procedure 11," and noted that if "no amended pleading is filed by that date, the dismissal will convert automatically to a dismissal with prejudice." Plaintiffs have now confirmed that they cannot cure those deficiencies. Accordingly, this action should now be dismissed with prejudice.

Dated: October 22, 2024

By: /s/ *Michael W. McTigue Jr.*
Michael W. McTigue Jr.

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Michael W. McTigue Jr.
Meredith C. Slawe
Kurt Wm. Hemr
Colm P. McInerney
Andrew D. Quinn
One Manhattan West
New York, New York 10001
(212) 735-3000

O'MELVENY & MYERS LLP
Randall W. Edwards
Matthew D. Powers (*pro hac vice*)
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700

O'MELVENY & MYERS LLP
Ashley M. Pavel
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
(949) 823-6900

DONOHUE BROWN MATHEWSON &
SMYTH LLC
Mark H. Boyle
140 South Dearborn Street, Suite 800
Chicago, Illinois 60603
(312) 422-0900

*Attorneys for Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd.*